**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **LORRAINE FEMINO** : | |
| **VS.** : | Civil Action No. CA 05 019 |
| **NFA CORPORATION d/b/a HOPE GLOBAL, and DOROTHY MATTIELLO in her capacity as HOPE GLOBAL HUMAN RESOURCES VICE PRESIDENT, and NFA CORPORATION, and Bruce Barth in his capacity as ATTORNEY FOR NFA CORPORATION** : | |

**MOTION FOR RELIEF TO PLAINTIFF WHO FINDS IT IMPOSSIBLE TO PRESENT THIS COMPLAINT BEFORE THIS HONORABLE COURT DUE TO CIRCUMSTANCES OF HEALTH AND DURESS AND SEEKS PERMISSION TO ASSIGN AS REPRESENTATIVE, PLAINTIFFS ATTORNEY-IN-FACT, TO PRESENT ALL MATTERS OF THIS COMPLAINT TO THE COURT.**

Now comes the Plaintiff Lorraine Femino, in the above-entitled matter and moves this Honorable Court to allow Plaintiff to select a representative of Plaintiffs own choosing under a Durable Power of Attorney and in so doing, allow Plaintiff to honor and fulfill all responsibilities to the Court in a timely fashion and to also make available to Plaintiff a means to obtain proper and full relief to the complaint.

As Grounds, Plaintiff refers to the accompanying Memorandum of Law.

Plaintiff Lorraine Femino
Pro Se

Lorraine Femino
4 Bayou Drive
Greenville, R.I. 02828
Tel: (401) 949-4933

3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LORRAINE FEMINO** | : | **CA 05 019** |
| | : | |
| **VS.** | : | |
| | : | **Civil Action No.** |
| **NFA CORPORATION d/b/a HOPE GLOBAL, and DOROTHY MATTIELLO in her capacity as HOPE GLOBAL HUMAN RESOURCES VICE PRESIDENT, and NFA CORPORATION, and Bruce Barth in his capacity as ATTORNEY FOR NFA CORPORATION** | : | |

**MEMORANDUM OF LAW IN FOR RELIEF TO PLAINTIFF WHO FINDS IT IMPOSSIBLE TO PRESENT THIS COMPLAINT BEFORE THIS HONORABLE COURT DUE TO CIRCUMSTANCES OF HEALTH AND DURESS AND SEEKS PERMISSION TO ASSIGN AS REPRESENTATIVE, PLAINTIFFS ATTORNEY-IN-FACT TO PRESENT ALL MATTERS OF THIS COMPLAINT TO THE COURT.**

## I. STATEMENT OF FACTS

1. Plaintiff is diagnosed with an acute and disabling illness and is recognized as a legally disabled person as a result of such illness.

2. Plaintiffs illness becomes crippling and also causes Plaintiff to become mentally impaired under any stressful situation with no relief from medication.

3. Plaintiff lives in total poverty and without financial resources denying Plaintiff an ability to pay any amount for a retainer to secure the services of counsel.

4. Plaintiff has been unsuccessful at obtaining representation from universities, legal clinics, and attorneys who would take the case without retainer.

5. Due to the tangled complexities of ERISA law, and a lack of proper federal substitutes for payment of attorney's time representing on an ERISA matter, Plaintiff could find not adequate representation.

6. Plaintiff did find assistance through a friend who has assumed a trusted role as Attorney-in-fact under a Durable Power of Attorney in Plaintiffs affairs.

7. Plaintiff has made numerous attempts to avoid bringing this matter to the courts and made regular and repeated attempts to engage Defendant on all matters due to the approaching statute of limitations in this case.

8. Plaintiff states an inability due to physical and mental impairments to endure the rigors of presenting a case before this court without assistance.

9. As a result of letting Plaintiff's case "die on the vine" through inaction or lack of effective pleading, Plaintiff would suffer irreparable harm due to being denied a fair hearing consequently leading Plaintiff into a level of poverty that would deprive Plaintiff of inalienable rights as provided under the Constitution of The United States.

