**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LORRAINE FEMINO** | : | |
| **VS.** | : | **Civil Action No. 05-019ML** |
| **NFA CORPORATION d/b/a HOPE GLOBAL, et al.** | : | |

**FIRST AMENDED COMPLAINT**

Pursuant to Memorandum and Order dated December 8, 2005, plaintiff files the attached First Amended Complaint.

Plaintiff Lorraine Femino
Pro Se

Lorraine Femino

4 Bayou Drive
Greenville, R.I. 02828
Tel: (401) 949-4933

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing document was served by United States Postal Mail, postage prepaid on this 3rd day of January, 2006 to:

William E. O'Gara, Counsel for Defendants
One Financial Plaza, Suite 1800
Providence, RI 02903

Lorraine Femino

Lorraine Femino, Plaintiff, Pro Se
4 Bayou Drive
Greenville, R.I. 02828
(401) 949-4933

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LORRAINE FEMINO** | : | |
| | : | |
| VS. | : | **C.A. 05-019ML** |
| | : | |
| **NFA CORPORATION d/b/a HOPE GLOBAL, et al.** | : | |

## FIRST AMENDED COMPLAINT

Plaintiff Lorraine Femino submits this Complaint for Injunctive and Declaratory Relief. As grounds therefore, Plaintiff alleges as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 USC § 1331, the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
2. Venue for this action is predicated upon 28 U.S.C.A § 1391, as the district in which the action is brought, where the actions arose, where the Plaintiff lives and experiences the actions.

## II . PARTIES

1. Plaintiff, Lorraine Femino, a citizen of the State of Rhode Island in the United States of America, plaintiff herein, in propria persona as a result of circumstances that have made it impossible for her to find adequate and conscientious legal counsel, and under duress, and as a plan participant as defined under 29 USC § 1002 (7).
2. Defendant, NFA Corporation d/b/a/ Hope Global (hereafter Hope Global) as Plaintiffs employer from 1995 until the time of Plaintiffs disability in May, 2001, located at 50 Martin Street, Cumberland, Rhode Island 02864, Tel (401) 333-8990.
3. Defendant NFA Corporation as the Plan Administrator of the Group Disability Benefit DG-67020-RI (hereafter DG-67020-RI) provided to Hope Global employees and located at 850 Boylston Street, Suite 428, Chestnut Hill, Ma, 02467, Tel (617)-232-6060.
4. Dorothy Mattiello, in her capacity as Hope Global Human Resources Director, and as a "party in interest" as defined under 29 USC § 1002 (14) (a) located at 50 Martin Street, Cumberland, Rhode Island 02864, Tel (401) 333-8990.
5. Bruce Barth, in his capacity as attorney representing the Plan Administrator NFA Corporation of the disability welfare benefit and as a "party in interest" as defined under 29 USC § 1002 (14) (a) located at, 280 Trumbul Street, Hartford, Ct. 06103, Tel (860)-275-8200.

## III. INTRODUCTION

1. This complaint pertains to an ERISA disability welfare benefit in which Defendant, NFA Corporation, having discretionary authority under 29 U.S.C. §1002(21)(A) to amend the disability welfare benefit provided to Hope Global employees, did amend the disability welfare benefit effective February 1, 1999 (hereafter the amendment) making material modifications to the plan, but did not properly disclose to plan participants material modifications resulting from the amendment in the Summary Plan Description or in a Summary of Material Modification as required under 29 USC § 1022 (a) and 29 CFR 2520.104a-7 respectively.
2. Plaintiff states that material modifications of the plan amendment did include new policy guidelines under a "Self Reported Symptoms" rule in DG-67020-RI which had the effect of reducing plan coverage for most physical disabilities to 24 months as compared to coverage provided in the previous disability welfare benefit which did provide coverage until a normal retirement age for such disabilities.
3. Plaintiff was provided a Summary Plan Description of DG-67020-RI (hereafter 1999 SPD) by Defendant Hope Global and did rely on the plain language in 1999 SPD where the term "long term disability" was used consistently between the previous Summary Plan Description (hereafter 1995 SPD) prior to the amendment, and 1999 SPD to describe benefit coverage before and after the amendment.
4. Plaintiff did understand that the term "long term disability" meant disability protections until a normal retirement age and not just 24 months of benefits.

