UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LORRAINE FEMINO | : | |
| | : | |
| v. | : | C.A. No. 05-019ML |
| | : | |
| NFA CORPORATION d/b/a HOPE GLOBAL, et al. | : | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant NFA Corporation hereby moves for summary judgment on all claims contained in Plaintiff's Second Amended Complaint. In support of this motion, Defendant relies upon its Local Rule 12.1 Statement of Undisputed Material Facts, the evidentiary material attached thereto, and the Memorandum of Law In Support of Defendant's Motion For Summary Judgment.

DEFENDANTS,

By their Attorneys,
HOLLAND & KNIGHT LLP

William E. O'Gara, Esq. (#4257)
Robert J. Crohan Jr., Esq. (#6516)
One Financial Plaza, Suite 1800
Providence, RI 02903
(401) 751-8500
(401) 553-6850 (facsimile)

CERTIFICATION

The undersigned hereby certifies that a true copy of the foregoing document was forwarded by first class mail, postage prepaid on this 24th day of March, 2006 to:

Lorraine Femino
4 Bayou Drive
Greenville, RI 02828

Suzy Oliveira

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LORRAINE FEMINO | : | |
| | : | |
| v. | : | C.A. No. 05-019ML |
| | : | |
| NFA CORPORATION d/b/a | : | |
| HOPE GLOBAL, et al. | : | |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

In her Second Amended Complaint the plaintiff advances three claims in this ERISA action. First, she alleges that NFA Corporation ("NFA") violated one of ERISA's disclosure requirements by making material modifications to its LTD Plan without furnishing her a separate written summary of material modifications. Second, she alleges that NFA breached its fiduciary duty by implementing an amended plan without a written plan document. Finally, plaintiff alleges that NFA violated another of ERISA's disclosure requirements by refusing to provide her a copy of an outdated Summary Plan Description ("SPD").

As demonstrated herein, plaintiff's claims are simply untenable when the controlling legal principles are applied to the undisputed material facts, and NFA is entitled to judgment as a matter of law on all of plaintiff's claims. NFA was not required to produce and provide plaintiff with a summary of material modifications because the amendments to the LTD Plan were timely incorporated into Plan documents. NFA implemented and maintained its Plan, including the 1999 amendments thereto, pursuant to written instruments. And NFA was not required by ERISA to provide plaintiff a copy of an SPD that was outdated by five years. Plaintiff's claims are also flawed because the remedy she seeks is legal relief, not equitable relief.

## II. PERTINENT FACTS

The plaintiff enrolled in NFA's long-term disability plan ("the Plan")[1] when she began her employment with NFA in 1995. (Defendant's Local Rule 12.1 Statement of Undisputed Material Facts (hereinafter "Facts") ¶ 2.) NFA Corporation is the Plan Sponsor and Plan Administrator. (Facts ¶ 1.) From February 1, 1994 until February 1, 1999, when the Plan was amended, insurance benefits under the Plan were provided by Hartford Life and Accident Insurance Company. (Id. ¶ 3.) In 1999 the Plan was amended and the Prudential Insurance Company of America ("Prudential") became the insurer. (Id. ¶ 4.) A number of changes were made to the Plan, including the imposition of a 24 month benefit period for disabilities primarily based on self-reported symptoms. (Id.)

In connection with the 1999 amendments to the Plan, NFA conducted employee meetings to inform employees of the changes to the Plan. (Facts ¶ 5.) NFA mailed copies of the updated plan document and SPD to all participants by first class mail. (Id. ¶ 6.) (The plan document, marked as Exhibit H at plaintiff's deposition, is attached to the Rule 12.1 Statement). The plan document provided to participants by first class mail included the modifications made to the 1995 version of the Plan including a detailed explanation of the 24 month limited pay period for self-reported symptoms. (Id. ¶ 7.) Plaintiff denies having attended an employee meeting regarding the plan amendments and does not recall receiving a copy of the updated Plan documents until after she left NFA's employ in 2001. (Id. ¶ 8.) She acknowledges that if she had made a request of Human Resources Director Dorothy Mattiello for Plan documents, the documents would be have been provided to her. (Id. ¶ 9.) Mattiello maintained an "open-door"

---

[1] The name of the Plan, as amended in 1999, is the "NFA Corporation Employee Long Term Disability Coverages for all Employees."

policy so that employees seeking information regarding benefits could always obtain the information from the Human Resources Department. (Id.)