## II. ARGUMENT

By a policy of not allowing Plaintiff to make a choice of representation where physical, mental, and financial hardships severely constrain Plaintiffs ability to effectively present matters before this Honorable Court, such denial of choice of representation would cause irreparable harm to Plaintiff in all life matters as Plaintiff has come to enjoy. Plaintiff states that by Congressional actions in the construction of

statutes in ERISA, Plaintiff's ability to secure adequate counsel has been made impossible. The impact to Plaintiffs life through the denial of adequate representation will result in a confiscation of inalienable rights of Plaintiff and violate Plaintiffs rights under the First, Fifth, and Fourteenth Amendments to the Constitution of The United States.

The motion from Plaintiff requesting representation of an Attorney-in-fact comes as a choice of last resort having been forced upon Plaintiff due to circumstances beyond Plaintiffs control. These facts are; 1) Plaintiff is totally disabled with a chronic debilitating illness and unable to endure the stress of a court proceeding alone due to this illness, 2) Plaintiff has no financial resources and must regularly make decisions between the essentials of daily life, 3) Plaintiff has exhausted a search for legal counsel having been unable to find an attorney willing to run the full obstacle course of ERISA law without first demanding a retainer which Plaintiff has no means to provide, 4) the outcome of a denial of due process will be life altering forever, not just for a period of time between a recovery and thus become a permanent incarceration of Plaintiffs spirit.

The Supreme Court has cited "Asserted denial [of due process] is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial. "*Gideon v. Wainwright,* 372 U.S. 335

When Congress established ERISA, it had the goal of establishing protections for plan participants in employee benefit programs. As declared under 29 USC § 1001(a) - "employees and their beneficiaries have been deprived of anticipated benefits; and that it is therefore desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, that minimum standards be provided". ERISA protections are flawed by 3 errors of construction as they pertain to the law; 1) the goal is declared by Congress to only establish minimum standards which, by their nature, can only deliver minimum standards of justice, 2) Congress mandated methods of redress through forced participation in a system of minimal justice, 3) there exists no federal substitute for outrageous conduct against plaintiffs where rights have been forfeited through forced participation.

ERISA having only minimum standards, disallows clarity in the interpretation of law. The very structure of ERISA law absent clarity and combined with no deterrent for outrageous behavior, has become an unconstitutional roadblock for seeking relief. ERISA has long been known by the Courts to be flawed by the fundamental lack of punitive damages which are to "punish outrageous conduct and deter future transgressions" (Black's Law Dictionary). "Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition"; *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U. S. 1, 19 (1991). Defendants in most ERISA cases are large corporations with unlimited legal resources facing minimal risk of litigating any claim. These companies have exploited certain distortions of

ERISA understanding that through legal maneuver, the legal system and the courts can be made part of a business model where inalienable rights of plaintiffs are violated. Such distortions from ERISA come in the form of clouded interpretation of law, and limited but mandated avenues of redress in abuses of ERISA. Plaintiffs having legitimate claims find it impossible to get representation without first paying substantial retainers thereby silencing through elimination a large portion of cases who should be seeking relief through the Courts.

Attorneys have good reason to deny plaintiffs representation in ERISA matters where plaintiffs are unable to pay substantial retainers. In a concurring opinion, Justice Ruth Bader Ginsburg joined "the rising judicial chorus urging Congress and the Supreme Court to revisit what is an unjust and increasingly tangled ERISA regime." A "series of the Court's decisions has yielded a host of situations in which persons adversely affected by ERISA-proscribed wrongdoing cannot gain … relief" and that the current situation needs to be remedied "quickly" because it is "untenable." *Aetna Health Inc. v Davila* (02-1845) 307 F.3d 298.