5. Plaintiff having become disabled, did suffer harm in a loss of financial protection as a result of not being properly informed of material modifications from the plan amendment and will prove that such harm resulted from Defendants not meeting ERISA statutory requirement for proper disclosure of material modifications under 29 USC § 1022 (a) and 29 CFR 2520.104a-7.
6. Plaintiff will prove that Plaintiff's termination of benefits resulted from material modifications from the plan amendment that were not properly disclosed to plan participants and that a decision by NFA Corporation to delegate disclosure requirements to 1999 SPD as provided by plan insurer Prudential Insurance Co. of America (hereafter Prudential) was not properly completed by Prudential resulting in a breach of fiduciary duties of disclosure by NFA Corporation of material modifications resulting from the amendment.
7. Plaintiff states that an approaching statute of limitations set to expire on January 31, 2005, makes the matters of this complaint urgent to Plaintiff.
8. Due to the nature and complexity of this case, and the approaching statute of limitations for actions against the Plan Administrator expiring on January 31, 2005, Plaintiff respectfully requests permission from the court to amend this complaint by adding Causes of Action, Defendants, Witnesses and Predicate Acts as information continues to become available and research continues. Fed. Rule 15(b) and Fed. Rule 15(d) "Amendments to the pleadings are allowed quite liberally in an effort to decide cases on their merits."

9. Plaintiff will prove further harm resulting from Defendants obstruction of Plaintiffs rights to obtain a copy of 1995 SPD which not been provided to Plaintiff by Defendants as required by ERISA.

## IV. STATEMENT OF THE CASE

1. Plaintiff Lorraine Femino was hired by Hope Global in March 1995.
2. At the time of Plaintiff's initial employee interview in 1995, Plaintiff did receive a description of the disability welfare benefit directly from Hope Global's Director of Personnel, Roger Morris (hereafter Roger Morris).
3. Plaintiff having just recovered from an operation which had kept Plaintiff out of work just before employee interview, did seek and receive a thorough understanding of the disability coverage based on the discussion with Roger Morris where Roger Morris did rely on and use the term "long term disability" in the presentation of benefit coverage to mean "until a normal retirement age".
4. Plaintiff having been provided a proper understanding of the scope of coverage as described by Roger Morris, did decide the coverage would be adequate in that it would provide long term disability coverage until a normal retirement age should a medical doctor determine a disabling physical illness.
5. Based on the protections afforded and desired by Plaintiff by this disability welfare benefit until the Normal Retirement Age, Plaintiff did enroll on or about the time of the 1995 employee interview.
6. Plaintiff remains a plan participant as defined under 29 USC § 1002 (7) from the time of enrollment until the present.

7. Defendant NFA Corporation did implement the plan amendment to the disability welfare benefit which did result in material modifications to plan coverage but did not provide a Summary of Material Modification disclosing the modifications resulting from the amendment.

8. Before and after the plan amendment, Defendant NFA Corporation and Defendant Hope Global were companies owned and controlled primarily by the same parties.

9. In May, 2001, Plaintiff stopped working due to a disabling physical illness.

10. Plaintiff did later submit proper and sufficient medical evidence from Plaintiffs doctors to Prudential Insurance Co of America (hereafter Prudential) to obtain benefits under DG-67020-RI.

11. Prudential did initially deny the claim for benefits based on a determination of "insufficient evidence".

12. During the time Plaintiff was appealing the initial denial of benefits by Prudential, Plaintiff did have a telephone conversation with Hope Global Human Resources employee Linda Haddock (hereafter Linda Haddock) pertaining to Plaintiffs denial of benefits.