In May of 2001, plaintiff stopped working due to fibromyalgia, an alleged disabling condition. (Facts ¶ 10.) She thereafter applied for LTD benefits under the Plan. (Id.). This claim was initially denied, but was later approved following plaintiff's administrative appeal, and plaintiff received payments under the Plan. (Id. ¶ 11.). Benefits were subsequently terminated in 2003 based on the self-reported symptoms provision of the Plan. (Id. ¶ 12.) Plaintiff contends she had no knowledge of the 24 month limited pay period for self-reported symptoms at the time she applied for or initially received payments under the Plan. (Id. ¶ 13.)

Plaintiff alleges that she subsequently became aware of the self-reported symptoms limitations contained in the Plan, as amended in 1999, and sought to obtain a copy of the 1995 SPD. In this regard, on November 22, 2004 plaintiff requested a copy of the 1995 SPD from Dorothy Mattiello. (Facts ¶ 14.) NFA declined to provide this document to plaintiff because it had been superseded almost six years prior by the 1999 SPD. (Id. ¶ 15.)

Plaintiff commenced the instant action on January 20, 2005.[2] She initially sued both NFA and two individuals, including Mattiello. By Memorandum And Order dated October 6, 2005 (Docket No. 39), the Court adopted Magistrate Judge Almond's Report And Recommendation and dismissed plaintiff's claims against the individual defendants. Plaintiff was twice granted leave to amend her complaint. The operative complaint is plaintiff's Second Amended Complaint, filed February 1, 2006.

Shorn of extraneous miscellany, plaintiff's Second Amended Complaint appears to state the following causes of action against NFA:

---

[2] Plaintiff previously sued Prudential Insurance Company. The Court's docket shows that a stipulation of dismissal was signed by Judge William E. Smith and entered on August 5, 2004 in that action. *See Femino v. The Prudential Insurance Company of America*, No. 04-CV-298.

(1) Failure to disclose material modifications to the Plan in connection with the 1999 amendments, in violation of 29 U.S.C. § 1022 and 29 CFR 2520.104a-7. (Second Am. Compl. at 18, ¶¶ 1-3.)

(2) Breach of fiduciary duty by implementing the amended plan "without a written Plan Document" in violation of 29 U.S.C. §§ 1102 and 1104. (Second Am. Comp. at 17, ¶¶ 9-10.)

(3) Breach of disclosure obligation by failing to timely provide plaintiff a copy of the 1995 SPD upon her written request in November of 2004, for which plaintiff seeks civil penalties under 29 U.S.C. § 1132(c)(1)(B). (Second Am. Compl. at 19, ¶ 5.)

As a remedy for her first and second claims, it appears plaintiff seeks "restoration of financial benefits" that she would have received had the Plan not been amended in 1999. (Second Am. Compl. at 19, ¶ 4.)

For the reasons discussed herein, NFA is entitled to judgment as a matter of law on all of plaintiff's claims.

## III. LEGAL STANDARD

Summary judgment is appropriate if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Once the moving party has made its preliminary showing that no genuine issue of material facts exists, the non-movant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trial-worthy issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To satisfy the criterion of trial-worthiness, the non-movant must establish the existence of an issue that is both genuine and material to his claim. *See Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir. 1993). A "genuine issue" is one "supported by such evidence that a reasonable jury, drawing favorable

inferences, could resolve it in favor of the nonmoving party." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999). "Material" means that a fact has the potential of affecting the outcome of the case. *See Kearney v. Town of Wareham*, 316 F.3d 18, 22 (1st Cir. 2002). As to issues on which the nonmoving party bears the burden of proof, "he must present definite, competent evidence to rebut the motion." *Id.* (quotation and citation omitted). The non-movant may not defeat a motion for summary judgment by relying upon evidence that is "merely colorable" or "not significantly probative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Thus, summary judgment will be appropriate where the non-moving party rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

## IV. ARGUMENT

### A. NFA IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S CLAIM RELATING TO THE WRITTEN SUMMARY OF MATERIAL MODIFICATIONS.