Plaintiff has discovered through a lengthy but unsuccessful search for counsel that ERISA complexities have by themselves become a method to silence plaintiffs. Attorneys must demand large up front retainers knowing in advance the insurmountable tangle of case law requires a superior legal effort just to break even on the scales of justice. One statement presented to Plaintiff characterized ERISA as "just a game". Interpretations by insurers towards contractual terms such as "adequate" have become

life threatening to many plan participants in such games. The meaning of terms by the Courts in a legally constrained minimalist environment have changed the once widely accepted maxim of *contra proferentem* into a maxim of *pro proferentem*. This has solidified belief by the legal profession that ERISA cases have become a game with plaintiffs in poor health being caught in the cross fire. The brinkmanship played in this ERISA playing field has reached a point where such violations of law have become life threatening through denials of Due Process and Equal Protection as guaranteed under the Constitution.

ERISA's original Congressional intent of providing protections for plan participants has instead become protection for plan providers and insurance companies. ERISA having only minimum standards towards interpretation in contractual obligations provides minimal guidance when complaints are presented to the Court. Any case to recover private property in the form of benefits becomes a time consuming legal hurdle for any attorney. It is counter intuitive and irrational to establish minimal standards of law in environments where peoples lives are placed at risk. Having completed any case for recovery of benefits, plan participants find no federal substitute for recovering the costs spent to recover such private property. Payment of attorneys time by Defendants is unenforceable by the Courts due to the Courts inability to find compelling evidence of wrongdoing in minimal ERISA law. Theoretically and practically, it becomes impossible to break an ERISA law since any effort can equate to a "best effort". Plaintiff has found it impossible to find counsel willing to become an advocate in this "tangled ERISA

regime" being left with only one final choice of representation given Plaintiffs failing health and lack of financial assets.

The First Amendment states "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances". Plaintiff now finds rights to redress plaintiffs grievances have been abridged by the circumstances of; Plaintiff cannot make a pleading to the court due to health, due to poverty, Plaintiff is unable to secure counsel since counsel will not be paid a fair wage for their time due to lack of federal substitutes in ERISA for such payment, Plaintiff is enjoined by the Court from representation of choice due to policies of the court. Plaintiff states that an inability to secure counsel is a direct result of ERISA's minimal standards and mandated forms of redress. Such restrictions are an abridgment of Plaintiffs rights to recover private property.

For too long Congress has ignored changes needed in ERISA. The minimum standards of ERISA are laws creating opportunity for outrageous conduct, not prevention from it. Where ERISA has the stated Congressional goal of minimum standards, the Courts have been forced to apply minimum standards of justice most often at the expense of Plaintiffs. As is often cited in cases before the Court, "nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." Lockheed Corp. v.

Spink, 517 U. S. 882, 887 (1996) (page 10). Recent Court opinions miss an important perspective that benefit programs are a competitive tool for employers meant to attract and motivate a talented workforce through a total compensation package. Benefits are compensation earned through daily hard work by employees. They are well earned private property and should be seen in that same light.

As the Court stated in *Pilot Life Ins. Co.* v. *Dedeaux,* 481 U. S. 41 (1987): "[T]he detailed provisions of §502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans". Plaintiff states that earned benefits of employment are Plaintiffs private property, and ERISA is forced participation by Plaintiff with mandated methods of redress. As established by the Court in *Pilot Life Ins. Co.* v. *Dedeaux,* plan participants rights are in careful balance with the public interests where greater good of the public can justify forfeiture of plaintiffs rights to redress. In a case where Plaintiffs forfeiture of rights results in the public use of Plaintiffs private property, such a matter becomes an argument of Eminent Domain. Plaintiff contends that lack of a federal substitute for just compensation for plaintiff's release of rights to Due Process will result in a confiscation of Plaintiffs private property for public use and thus is a violation of the Fifth and Fourteenth Amendments to the Constitution of The United States.

The Court has assumed that "discrimination, if gross enough, is equivalent to confiscation and subject under the Fifth Amendment to challenge and annulment."