13. On this call, Plaintiff asked Linda Haddock why a similar type of claim was recently paid for another employee who did go out on permanent disability shortly before Plaintiff.

14. Linda Haddock stated that the employee in question had submitted benefits under the previous plan prior to the amendment, but that Plaintiff should expect that most claims are always initially denied, but later approved.

15. Prudential did later approve payments for Plaintiffs disability under two separate medical impairments covering two separate timeframes between December 2001 and November 2003.

16. Plaintiff had no reason to believe that benefits would be limited to 24 months given the scope of impairments Plaintiff was diagnosed with.

17. Throughout the duration of receiving benefits, Plaintiff had submitted numerous letters to Prudential requesting clarification as to why Plaintiffs case was being determined to be two separate illnesses with benefits paid at separate times but Prudential refused to assist Plaintiffs claim in spite of numerous requests by Plaintiff for such assistance.

18. On or about April 15, 2003, Plaintiffs numerous inquiries regarding the separation of Plaintiffs disability determinations became problematic to Prudential and in an effort to silence Plaintiff, Prudential did fabricate a false statement in a letter mailed to Plaintiff on or about April 15, 2003 stating that the combined illness issue was recognized, which by itself, did create in Plaintiff an understanding and belief that this matter would soon receive a proper review.

19. In a telephone call with Plaintiff in August of 2003 pertaining to Social Security Disability benefits, Prudential representative Christina Mooney did state to Plaintiff that at the next review, all matters would be covered.

20. On or about November 23, 2003, Plaintiff received a reduced benefit payment check from Prudential and began an immediate inquiry as to the reason for the reduction in payment.

21. Plaintiff later learned from Prudential that no such combined review took place.

22. Numerous inquiries and appeals were submitted by Plaintiff to Prudential asking for clarification of why the case was not examined for the dual illness as previously indicated by Prudential.

23. Prudential stated in numerous letters sent to Plaintiff after the termination that the decision to terminate benefits was based on interpretations of the "Self Reported Symptom" rule but did refuse to assist Plaintiff to perfect the claim any further in spite of numerous requests for such assistance.

24. Based on a summary of all communication's from Prudential, Plaintiff understood that the SRS rule did contain undocumented policies and that such undocumented policies were the cause for the terminations of benefits.

25. Given a pending statute of limitations for a discrimination complaint on such policies, and Plaintiff's good faith understanding of the facts of the specific SRS policy, Plaintiff did file a complaint with the Rhode Island Commission for Human Rights on or about September 8, 2004 against use of such policies.

26. A specific EEOC action remains pending on this matter.

27. It remains unknown to Plaintiff if a favorable ruling by the EEOC would, by itself, reestablish disability benefits.

28. Plaintiff did continue pursuing other options for restoration of benefits following the filing of the EEOC complaint as an effort to try to end the conflicts such policy was creating for Plaintiff.

29. Through discovery, Plaintiff did learn Prudential had applied a policy contained in the DG-67020-RI used to exclude from disability reviews reliable medical

evidence pertaining to Plaintiffs symptoms from a diagnosis of Fibromyalgia which Prudential did pay disability benefits for in 2003.

30. Plaintiff began to copy Dorothy Mattiello onto important letters subsequently sent to Prudential given Dorothy Mattiello's role as the Human Resources Director in an attempt to enlist Defendant Hope Global's position on policies being enforced against Plaintiff's continuing case.

31. In a telephone conversation dated September 20, 2004, Prudential Disability Consultant Damon Crawford (hereafter Damon Crawford) did state to Plaintiff that in regards to Plaintiffs request for information dated August 23, 2004 on what specific medical evidence was used to support the 2003 disability benefit determination based on Fibromyalgia, Damon Crawford did state to Plaintiff that no medical evidence in Plaintiffs file was ever credited to any reviews and that the 2003 determination for benefits based on Fibromyalgia was based on the SRS rule.