The gravamen of plaintiff's Second Amended Complaint is her claim that NFA violated its statutory obligation to disclose material modifications to the plan made in 1999. According to plaintiff, NFA was required to provide her a summary of material modifications in connection with the amendments to the plan that implemented the 24 month limitation for self-reported symptoms. Plaintiff's claim appears to proceed as follows: (1) NFA was required by 29 U.S.C. § 1122 and 29 C.F.R. § 2520.104a-7[3] to provide her a separate written summary of material modifications in connection with the 1999 amendments to the plan, (2) NFA failed to provide her

[3] The regulation relied upon by plaintiff is inapposite, since it addresses the administrator's obligations with respect to reporting modifications to the Secretary of Labor. NFA will presume that plaintiff intended to rely upon 29 C.F.R. § 2520.104b-3(a), which is cited in § 2520.104a-7 and which relates to disclosure of modifications to participants. NFA will cite to § 2520.104b-3 in this memorandum when addressing plaintiff's allegations.

a written summary of material modifications and, therefore (3) she is entitled to recover the benefits she would have received under the pre-amended version of the Plan.

Each component of plaintiff's claim contains flaws that individually and collectively doom her claim. As discussed more fully below: NFA was not required to provide plaintiff a summary of material modifications under the circumstances; NFA complied with its notice obligations concerning the plan amendments; and even presuming NFA did not satisfy ERISA's notice requirements, plaintiff is not entitled to the relief she seeks.

**1. NFA Was Not Required to Provide Plaintiff a Written Summary of Material Modifications Because the Modifications Were Incorporated in Plan Documents Timely Furnished to the Plaintiff.**

Plaintiff's contention that NFA violated ERISA by failing to produce and provide her a separate written summary of the modifications made to the plan is without merit. The law allows plan administrators to forego creating and furnishing such summaries where, as here, the amendments are timely incorporated into plan documents provided to participants.

Plaintiff contends NFA violated 29 U.S.C. § 1022(a) and 29 C.F.R. § 2520.104b-3(a) by not properly disclosing to her the modifications to the LTD plan resulting from the 1999 amendments. These provisions are correctly cited for the proposition that ERISA requires the timely notification to participants of material modifications to ERISA plans through written summaries. Plaintiff's argument falters, however, because she had failed to recognize the applicability of 29 C.F.R. § 2520.104b-3(b), which relieves a plan administrator from this requirement under the circumstances present in this case.

Section 1022(a) of Title 29 provides in pertinent part:

> A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average

> plan participant and shall be furnished in accordance with section 1024(b) of this title.

29 U.S.C. § 1022(a). In turn, section 1024(b) provides that if there is a material modification in the terms of a plan, a summary of this modification must be furnished to each plan participant not later than 210 days after the end of the plan year in which the change is adopted. *See* 29 U.S.C. § 1024(b)(1). *See also* 29 C.F.R. § 2520.104b-3(a). When plan amendments are incorporated in a summary plan description which is provided to participants, however, the administrator is not required to produce and provide participants a separate written summary of material modifications. *See* 29 C.F.R. § 2520.104b-3(b). This regulation provides:

> (b) The summary of material modifications to the plan or changes in information required to be included in the summary plan description need not be furnished separately if the changes or modifications are described in a timely summary plan description. For example, a calendar year plan adopts a material modification on June 3, 1976. The modification is incorporated in a summary plan description furnished on July 15, 1977. No separate summary of the material modification is furnished. The plan adopts another material modification September 15, 1977. A separate summary of the modification is furnished on or before July 29, 1978.

29 C.F.R. § 2520.104b-3(b).

Thus, as long as the modifications to the plan are incorporated into plan documents timely furnished to the participants, the administrator has complied with its disclosure obligations and is not required to have prepared and distributed a separate written summary of material modifications. *See, e.g., Sweeney v. Butz*, 1993 WL 54585, at * 3 (N.D. Ill. Feb. 26, 1993) (holding plan not required to furnish summary where it furnished copies of the new plan to all participants within 210 days after the close of the plan year in which the modifications were made).

In the present case, the 1995 LTD plan was amended as of February 1, 1999. The plan year was February 1 through January 31. Therefore, NFA had until late July of 2000 to furnish

the participants copies of the updated plan documents (210 days after the close of the plan year in which the modifications were made). It clearly satisfied this obligation. NFA held meetings in early 1999 at which participants were informed of benefit changes. (Facts ¶ 5.) NFA also sent copies of the updated plan documents in early 1999 to all participants by first class mail. (Id. ¶ 6.)