*Steward Machine Co. v. Davis*, 301 U.S. 548, 585. Plaintiff being under the restraint of a disabling illness with no medical hope of recovery, and concurrently lacking financial resources to seek an alternative remedy, finds at this point only hope in the law to reestablish the freedoms and happiness once enjoyed. That hope in the law is tempered by the reality that circumstances deny Plaintiff an ability to stand before the Court to present this case. Denying Plaintiff's choice of representation will become a denial of all relief leading to a failure of a just cause for recovery of Plaintiffs private property. The Court has made obligatory on the States the Fifth Amendment's command that private property shall not be taken for public use without just compensation. In the absence of such private property, Plaintiffs very privilege of maintaining a home are placed in jeopardy. The Courts have held, "The right to "establish a home" has long been cherished as one of the fundamental liberties embraced by the Due Process Clause", *City of Cleburne, Texas et al v. Cleburne Living Center et al*, 473 U.S. 432 at page 461

Plaintiff respectfully requests this Honorable Court give consideration to Plaintiffs poverty, failing health, and the total impact to Plaintiff should the right to adequate relief be denied. "Our whole system of law is predicated on the general, fundamental principle of equality of application of the law." *Truax v. Corrigan*, 257 U.S. 312, 331

## III. CONCLUSION

WHEREFORE, Plaintiff requests this Honorable Court:

1. Allow Plaintiff to have representation from Plaintiff's Attorney-in-fact to present all matters pertaining to Plaintiffs case before this court as filed in propria persona.
2. Declare that in the absence of representation from Plaintiff's Attorney-in-fact, that this Court shall provide adequate counsel to Plaintiff.

## IV . CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served by United States Postal Mail, postage prepaid upon Defendant NFA Corporation, and NFA Corporation d/b/a Hope Global, and has also been hand delivered directly to Hope Global Human Resources Department at 50 Martin St, Cumberland, Rhode Island, 02864, and also send UPS overnight mail to attorney Bruce Barth in Femino v. NFA Corporation d/b/a Hope Global et al. on this 19th day of January, 2005.

Respectfully submitted

Lorraine Femino, Plaintiff, Pro Se

Subscribed and sworn to before me this 19th day of January, 2005

Notary Public

My Commission Expires 4/3/2006

# DURABLE POWER OF ATTORNEY FOR FINANCIAL MANAGEMENT

**This Durable Power of Attorney** for financial management, is given by me, Lorraine Femino, presently of 4 Bayou Drive, Greenville, Rhode Island, 02828, in the State of Rhode Island, on the 10th, day of January, 2005.

**1) Nature of Power**
This is a Durable Power of Attorney and the authority of my Attorney-in-fact shall not terminate if I become disabled or incapacitated or in the event of later uncertainty as to whether I am dead or alive.

**2) Previous Power of Attorney**
**I REVOKE** any previous durable power of attorney granted by me.

**3) Attorney-in-Fact**
**I APPOINT** Gary Morse, 2 Westwood Lane, Barrington, Rhode Island, 02806 to act as my Attorney-in-fact.

**4) Governing Laws**
This instrument will be governed by the laws of the state of Rhode Island. Further, my Attorney-in fact is directed to act in accordance with the laws of the State of Rhode Island at any time he may be acting on my behalf.

**5) Delegation of Authority**
My Attorney-in-fact may not delegate any authority granted under this document.

**6) Liability of Attorney-in-fact**
My Attorney-in-fact will not be liable to me, my estate, my heirs, successors, or assigns for any action taken or not taken under this document. My Attorney-in-fact shall not be liable for any loss that results from a judgment error that was made in good faith.

**7) Effective Date**
This Power of Attorney will start immediately and will continue notwithstanding my mental incapacity or mental infirmity which may occur after my execution of this power of attorney.

**8) Powers of Attorney-in-fact**
My Attorney-in-fact will have the following powers;

**a. Banking Transaction**
To do any act which I can do through an Attorney-in-fact with a bank or other financial institution. This power includes, but is not limited to, the power to;

i. Conduct any business with any banking or financial institution with respect to any of my accounts, including, but not limited to, making deposits and withdrawals, obtaining bank statements, passbooks, drafts, money orders, warrants, and certificates or vouchers payable to me by any person, firm, corporation or political entity.

ii. Perform any act necessary to deposit, negotiate, sell or transfer any note, security, or draft of the United States of America, including U.S. Treasury Securities.

iii. Have access to any safe deposit box that I might own, including its contents.