32. Plaintiff did submit to Prudential another request for information dated November 9, 2004 in which Damon Crawford did respond on November 24, 2004 that Prudential would not credit any medical evidence from Plaintiffs file pertaining to symptoms from Fibromyalgia in any continuing review due to the SRS rule.

33. Plaintiff did submit to Prudential another request for information dated December 9, 2004 requesting copies of the specific written policy guidelines of DG-67020-RI which supports a position that where concurrent medical illnesses do exist, and one of the medical illnesses meets the contractual criteria for an illness

determined by a medical test, additional medical evidence of other symptoms supporting an elevated impairment can be excluded from continuing reviews beyond a 24 month period under the SRS rule.

34. At the time of this filing, Prudential has not provided the requested written policies of exclusion of medical evidence in continuing reviews as requested in (33) above but Prudential has confirmed verbally such written policies do exist in DG-67020-RI.

35. Prudential's policies as stated in (33) above enforced by Prudential against Plaintiff's continuing claim were confirmed in a letter written by Plaintiff to Defendants dated January 14, 2005 stating that the policies enforced against Plaintiffs claim were summarized as being that Prudential, under authority of DG-67020-RI, and specifically under the "SRS" rule, and in the absence of sufficient contrary medical opinion, was allowed to; 1) exclude medical evidence from any review where such exclusion of medical evidence was done by policy, 2) exclude medical evidence from any review where it was determined that concurrent medical illnesses did exist and such medical evidence of a concurrency of illnesses would support the existence of an elevated medical impairment, 3) apply self reported symptoms medical evidence in disability reviews inconsistently thus creating by discretion disabilities where such medical evidence could be included and some disabilities where it could not be included.

36. Plaintiff was unaware of the impact in reduction of benefit coverage under DG-67020-RI to being primarily only 24 months of benefits under the SRS rule since these policies are not disclosed.

37. Throughout Plaintiff's employment until Plaintiffs disability, Plaintiff did rely on an understanding of coverage of the disability welfare benefit that if Plaintiff were diagnosed with a physical disabling illness, long term disability coverage would be provided until the normal retirement age.

38. The plain language "long term disability" was used in 1999 SPD in a similar manner as was used in 1995 SPD based on Plaintiffs recollection and understanding of 1995 SPD and did create an understanding by Plaintiff that coverage as described in 1999 SPD would be until a normal retirement age for diagnosed physical disabilities.

39. On November 22, 2004, Plaintiff did submit to Dorothy Mattiello a request for a copy of 1995 SPD describing in the letter the reason why 1995 SPD was relevant in that it pertained to Duties of Disclosure for Fiduciaries.

40. As of this filing, Defendants have obstructed Plaintiffs access to 1995 SPD thereby restricting Plaintiff's ability to perfect this complaint.

41. In communications with Defendants, Plaintiff did give to Defendants a full understanding of all issues pertaining to Plaintiff's conflicts with Prudential.

## V. ARGUMENTS

29 USC 1002 (1) defines an employee welfare benefit as. - "The terms ``employee welfare benefit plan" and ``welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was

established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions)".

Defendant Hope Global did provide to employees a disability welfare benefit program intended to provide continuous disability protections. Plaintiff did enroll into this employee disability welfare benefit at the time of employment in 1995 and remained enrolled until Plaintiffs disability in 2001. Defendant NFA Corporation was the Plan Administrator of this program. Defendant NFA Corporation did amend this program effective February 1, 1999 changing plan coverage. Defendant NFA Corporation did not file a Summary of Material Modification with the plan amendment. The Plan Administrator did have fiduciary obligations and duties under ERISA 1104 (a) (1) to act in the best interests of plan participants and disclose material modifications resulting from any amendment to this program. Defendant NFA Corporation and Defendant Hope Global are companies owned and controlled primarily by the same interests today as was also the case before the plan amendment.

Under 29 U.S.C. § 1104(a)(1), plan fiduciaries are required to discharge duties with respect to a plan solely in the interest of the participants and beneficiaries. The

Duty of Loyalty requires an ERISA fiduciary "to communicate any material facts which could adversely affect a plan member's interests and is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA". *Shea v. Esensten*, 107 F.3d 625 (8th Cir.1997).