**2. NFA Satisfied its Disclosure Obligations.**

Department of Labor regulations provide that when making disclosure of materials required to be disclosed under ERISA "the plan administrator shall use measures reasonably calculated to ensure actual receipt of the material by plan participants and beneficiaries." 29 C.F.R. § 2520.104b-1(a)(1). Acceptable methods of delivery include in-hand delivery to employees at the worksite and first class mail. *See id.* In the present case, NFA mailed plan documents to all participants. (Facts ¶ 6.) In addition, it conducted meetings at the workplace at which the amended plan was discussed. (Id. ¶¶ 5, 7.) NFA complied with its disclosure obligations under the regulation.

Plaintiff may argue that she did not receive the plan documents by mail in 1999. Even presuming the truth of these allegations, it is of no moment. The law requires plan administrators to utilize measures reasonably calculated to ensure receipt of the materials by participants. It does not require the administrator to guarantee the actual receipt of the documents by each participant. *See, e.g., Williams v. Plumbers & Steamfitters Local 60 Pension Plan*, 48 F.3d 923 (5th Cir. 1995) ("There is no requirement that the Plan prove actual notice of an amendment .... The plan administrator need only use whatever means are 'reasonably calculated to ensure actual receipt of the material.' 29 C.F.R. § 2520.104b-1(b)(1). The plan administrator may send the [summary of material modification] by mail."); *Hussey v. Chase*

*Manhattan Bank*, 2005 WL 2139872, at *13 (E.D. Pa. Sept. 1, 2005) (instructing that "the DOL regulations have been interpreted to require employee benefit plan administrators to prove that they sent the summary plan descriptions, but not that the participants received them.") (quotation, citation, and alterations omitted); *Aiello v. Midwest Operating Eng'rs Health & Welfare Fund*, 1993 WL 81437, at *3 (N.D. Ill. Mar. 19, 1993) (holding that ERISA does not require a fiduciary to prove that the beneficiary actually received the summary plan materials).

**3. Even Presuming NFA Did Not Comply With its Disclosure Obligations, Plaintiff is Not Entitled to the Remedy of Monetary Damages.**

Although not specified in her complaint, it is manifest that plaintiff is seeking relief for NFA's alleged disclosure failures under 29 U.S.C. § 1132(a)(3). She seeks "restoration of financial benefits" that she would have received had the Plan not been amended in 1999. (Second Am. Compl. at 19, ¶ 4.) This remedy is foreclosed, both because it is beyond what is specified in the statute for disclosure violations and because it is legal relief, rather than equitable relief.

**a. Substantive remedies are not available under ERISA for technical disclosure violations.**

In *Watson v. Deaconess Waltham Hospital*, 298 F.3d 102 (1st Cir. 2002), the First Circuit explained that ERISA "provides limited and specific remedies if an administrator fails to provide plan information to plan participants. 298 F.3d at 105. "When ERISA itself has specified a duty and corresponding remedy, [courts should] impose a further duty on fiduciaries only in very narrow circumstances." *Id.* "Technical violations of ERISA's notice provisions generally do not give rise to substantive remedies outside [the remedies provided by ERISA] unless there are some exceptional circumstances, such as bad faith, active concealment, or fraud." *Id.* at 113 (citations omitted).

Plaintiff has not alleged and cannot establish any of the exceptional circumstances that would allow her to obtain a substantive recovery for any breach by NFA of its disclosure obligations. The record contains no evidence whatsoever of bad faith, active concealment or fraud on the part of NFA in connection with the provision of the 1999 plan documents to the plaintiff.

**b. Plaintiff seeks a legal remedy - not equitable relief.**

Plaintiff contends she is entitled to the "financial benefits" she would have received had the Plan not been amended in 1999. In the wake of recent United States Supreme Court opinions and their progeny, it is manifest that the relief plaintiffs seek - payment of money damages - does not constitute "equitable relief" recoverable under ERISA.

Section 502(a)(3) of ERISA provides, in pertinent part:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

The Supreme Court has addressed the meaning of "appropriate equitable relief" under this section in several opinions, including *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708 (2002), and *Mertens v. Hewitt Associates*, 508 U.S. 248, 113 S.Ct. 2063 (1993). In both cases, the Court unequivocally rejected attempts to impose liability for a contractual obligation to pay money under § 1132(a)(3), holding that the term "equitable relief" refers to "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens*, 508 U.S. at 256; *see also Great-West*, 534 U.S. at 210.