**b. Insurance transaction**
To do any act which I can do through an Attorney-in-fact with any insurance policy.

**c. Claims and Litigation matters**
To institute, maintain, compromise, defend, abridge or otherwise dispose of any and all actions, suits, attachments, or other legal proceedings for or against me. This power includes but is not limited to; the power to; appear on my own behalf or retain an attorney and any other professional personnel necessary to defend or assert any claim before any court, board, or tribunal; and the power to settle any claim against me in whichever forum or manner my Attorney-in-fact deems prudent, and to receive or pay any resulting settlement.

**d. General Authority**
To do any act or thing that I could do in my own proper person if personally present.

**9) <u>Attorney-in-fact Compensation</u>**
My attorney in fact will receive compensation as per the guidelines governing compensation for agents or trustees or other legislated rate in the State of Rhode Island in addition to the reimbursement of all out of pocket expenses associated with carrying out my wishes.

**10) <u>Co-owning of assets and mixing of funds</u>**
My Attorney-in-fact may continue to co-own assets and have any funds mixed with him.

**11) <u>Personal Gain from managing my affairs</u>**
My Attorney-in-fact is allowed to personally gain from any transaction he may complete on my behalf if the transaction is completed in good faith and with my Attorney-in-fact believing such transaction was in my best.

**12) Nomination of Guardian or Conservator**
In the event that the court decides it is best to assign a guardian or conservator for me, I nominate my Attorney-in fact to be considered by the Court for appointment.

**13) Attorney-in-fact restrictions**
The Power of Attorney is not subject to any restrictions other than those noted above.

**14) Notice to third parties**
Any third party who receives a valid copy of this power of attorney can rely on and act under it. I authorize my Attorney-in-fact to indemnify and hold harmless any third party who accepts and acts under this document.

**15) Severability**
If any part of any provision of this instrument is ruled invalid or unenforceable under applicable law, such part will be ineffective to the extent of such invalidity only, without in any way affecting the remaining parts of such provisions or the remaining provisions of this instrument.

I, **Lorraine Femino**, being the Principle named in the attached Durable Power of Attorney for Finances hereby acknowledge;

1. I have read and understand the nature and effect of the attached power of attorney.

2. I recognize that this document gives my Attorney-in-fact broad powers and that such powers will continue past the point of my incapacity.

3. I am of legal age in the State of Rhode Island to grant Durable Power of attorney

4. I am voluntarily giving the attached power of attorney and recognize that the powers given in this document will become effective as the date specified herein.

**IN WITNESS WHEREOF**, I have hereunto signed my name in the town of Greenville, in the State of Rhode Island, this 10th day of January, 2005.

Lorraine Femino

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
Social Security Number

## WITNESS ACKNOWLEDGEMENT

I hereby acknowledge that;

1. I witnessed the signing of the Durable Power Of Attorney of Lorraine Femino dated this 10th day of January, 2005.
2. I am an adult with the capacity to witness a signing of the Durable Power of Attorney.
3. In my opinion, Lorraine Femino had the capacity to understand the nature and effect of the Durable Power of Attorney at the time the Durable Power of Attorney was signed and signed it freely and voluntarily without any compulsion or influence from any person.
4. I am not the Attorney-in-fact named in the Durable Power of Attorney nor am I the Attorneys spouse or other family member.

Signature: Sandra J. Amato

Name: SANDRA J. AMATO

Address: 12 Bayou Dr. Greenville, RI 02828

## ACKNOWLEDGEMENT OF NOTARY PUBLIC

State of Rhode Island )
) ss.
County of Providence )

On the 10th day of January, 2005, before me, the undersigned, a Notary Public, in and for said state personally appeared Lorraine Femino, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she, by her signature on the instrument, in her capacity, executed the instrument.

Andrea E Shea
Notary Public for the state of Rhode Island

My Commission expires: 9/5/06

ANDREA E. SHEA
Notary Public - Rhode Island
My Commission Expires September 5, 2006

**Preparation Statement**
This document was prepared by;
Lorraine Femino
4 Bayou Drive
Greenville, Rhode Island 02828