A material modification did result from the amendment in a reduction in plan coverage for many physical illnesses due to undocumented policy guidelines for claims processing under the SRS rule reducing coverage from that being a long term disability benefit until the normal retirement age to one being primarily a transitional benefit providing protections only for 24 months. Defendants have stated in a letter dated January 4, 2005 to Plaintiff that notice to plan participants of material modifications of the plan amendment were not submitted in a Summary of Material Modification, but instead the plan administrator did choose to rely on 1999 SPD for all disclosures.

The specific policies being enforced against Plaintiff pertain to Prudential's assertion that under the contractual terms of the SRS rule, Prudential can review and determine any disability claim in the absence of medical evidence. This specific definition in the Group Disability Contract of SRS is - "Self-Reported Symptoms means the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures and clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headache, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy".

Plaintiff, having received a diagnosis by 3 medical doctors confirming multiple physical disabling illnesses, submitted all supporting medical evidence to Prudential. Prudential did initially approve disability benefits for Carpal Tunnel Syndrome in 2002 and subsequently approved benefits for Fibromyalgia in 2003 keeping each determination separate. Prudential did use medical evidence for the Carpal Tunnel Syndrome but excluded all medical evidence pertaining to symptoms of Fibromyalgia from any review. Prudential did dismiss the evidence of Plaintiff's Fibromyalgia symptoms without the use of sufficient contrary medical opinion where such contrary medical opinion was completed using standards accepted in the practice of medicine. Prudential chose by policy not to credit Plaintiffs medical evidence pertaining to Fibromyalgia symptoms in any review of Plaintiff's case.

Use of a determination inferred as "without cause" was employed in Prudential's determination of Fibromyalgia benefits in 2003 even though there was concurrent additional illnesses which were diagnosed using a medical test and where the concurrency of all illnesses taken together did create an elevated physical impairment as stated in Prudential's denial of appeal letter dated March 1, 2004. The manipulation of medical evidence does render virtually any physical disability as being under a benefit limitation of 24 months as determined under the discretion of the plan insurer. The impact of such discretionary policies would have the impact of reduction in coverage to 24 months for most physical illnesses and require clear plain language disclosure under 29 USC 1022(a) and 29 CFR 2520.104a-7. This was not done by Defendant NFA Corporation. Dorothy Mattiello and attorney Barth have made known to Plaintiff they

have no conflict with Prudential's use of SRS policy interpretations as have been enforced in the termination of Plaintiffs benefits.

Plaintiff states harm as a result of not being properly informed of the reductions in plan coverage to that being only a transitional 24 month benefit. "ERISA authorizes current plan participants to assert a claim for such a breach of fiduciary duty". *Adamson v. Armco, Inc.*, 44 F.3d 650, 654 (8th Cir.).

Plan Administrators under 29 USC § 1022 (a) must provide to Plan Participants "a summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 1024(b)(1) of this title".

## VI. CAUSE OF ACTION

1. Defendant NFA Corporation did implement the plan amendment to the disability welfare benefit provided to employees of Hope Global which did result in material modifications to plan coverage of the disability welfare benefit provided to Hope Global plan participants.
2. Defendant NFA Corporation did choose not file a specific document Summary of Material Modification with the plan amendment under 29 CFR 2520.104a-7 to disclose the summary of material modifications resulting from the plan amendment.