In *Mertens*, a class of former steel industry employees participating in a qualified pension plan brought suit against a non-fiduciary, seeking monetary relief under § 502(a)(3). The Court concluded that although the employees "often dance around the word, what [they] in fact seek is nothing other than compensatory damages" in the form of monetary relief for damages resulting from the alleged breach of fiduciary duty. *Mertens*, 508 U.S. at 255. "Money damages are, of course, the classic form of legal relief." *Id.*

In *Great-West*, Jeanette Knudson, a beneficiary of an ERISA-governed employee welfare benefit plan, was injured in a car accident. The plan included a reimbursement provision that provided the plan with "the right to recover from the beneficiary any payment for benefits paid by the Plan that the beneficiary is entitled to recover from a third party." 534 U.S. at 207 (internal quotation marks and alteration omitted). The Great-West plan covered more than $400,000 of Knudson's medical expenses, and Great-West brought an action under § 502(a)(3) of ERISA seeking restitution of the medical expenses it had paid on Knudson's behalf. Relying on *Mertens*, the Supreme Court noted that Great-West's claim could be brought under ERISA only if the relief it was seeking fell within those categories of relief that were typically available in equity. *See Great-West*, 534 U.S. at 210. The Court explained that restitution claims can sound in equity or at law, depending on the nature of the relief sought in the particular case:

> [A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where the property sought to be recovered or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the

> defendant. Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Id.* at 213-14 (internal citations, quotation marks, and alterations omitted).

In contrast, legal restitution is a remedy where there is no identifiable res:

> In cases in which the plaintiff could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution *at law* through an action derived from the common law writ of assumpsit. In such cases, the plaintiff's claim was considered legal because he sought to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money. Such claims were viewed essentially as actions at law for breach of contract . . . .

*Id.* at 213 (citations and internal quotation marks omitted, emphasis in original).

The Supreme Court then noted that the funds sought by Great-West were not in Knudson's possession, but instead had been disbursed into a special needs trust to pay for Knudson's future medical expenses. Great-West thus was not seeking equitable relief under §502(a)(3)(B), because it was not claiming "particular funds that, in good conscience, belong to petitioners," but was instead arguing that it was "contractually entitled to some funds for benefits that they conferred." *Id.* at 214. The Court therefore concluded that "[b]ecause petitioners are seeking legal relief - the imposition of personal liability on respondents for a contractual obligation to pay money - § 502(a)(3) does not authorize this action." *Id.* at 221.

In the present case, plaintiff is not claiming a right to particular funds or benefits that were conferred upon NFA by the plaintiff. Rather, she is seeking to impose upon NFA the general obligation to pay her "financial benefits" for a contractual obligation. Under *Great-West*, the remedy she seeks (even if can be labeled "restitution" at all) is clearly one for restitution at

law, and is not viable under § 502(a)(3) of ERISA. *See Great-West*, 534 U.S. at 221. *See also Callery v. United States Life Ins. Co. in the City of New York*, 392 F.3d 401 (10th Cir. 2004) (holding that under *Great-West* the plaintiff could not recover insurance policy proceeds); *Massey v. Stanley-Bostitch, Inc.*, 255 F. Supp.2d 7, 15-16 (D.R.I. 2003) (Smith, J.) (holding plaintiff's claim to recover benefits he claimed were due him under policy was a request for money damages prohibited under § 1132(a)(3) by *Great West*).

In sum, the plaintiff seeks relief of a legal nature that is not permitted under 29 U.S.C. §1132(a)(3). *Mertens*, *Great-West*, and the cases that have followed in their wake make clear that "appropriate equitable relief" under § 1132(a)(3) would not include a judgment requiring NFA to pay plaintiff the financial benefits she would have received under the pre-amended version of the Plan.

**c. Because plaintiff may pursue a claim for benefits, relief under § 1132(a)(3) is foreclosed.**

In *Varity Corp. v. Howe*, 516 U.S. 489, 116 S. Ct. 1065 (1996), the Supreme Court instructed that § 1132(a)(3) is "a safety net, offering appropriate equitable relief for injuries caused by violations that [20 U.S.C. § 1132] does not elsewhere adequately remedy." 516 U.S. at 512. "Following [Varity], federal courts have uniformly concluded that, if a plaintiff can pursue benefits under the plan pursuant to Section a(1) [29 U.S.C. § 1132(a)(1)], there is an adequate remedy under the plan which bars a further remedy under Section a(3) [29 U.S.C. § 132(a)(3)]." *LaRocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002).