3. Defendant NFA Corporation having knowledge a Summary of Material Modifications was not filed with the plan amendment, did rely on and accept 1999 SPD from Prudential, the plan insurer of DG-67020-RI, without proper audit to ensure requirements of 29 CFR 2520.104a-7 were met in 1999 SPD.
4. Defendant Hope Global did distribute to plan participants 1999 SPD at the time of the plan amendment where 1999 SPD did not fulfill disclosure requirements of material modifications as specified and required under 29 CFR 2520.104a-7.
5. Defendant Hope Global did distribute to plan participants 1999 SPD which did include the term "long term disability" as had been similarly used in 1995 SPD thus creating for Plaintiff the understanding that the scope of coverage between 1999 SPD and 1995 SPD was similar in the provision of coverage until the normal retirement age for diagnosed physical illnesses.
6. Dorothy Mattiello being in a capacity as a "party in interest" in the disability welfare plan DG-67020-RI and having a full knowledge of the contractual policies used in Plaintiffs termination of benefits under DG-67020-RI, did establish an estopple by silence confirmation of the validity of contractual policies of DG-67020-RI being enforced by Prudential against Plaintiff by taking no action to provide a remedy as required under 29 USC 1105 (a)(3).
7. Bruce Barth being in a capacity as a "party in interest" in the disability welfare plan DG-67020-RI and having full knowledge of the contractual policies used in Plaintiffs termination of benefits under DG-67020-RI, did establish an Estopple by Silence a confirmation of the validity of contractual policies of DG-67020-RI being enforced

by Prudential against Plaintiff for termination of Plaintiffs benefits by taking no action to provide a remedy as required under 29 USC 1105 (a)(3).

8. Dorothy Mattiello and attorney Barth did establish a Promissory Estopple to deliver to Plaintiff 1995 SPD, but upon Plaintiffs completion of the terms of the Promissory Estopple, but did continue to withhold 1995 SPD causing harm to plaintiff in filing the complaint herein.

## VII . CONCLUSION

For the above reasons Plaintiff requests this Honorable Court to:

1. Declare that the plan amendment did include material modifications in coverage of the disability welfare benefit provided by Hope Global which did allow under the "SRS" rule the exclusion of medical evidence without sufficient cause thus creating reductions in plan coverage and that the impact of such material modification in plan coverage was not properly disclosed to plan participants under 29 USC § 1022 (a) and 29 CFR 2520.104a-7 in 1999 SPD.
2. Declare that the plan amendment did include material modifications in coverage of the disability welfare benefit provided by Hope Global which did allow under the "SRS" rule the exclusion of medical evidence without sufficient cause where concurrent illnesses did exist and that the impact of such material modification in plan coverage was not properly disclosed to plan participants under 29 USC § 1022 (a) and 29 CFR 2520.104a-7 in 1999 SPD.

3. Declare that the plan amendment included material modifications in coverage of the disability welfare benefit provided by Hope Global allowing under the "SRS" rule the application of medical evidence deemed as self reported to be credited to reviews without consistent standards thus creating reductions in plan coverage for any disability at the discretion of the plan insurer and that the impact of such material modification in plan coverage was not properly disclosed to plan participants under 29 USC § 1022 (a) and 29 CFR 2520.104a-7 in 1999 SPD.
4. Declare that Plaintiff was harmed by not being properly informed of reductions in plan coverage to becoming primarily 24 months for physical illnesses as a result of the amendment and order restoration of financial benefits for Plaintiff consistent with levels as paid before the termination of benefits on November 18, 2003.
5. Assign appropriate civil penalties as allowed under section 29 U.S.C. § 1132(c)(1)(B) for the refusal by Defendant NFA Corporation to provide plaintiff an "other instrument" of the disability welfare benefit being 1995 SPD and that such penalties be assigned from the date of first refusal on December 10, 2004, until June 16, 2005 when plaintiff did receive 1995 SPD.

Respectfully submitted

Lorraine Femino

Lorraine Femino, Pro Se
4 Bayou Drive
Greenville, R.I. 02828
(401)-949-4933

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing document was served by United States Postal Mail, postage prepaid on this 3rd day of January, 2006 to:

William E. O'Gara, Counsel for Defendants
One Financial Plaza, Suite 1800
Providence, RI 02903

Lorraine Femino

Lorraine Femino, Plaintiff, Pro Se
4 Bayou Drive
Greenville, R.I. 02828
(401) 949-4933