Because plaintiff can pursue a claim for benefits under § 1132(a)(1), her claim for equitable relief under § 1132(a)(3) is not appropriate. *See Larocca*, 276 F.3d at 28; *Turner v. Fallon Community Health Plan, Inc.*, 127 F.3d 196, 200 (1st Cir. 1997) (holding that beneficiary denied benefits could not sue under Section a(3) since the claim was "specifically addressed by

[Section a(1)]"); *Green v. ExxonMobil Corp.*, No. 02-534L, 2006 WL 106203, at *10 (D.R.I. Feb. 9, 2006) (Lagueux, J.) (holding that plaintiffs who had a cause of action pursuant to §1132(a)(1) were barred from pursuing the same remedy through § 1132(a)(3)).

Importantly, "the availability of an adequate remedy under the law for *Varity* purposes, does not mean, nor does it guarantee, an adjudication in one's favor." *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1089 (11th Cir. 1999); *Tolson v. Avondale Indus. Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) ("The simple fact that Tolson did not prevail on his claim under section 1132(a)(1) does not make his alternative claim under section 1132(a)(3) viable."). Plaintiff's claim for equitable relief under § 1132(a)(3) is foreclosed.

## B. NFA COMPLIED WITH ITS FIDUCIARY OBLIGATION TO IMPLEMENT THE AMENDED PLAN PURSUANT TO A WRITTEN PLAN DOCUMENT.

Plaintiff claims that NFA breached its fiduciary duty to her when it "implemented the 1999 amendment to the disability welfare benefit without a written Plan Document thus violating ERISA Section 402, 29 U.S.C. § 1102 ('Establishment of plan'), which requires that '[e]very employee benefit plan shall be established and maintained pursuant to a written instrument.'" Second. Am. Compl. at 17, ¶ 9. In the following paragraph of her Second Amended Complaint, plaintiff alleges:

> "By implementing the amended welfare benefit without a written Plan Document, NFA Corporation violated ERISA Section 404, 29 U.S.C. §1104 ('Fiduciary duties'), which requires, in pertinent part, that 'a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and…(D) in accordance with the documents and instruments governing the plan….'" that '[e]very employee benefit plan shall be established and maintained pursuant to a written instrument.'"

Second. Am. Compl. at 17, ¶ 10.

Although it appears plaintiff is attempting to set forth separate claims in paragraphs 9 and 10 of her Second Amended Complaint, it is clear that what she is alleging is a single claim for breach of fiduciary duty based on an allegation that NFA implemented the 1999 amendments to the plan without plan documents. This claim is untenable because the 1999 version of the LTD plan was established and maintained pursuant to a written instrument as required by ERISA.

Plaintiff correctly notes that Section 402 of ERISA provides in pertinent part that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). This statutory requirement that plan terms be set forth in writing serves the purpose of "ensur[ing] that participants know their rights and obligations under the plan, and to provide some degree of certainty in the administration of benefits." *Fenton v. John Hancock Mut. Life. Ins. Co.*, 400 F.3d 83, 88-89 (1st Cir. 2005) (citations omitted), *cert. denied sub nom., Cheever v. John Hancock Mut. Life Ins. Co.*, ___ U.S. ___, 126 S.Ct. 380 (Oct. 3, 2005).

Both the initial 1995 LTD plan and the 1999 amended version of the LTD plan were established and maintained pursuant to written instruments. The initial plan was established in 1995 and maintained under a 38 page written plan document. (See Pl. Dep. Exh. G.) The plan, as amended in 1999, was similarly established and maintained pursuant to a 35 page plan document. (See Pl. Dep. Exh. H.) Plaintiff's allegation that the amended version of the Plan was implemented without a written instrument is flatly belied by the undisputed facts of record. Plaintiff has apparently failed to grasp that these documents, Exhibits G and H to her deposition, constitute the "written instruments" mandated by 29 U.S.C. § 1102(a)(1).

NFA indisputably established and maintained the Plan in accordance with 29 U.S.C. §1102(a)(1) and therefore, it is entitled to judgment as a matter of law on plaintiff's claim that it failed to comply with this ERISA obligation.

**C. NFA HAD NO OBLIGATION TO PROVIDE PLAINTIFF AN OUTDATED SUMMARY PLAN DESCRIPTION.**

Plaintiff's final claim is for the imposition of civil penalties against NFA pursuant to 29 U.S.C. § 1132(c)(1)(B) for its alleged failure under § 1024(b)(4) to timely provide her with a copy of the 1995 SPD upon her written request in November of 2004. *See* Second Am. Compl. at 11, ¶ 39 and at 19, ¶ 5. This claim is untenable because there is no legal obligation under ERISA for a plan administrator to provide an outdated SPD.

Section 502(c)(1)(B) of ERISA provides in pertinent part that any plan administrator "who fails or refuses to comply with a request for any information which such administrator is required ... to furnish to a participant ... within 30 days after such request" may be subject to a civil penalty in the amount of $110 a day from the date of such failure or refusal. 29 U.S.C. §1132(c)(1)(B). "[C]ase law dictat[es] that the penalty provisions of § 502(c)(1)(B) are to be strictly construed." *Colin v. Marconi Commerce Systems Employees' Retirement Plan*, 335 F. Supp. 2d 590, 612 (M.D.N.C. 2004).

Plaintiff alleges that she submitted a request for a copy of the 1995 SPD to NFA's Human Resources Director, Dorothy Mattiello,[4] on November 22, 2004, and that the requested document was not timely provided.[5] Plaintiff contends that her request was made pursuant to 29 U.S.C. §1024(b)(4), which requires in pertinent part that:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan

[4] For purposes of the present motion, NFA will presume that plaintiff's request to Mattiello constituted a request to the plan "administrator" under 29 U.S.C. § 1024(b)(4).

[5] The 1995 SPD was subsequently provided to plaintiff during the discovery phase of the present litigation.

> description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4).

At the time plaintiff made her request to Mattiello in November of 2004, the operative summary plan description was the 1999 SPD. NFA provided the 1999 SPD to plaintiff, thus fulfilling its obligation under the plan text of the statute to provide "the latest updated summary plan description." 29 U.S.C. § 1024(b)(4). *See, e.g., Shields v. Local 705*, 188 F.3d 895, 903 (7th Cir. 1999) ("[O]utdated plan descriptions do not fall into any of the categories of documents a plan administrator must provide to plan participants under section 1024(b)(4).") (quotation omitted); *Colin*, 335 F. Supp. 2d at 613 (instructing that "§ 104(b)(4) certainly does not require Defendants to provide Hartsell with a series of outdated plan descriptions."); *Leung v. Skidmore, Owings & Merrill LLP*, 213 F. Supp. 2d 1097, 1104 (N.D. Cal. 2002) ("Had Congress desired that section 1024(b)(4) provide for disclosure of outdated documents, it would have been easy to adopt statutory language to that effect.") *Jackson v. E.J. Brach Corp.*, 937 F. Supp. 735, 739 (N.D. Ill. 1996) ("[W]e can discern no statutory basis for penalizing an administrator for failing to provide documents which have no current application whatsoever."); *see also Watson*, 298 F.3d at 112 (noting that the district court granted summary judgment for the defendant on plaintiff's claim for civil penalties because "Deaconess supplied Watson with the most recent plan document").

Thus, when plaintiff requested the 1995 SPD in November of 2004, NFA simply had no duty under ERISA to provide that nearly five-year-old document to plaintiff. As a matter of law plaintiff cannot succeed on a claim alleging a violation of fiduciary duty when no duty exists.

Summary judgment should enter for NFA on plaintiff's claim for civil penalties under 29 U.S.C. § 1132(c)(1)(B).

## V. CONCLUSION

Based on the foregoing, NFA Corporation respectfully requests that the Court grant its motion and enter summary judgment in its favor on all plaintiff's claims.

DEFENDANTS,

By their Attorneys,
PANNONE LOPES & DEVEREAUX LLC

William E. O'Gara, Esq. (#4257)
1800 Financial Plaza
Providence, RI 02903
(401) 824-5100
(401) 824-5123 (facsimile)

## CERTIFICATION

The undersigned hereby certifies that a true copy of the foregoing document was forwarded by first class mail, postage prepaid on this 24th day of March, 2006 to:

Lorraine Femino
4 Bayou Drive
Greenville, RI 02828

25/131/125