**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LORRAINE FEMINO** | : | |
| | : | |
| | : | |
| | : | |
| **VS.** | : | **Civil Action No. 05-019ML** |
| | : | |
| | : | |
| | : | |
| **NFA CORPORATION d/b/a HOPE GLOBAL** | : | |
| | : | |

**PLAINTIFFS MOTION FOR SUMMARY JUDGMENT**

Now comes the Plaintiff Lorraine Femino, in the above-entitled matter, pursuant to Federal Rules of Civil Procedure 56(c) respectfully submitting a motion for summary judgment A Memorandum of Law is attached.

Plaintiff Lorraine Femino
Pro Se

Lorraine Femino
4 Bayou Drive
Greenville, R.I. 02828
Tel: (401) 949-4933

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing document was served by United States Postal Mail, postage prepaid on this 26th day of April, 2006 to:

William E. O'Gara, Counsel for Defendants
One Financial Plaza, Suite 1800
Providence, RI 02903

Lorraine Femino

Lorraine Femino, Plaintiff, Pro Se
4 Bayou Drive
Greenville, R.I. 02828
(401) 949-4933

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **LORRAINE FEMINO** | : | |
| | : | |
| | : | |
| | : | |
| **VS.** | : | **Civil Action No. 05-019ML** |
| | : | |
| | : | |
| | : | |
| **NFA CORPORATION d/b/a HOPE** | : | |
| **GLOBAL** | : | |

**PLAINTIFFS MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff Lorraine Femino
Pro Se

Lorraine Femino

4 Bayou Drive
Greenville, R.I. 02828
Tel: (401) 949-4933

## TABLE OF CONTENTS


I. Legal Standard....................1

II. Introduction....................1

III. Summary of Plaintiffs claims....................2

IV. Neither the Board nor a recognized delegate amended the Group Long Term Disability for Employees of NFA Corporation to adopt the adverse rules on plan coverages resulting from the change in plan providers....................3

- A. 1995 SPD did not have a written amendment procedure nor were any persons identified as authorized to amend the Disability Welfare Benefit..4
- B. Analysis and Remedies....................9

V. NFA's SPD did not disclose the adverse features of the change in plan provider as required by the statute and its fiduciary duties ....................10

- A. The Plan Administrator did not properly disclose the material reductions in an SPD....................10
- B. NFA's disclosure were untimely....................17
- C. Plaintiffs reliance on the 1995 SPD....................18
- D. Analysis and Remedies....................20

VI. NFA had a duty to make readily available any plan document requested By a plan participant....................21

- A. 1995 SPD was a legal and formal plan document defining terms and of the plan prior to the 1999 change in plan providers ....................22
- B. Remedy....................24

VII. Conclusion....................24

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 152-54 (1972)...........19

*Aiken v. Policy Mgmt. Sys. Corp.*, 13 F.3d 138, 141-42 (4th Cir. 1993) (per curiam)....20

*Baker v. Lukens Steel Co.*, 793 F.2d 509 (3d Cir. 1986) ........................................ 15

*Bixler v. Central Pa. Teamsters Health & Wel. Fund*, 12 F.3d 1292 (3d Cir. 1993) ........................................................................ 16

*Burke v. Kodak Retirement Inc. Plan*, 336 F.3d 103 (2d Cir. 2003), cert. denied, 124 S.Ct. 1046 (2004) ............................................................ 12

*Burstein v. Allegheny*, 334 F.3d 365 (3d Cir. 2003) ............................ ............11, 12

*Chambless v. Masters Mates & Pilots*, 772 F.2d 1032 (2d Cir. 1985), cert. denied, 475 U.S. 1012 (1986) ............................................................ 15

*Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1519 (10th Cir. 1996). ..........................20

*Confer v. Custom Eng'g*, 952 F.2d 41 (3d Cir. 1991) ........................................ 5

*Colmenares-Vivas v. Sun Alliance Ins. Co.*, 807 F.2d 1102, 1106 (1st Cir. 1986).........8

*Curtiss-Wright v. Schoonejongen*, 143 F.3d 120 (3d Cir. 1998) ..............................9

*Curtiss-Wright v. Schoonejongen*, 514 U.S. 73 (1995) ......................................6, 9

*Daniel v. Teamsters*, 439 U.S. 551, 570 (1979)... ...........................................19

*Doe v. Travelers Insurance Co.*, 167 F.3d 53 (1st Cir.1999)...............................23

*Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C. Cir. 1990)........................ 12

*Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 653 (4th Cir. 1996)......................... 23

*Feinman v. Dean Witter Reynolds, Inc.*, 84 F.3d 539, 541 (2d Cir. 1996). ................ 19

*Govoni v. Bricklayers, Masons and Plasterers Int'l Union of Am., Local No. 5 Pension Fund,* 732 F.2d 250, 252 (1st Cir. 1984)...... ...........................................21

*Glaziers v. Newbridge Sec.*, 93 F.3d 1171 (3d Cir. 1996) ..................................... 16

*Great-West Life & Annuity v. Knudson*, 534 U.S. 204 (2002)...............................23

*Hamilton v. Air Jamaica*, 945 F.2d 74 (3d Cir. 1991) ........................................ .....21

*Hansen v. Continental Ins. Co.*, 940 F.2d 971, 982 (5th Cir. 1991) Hanson, 940 F.2d at 982........................................................................................8

*Harte v. Bethlehem Steel,* 214 F.3d 446 (3d Cir. 2000) ...................................... 12

*Heidgerd v. Olin Corp.*, 906 F.2d 903, 907-08 (2d Cir. 1990) ..............................15

*Heil v. Midwest Operating Eng'rs*, 1993 WL 226303 (N.D. Ill. June 24,1993) ............. 18

*Henkin v. AT&T*, 80 F.Supp.2d 1357 (N.D. Ga. 1999) .................................................. 3

*Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir. 1990)........................... 16

*Huber v. Casablanca*, 916 F.2d 85 (3d Cir. 1990) ......................................................... 5

*Jordan v. Federal Express*, 116 F.3d 1005 (3d Cir. 1997) ........................................... 11

*Joseph v. Wiles*, 223 F.3d 1155, at 1162-63 (10th Cir. 2000)...................................19

*Koenig v. International Life Corp.*, 880 F. Supp. 372 (E.D.Pa. 1995) ......................... 22

*Koprowski v. Wistar Inst. of Anatomy*, 1993U.S. Dist. LEXIS 4867 *14 (E.D. Pa. April 6, 1993)... ..........................................................................................................6

*Layaou v. Xerox Corp.*, 238 F.3d 205, 209 (2dCir. 2001)......................................12

*Leyda v. Allied Signal*, 322 F.3d 199 (2d Cir. 2003) .................................................... 17

*Mattias v. Computer Sciences Corp.*, 34 F. Supp.2d 120 (District of Rhode Island 1999)...........................................................................................................18

*Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan*, 144 F. 3d 1014, 1023 (7th Cir. 1998)..........................................................................23

*Mesnick v. General Electric Co.*, 950 F.2d 816, 820 (1stCir.1991)...........................1

*Medoy v. Warnaco Employees Long Term Disability Ins. Plan*, 43 F.S.2d 303, 311 (S.D.N.Y. 1999). .....................................................................................17

*Mauser v. Raytheon Co. Pension Plan for Salaried Employees*, 239 F.3d 51, 55-56 (1st Cir. 2001)...... .......................................................................................21

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384-85 (1970)...............................19

*Palmisano v. Alina Health Sys., Inc.*, 190 F.3d 881, 887-88 (8th Cir. 1999);..............20

*In Scott v. Admin. Comm. of Allstate Agents Pension Plan*, 113 F.3d 1193, 1197-99 (11 Cir. 1997),.... ..........................................................................................6

*Rochester Ford Sales, Inc. v. Ford Motor Co.*, 287 F.3d 32, 38 (1stCir. 2002).............1

*Simon DeBartolo Group v. Richard E. Jacobs Group*, 186 F.3d 157, 173 (2d Cir. 1999) .....................................................................................19

*Smathers v. Multi-Tool, Inc.*, 298 F.3d 191 (3d Cir. 2002) .......................................... 13

*Sprague v. General Motors Corp.*, 133 F. 2d 388, 400 (6th Cir. 1998).....................23

*Toledo v. Van Waters & Rogers, Inc.*, 92 F. Supp. 2d 44, 56. (D. R. I. 2000). ............8

*In re Unisys Corp. Retirement Medical Benefit* "ERISA" Litigation, 57 F.3d 1255 (3d Cir. 1995) .......... 12
*United States v. Mead*, 533 U.S. 218 (2001) .......... 11
*Varity Corp. v. Howe*, 516 U.S. 489 (1996) .......... 10
*Warren v. Cochrane*, 235 F.S.2d 1 (D. Maine 2002), .......... 5
*United States v. Velez Carrero*, 140 F.3d 327, 330 (1st Cir. 1998). .......... 20

**FEDERAL STATUTES AND REGULATIONS**

29 U.S.C. 1022(a) .......... 4.,12, 19
29 U.S.C. 1024(b)(4) .......... 22
29 U.S.C. § 1024(b)(2) .......... 22
29 U.S.C. 1027 .......... 17, 22, 23
29 U.S.C. 1104 .......... 2,.3 6,8 10
29 U.S.C. 1102 (ERISA Section 402) .......... 6, 10, 23
29 U.S.C. 1113 .......... 22
29 U.S.C. 1132 (a)(1)(b) .......... 2,.3, 16
29 U.S.C. 1132(c)(1)(B) .......... 3.23,24
29 C.F.R. 2520.102-2(a) .......... 19
29 C.F.R. 2520.102-2(b) .......... 12,16, 19-20
29 C.F.R. 2520.104b-3 .......... 14
29 C.F.R. 2520.104b-1 .......... 17
FRCP 56(c) .......... 1

MISCELLANEOUS

US Department of Labor "Mario Amicus Brief" .......... 22
Restatement (Second) of Trusts .......... 6, 9

## I. Legal Standard

Federal Rule of Civil Procedure 56(c) states that a party shall be entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). When determining a motion for summary judgment, the Court must review the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *Rochester Ford Sales, Inc. v. Ford Motor Co.*, 287 F.3d 32, 38 (1stCir. 2002); *Mesnick v. General Electric Co.*, 950 F.2d 816, 820 (1stCir.1991).

## II. Introduction

In 1995, plaintiff was induced to leave a job with Microfibres and go to work for Hope Webbing, an NFA company, due to the promise of a specific disability benefit. Such inducement to make a job change came over a 6 week period beginning in December 1994, where the President of Hope Webbing personally called Plaintiff at home on numerous occasions asking if plaintiff would consider filling an important job as the front office receptionist at the new company headquarters in Cumberland Rhode Island. Plaintiff finally decided to take the job at Hope Webbing in February 1995 on the understanding of receiving a specific benefits package being primarily the NFA subsidized full coverage disability plan which plaintiff did not have at Microfibres.

Four years later, in a cost savings move, NFA did seek out less costly replacements to the current NFA Disability Welfare Benefit plan with the intent to pass all of the costs to employees with the implementation of a less costly plan. NFA ceased all company contributions to the Disability Welfare Benefit Plan with the implementation of the Prudential Group Disability Benefit effective February 1, 1999.

This case involves a claim of breach of fiduciary duty by the plan administrator, NFA Corporation, in failing to properly implement changes in 1999 to the NFA Disability Welfare Benefit in accordance with ERISA statutory requirements, and common law practices. NFA also failed to properly disclose to plan participants substantive reductions in coverages resulting from the change in plans and that NFA did not fulfill fiduciary obligations to provide requested plan documents in a timely manner to plaintiff.

## III Summary of Plaintiffs Claims

1. NFA did breach their Fiduciary duty by implementing the 1999 plan amendment to the NFA Disability Welfare Benefit (hereinafter plan amendment) without a written Plan Document containing a plan amendment procedure and thus did violate ERISA Section 404, 29 U.S.C. § 1104 ("Fiduciary duties") causing harm to plaintiff by not properly disclosing to plaintiff material reductions in plan coverages. (Plaintiffs Ninth and Tenth claims for relief). Plaintiff seeks relief under 29 U.S.C. 1132(a)(1)(b)

2. NFA did not properly disclose material reductions in plan coverage in a Summary Plan Description (SPD) resulting from the plan amendment which did harm plaintiff by reducing coverages for plaintiffs specific disability from being until age 65 to only 24 months of benefit payments. (Plaintiffs First through Seventh claims for relief). Plaintiff seeks relief under 29 U.S.C. § 1132(a)(1)(b)
3. NFA did fail to provide plaintiff with a requested formal and legal plan document in violation of ERISA Section 404, 29 U.S.C. § 1104. (Plaintiffs Eighth Claim for Relief) Plaintiff respectfully requests penalties be assigned as appropriate in accordance with 29 U.S.C. § 1132(c)(1)(B)

**IV. Neither the NFA Board, nor a recognized delegate, amended the Group Long Term Disability Benefits for Employees of NFA Corporation to adopt the adverse rules on plan coverages resulting from the change in plan providers.**

Plaintiffs Ninth and Tenth Claims allege that NFA did not properly amend the NFA Disability Welfare Benefit plan (hereinafter the Plan) to adopt the substantive reductions in plan coverages resulting from the change in plan providers. These claims extend from the fact that there did not exist a proper written document prior to February 1, 1999 defining a plan amendment procedure and identification of persons authorized to manifest a specific resolution and ratify that resolution. Plaintiff alleges that failing to amend the plan in 1999 in accordance with a written plan instrument did materially contribute to a breach in fiduciary obligations to properly inform plaintiff of material reductions in plan coverages and is an extraordinary circumstance.

**A. 1995 SPD did not have a written amendment procedure, nor were any persons identified as authorized to amend the Hartford Plan.**

As specified in Plaintiffs Statement of Undisputed Facts, prior to February 1, 1999, there did not exist a written plan amendment procedure or identification of persons with authority to amend the Disability Welfare Benefit plan (Facts 79-85) as required under ERISA Section 402, 29 U.S.C. § 1102(a) (Second Amended Complaint p 17 at 9.) By implementing the 1999 amendment to the disability welfare benefit without a plan amendment procedure or identification of persons with authority to amend the disability plan, NFA violated ERISA Section 402, 29 U.S.C. § 1102(a) ("Establishment of plan"), which requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." "Establishment of plan" is part of the Fiduciary Duties section of ERISA and the evidence shows that there was a lack of reasonable care in amending the plan and that such lack of reasonable care caused harm to plaintiff (Facts 97-99). The plan amendment introduced new contractual plan policies where medical evidence is not credited into disability reviews for certain disabilities including Fibromyalgia making such disabilities automatically limited to 24 months of benefit payments (Facts 38). Such "automatic" plan limitations were not a part of the prior SPD and such policies went unchecked and unreported by NFA at the time of the plan amendment in 1999 (Fact 99.)

In the First Circuit and in other circuits, the Courts have rejected implied Plan amendments and the retroactive application of adverse amendments that are formally adopted after-the-fact. In *Warren v. Cochrane*, 235 F.S.2d 1 (D. Maine 2002), a Board resolution offered a benefit increase to "retired employees (as of December 31, 1990)." An amendment drafted later limited the increase to "each Retired Gannett Participant who is in pay status as of December 31, 1990." 235 F.S.2d at 5. Although the Benefits Manager and CFO considered the amendment "consistent with management's proposal" to the Board, the district court found "nothing in the resolution that "sets forth" the language "ultimately incorporated."" [W]hatever was said or explained" at the Board meeting, "those present did not come away with a monolithic understanding that retirees not in pay status ...were to be excluded." 235 F.S.2d at 6-7. In *Confer v. Custom Eng'g Co.*, 952 F.2d 41,43 (3d Cir. 1991), a bulletin board notice and speech by the company's president announced an amendment eliminating health coverage for motorcycle accidents and the president later adopted the amendment in the duly-authorized form. But the Third Circuit held that "neither the speech nor the bulletin board announcement could effectively change" the written plan: "Only a formal written amendment, executed in accordance with the Plan's own procedure for amendment, could change the Plan" and then "the amendment could operate only prospectively." If no substantive difference separates a specific action taken by trustees at a meeting with a later formal plan amendment, the distinction between the two may not be drawn. *Huber v. Casablanca* Indus., 916 F.2d 85, 105-6 (3d Cir. 1990) (amendment evidenced by written and signed minutes of trustees meeting was effective despite absence of formal amendment to the Plan.)

Precedents in other Circuits and the Restatement of Trusts firmly reject implied amendments. See *Curtiss-Wright v. Schoonejongen*, 514 U.S. 73 (1995) (the company is bound to "whatever level of specificity" it "chooses in an amendment procedure"), and Restatement of Trusts, §331 comment d (When a procedure for making changes is specified in a trust instrument, changes can be made "only in that manner"). Even when implied changes are recognized in other contexts, the authorized decision-makers must possess "all the material facts." *Koprowski v. Wistar Inst. of Anatomy*, 1993U.S. Dist. LEXIS 4867 *14 (E.D. Pa. April 6, 1993). The only document provided in discovery shows that NFA made wrong assumptions. In a comparison between existing plan under Hartford Life and Accident Insurance Company (hereinafter the Hartford Plan) and the proposed plan provider Prudential Insurance Company of American (hereinafter Prudential Plan) NFA assumes the plans to be "the same design" (Facts 89). This was not true then, and not true now. Prudential Plan puts automatic limits on certain disabilities including plaintiffs disability through a Self Reported Symptoms Rule (Fact 38). The Hartford Plan rules by discretion with no stated automatic contractual limits or Self Reported Symptoms Rule (Fact 39.) In *Scott v. Admin. Comm. of Allstate Agents Pension Plan*, 113 F.3d 1193, 1197-99 (11 Cir. 1997), a Board resolution did not contain some of the changes that Allstate adopted in conformity with the plan's procedures two years later. Although company officials "clearly believed the resolution had accomplished, without more, an amendment to the plan," the Eleventh Circuit ruled that the resolution "could not fairly or reasonably be regarded by its terms as constituting an amendment."

**1. The HR Director's lack of prudent care in evaluating the change in plan providers and subsequent implementation of the plan amendment without a proper ratification in accordance with a written instrument is an exceptional circumstance.**

The record shows that the HR Director acted independently without a proper written resolution to implement the change in plan providers. (Facts 77-80) The "memorandum" (Ex Memorandum) submitted to NFA managers by the HR Director shows the HR Directors assumption that the plan designs were the same in spite of the fact that the Hartford Plan was 240% higher in cost than the Prudential plan after 1999. The lack of oversight in this matter is further compounded by the HR Directors knowledge that the disability plan for NFA Corporation provided by The Hartford Life and Accident Insurance Company (hereinafter The Hartford) could not compete with the cost cutting NFA required in the plan amendment. A representative from The Hartford stated in a FAX to the HR Director "It doesn't look like we are going to get any way near what you are getting in from other carriers" (Fact 98.) There exists no record of any inquiry made by the HR Director to Prudential to compare the plan coverages between the Hartford Plan and the Prudential Plan to account for the unusual difference in premium cost forward of 1999. (Fact 99). In this litigation, NFA states the "memorandum" represents the only written ratifying document for the plan amendment (Fact 81). Given the facts in the memorandum showing substantive cost differences between the plans, and no examination of the impact to plan participants in reductions in coverage by a plan fiduciary, by implementing the amended disability welfare benefit

without oversight from named fiduciaries, NFA Corporation violated ERISA Section 404, 29 U.S.C. § 1104 ("Fiduciary duties"), which requires, in pertinent part, that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... (D) in accordance with the documents and instruments governing the plan ....".

NFA did not demonstrate reasonable "prudent man standard of care" as required under § 1104(a), where the lack of examination of the cost differences between plans was an accident which "ordinarily does not occur in the absence of someone's negligence," and that the accident was "caused by an . . . instrumentality within the exclusive control of [the] defendant." See *Colmenares-Vivas v. Sun Alliance Ins. Co.*, 807 F.2d 1102, 1106 (1st Cir. 1986). Exceptional circumstances can be shown in the form of negligence where NFA took no reasonable action to properly investigate the difference in premium costs and the reductions in plan coverages leaving plaintiff to suffer the loss for not receiving proper disclosure. Plan participants are "powerless to affect the drafting and less equipped to absorb the financial hardship of the employer's errors". *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 982 (5th Cir. 1991) *Hanson*, 940 F.2d at 982. The legal doctrine of res ipsa loquitur holds that relief be granted in situations where a victim of negligence had no power to affect the outcome of the negligence and the event was in the exclusive control of another. See e.g. *Toledo v. Van Waters & Rogers, Inc.*, 92 F. Supp. 2d 44, 56. (D. R. I. 2000).

**C. Analysis and remedies**

NFA Corporation is the plan administrator and "person" delegated with responsibility to build the plan document. ERISA "follows standard trust law principles in dictating only that whatever level of specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that level". *Curtiss-Wright v. Schoonejongen*, 514 U.S. 73 (1995). See also Restatement of Trusts, §331 comment d (When a procedure for making changes is specified in a trust instrument, changes can be made "only in that manner"). When the Board delegates authority to adopt amendments to carry out the intentions of a resolution, the changes specified in later amendments are "adopted" at the time they are approved. NFA provides no documention from any authorized person that shows an NFA resolution to 1) change the disability plan to one fully funded by employees, 2) meet the goal in full employee funding by selecting a lesser plan with reduced coverages. This was the result of the 1999 Plan amendment. (Facts 38-42.) In ***Curtiss-Wright v. Schoonejongen***, 143 F.3d 120 (3d Cir. 1998) The remedies established hold that a ratification cannot "relate back so as to defeat intervening rights" of participants. The remedy for violations of an improperly ratified plan amendment is to invalidate the amendment as it may apply to the circumstances of Plaintiffs sprecific claim and adopt the provisions of the Hartford Plan to determine plaintiffs continuing benefit payments beyond 24 months.

**V. NFA's SPD did not disclose the adverse features of the change in plan providers as required by the statute and its fiduciary duties.**

There is an undisputed fact in this litigation which is that plaintiffs claim for disability benefits under the Prudential Plan was limited to 24 months of payments based on terms and conditions of the Prudential Plan Self Reported Symptoms Rule (Fact 9-13). The primary issue pertains to NFA's failure to disclosure material reductions in coverages created when the plan was amended. The amended plan contained undisclosed automatic limitations of medical evidence pertaining to certain disabilities not contained in the previous plan where such limitations reduced benefits to 24 months. (Second Amended Complaint, claims for relief page 15 at 1-7)

**A. The Plan administrator did not properly disclose the material reductions in an SPD.**

As described more fully in Plaintiffs Statement of Undisputed Facts, the plan changes amending the plan were transparent to the average plan participant given the determining limitations of plaintiffs claim came from the plan contract and not the SPD (Fact 38). If Plaintiff had been timely delivered a copy of 1999 SPD, it would not have mattered. 1995 SPD and 1999 SPD look functionally alike and a reading would have prejudiced the reader to believe the terms and conditions of 1995 SPD were carried forward into 1999 SPD.

There exists in 1999 SPD no distinctive language that would make the coverages defined in 1999 SPD look any different than coverages defined in 1995 SPD (Facts 43-45.) Even the language of the Self Reported Symptoms rule suggests that Plaintiffs claim

for benefits should have been covered under the Prudential Plan given plaintiffs diagnosis was completed using a medical procedure (Facts 1-5.). Also, the use of the term "Long Term Disability" is prominently displayed in similar fashion through both documents on the cover, in the plan name, and in other areas (Fact 45). When plaintiff did finally read 1999 SPD after 2001, plaintiff did not perceive any difference in coverage between 1995 SPD and 1999 SPD (Second Amended Complaint Page 10 at 36)

Plan Participants are entitled to appropriate equitable relief for SPD violations even where the document was not read at a specific appointed time. "[J]ust as a court's enforcement of a contract generally does not require proof that the parties to the contract actually read, and therefore relied upon, the particular terms of the contract, we are persuaded that enforcement of an SPD's terms under a claim for plan benefits does not require a showing of reliance." *Burstein v. Allegheny*, 334 F.3d 365 (3d Cir. 2003). Enforcement is instead based on showing that the SPD conflicts with the Plan language by inadequately disclosing a limitation or other restriction. In *Jordan v. Federal Express*, 116 F.3d 1005 (3d Cir. 1997) the Court held that extraordinary circumstances are not required to obtain relief for a breach of fiduciary duty based on inadequate disclosures.

**1. The plan administrators duty to report the material modifications from any plan amendment.**

ERISA's fiduciary duty to disclose is the duty "not only to inform a beneficiary of new and relevant information as it arises, but also to advise him of circumstances that

threaten interests relevant to the relationship." *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C. Cir. 1990). Where there is a plan amendment to an ERISA benefit plan, any subsequent disclosures must be a comparison between the prior and amended plan and such comparison cannot leave out information needed to make the information given "accurate and comprehensive." See 29 U.S.C. 1022(a); 29 C.F.R. 2520.102-2(b); and *Burstein v. Allegheny*, supra 378-79. Modifications from 1995 SPD to 1999 SPD can only be accurately determined to have been incorporated when the plan coverages of the Hartford Plan are compared against the coverages of the Prudential Plan.

There exists no document or prominently displayed section in 1999 SPD that discloses material modifications (Facts 38-39) in the change from the Hartford Plan and the Prudential Plan. A Plan administrator has a special duty to offer "complete and accurate" disclosures about provisions that are "confusing" or "likely to be misunderstood." *Harte v. Bethlehem Steel*, 214 F.3d 448 and 452-3 (3d Cir. 2000); see also *In re Unisys ERISA Litig.*, 57F.3d 1255, 1264 (3d Cir. 1995) (recognizing "employer's duty, as an ERISA fiduciary, not to misinform employees through ... incomplete, inconsistent, or contradictory disclosures"). "Any description of exceptions, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure, or otherwise made to appear unimportant. The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations." 29 C.F.R. 2520.102-2(b); see also *Layaou v. Xerox Corp.*, 238 F.3d 205, 209 (2dCir. 2001). If descriptions of restrictive plan provisions are not disclosed "in close conjunction with the description or summary" of benefits, "clear cross-references" are required. 29C.F.R. 2520.102(a) and (b); see also *Burke v. Kodak*

*Retirement Income Plan*, 336 F.3d. 103, 110-11 (2d Cir. 2003), cert. denied, 124 S. Ct. 1046 (2004) (description of survivor's benefits did not cross-reference a significant requirement to actually receive those benefits).

A reduction in plan benefits due to incorporation of new contractual policies under the Self Reported Symptoms rule where specific disabilities such as Fibromyalgia become limited to 24 months of benefits represent a substantive change to the plan and not a procedural change. See e.g. *Smathers v. Multi-Tool, Inc.*, 298 F.3d 191, 195 (3d Cir. 2002) (distinguishing an amendment that changes a "procedural" rule and explaining that ERISA does not allow plan sponsors to retroactively adopt "substantive" amendments that "change the coverage under the plan or substance of [the employee's] benefits or his entitlement to them"). The evidence in this litigation shows that under Prudential plan and under the Self Reported Symptoms rule, Fibromyalgia is a disability limited to 24 months of benefits. Further, medical evidence from Fibromyalgia is never credited into any disability review as "objective evidence" and therefore such medical evidence cannot be applied to support an elevated symptoms from another concurrent disability. There existed no Self Reported Symptoms rule or other similar rule under the Hartford Plan with absolute limitations on medical evidence for a disability from Fibromyalgia.

**2. The Summary of Material Modifaction must be written in language the average plan participant would understand**

29 C.F.R 2520.104b-3 provides in pertinent part that the Plan Administrator is required to; (a) furnish to each participant covered under the plan a summary, written in a manner calculated to be understood by the average plan participant...(d)(3(i) any modification to the plan ... considered by the average plan participant to be an important reduction in covered services or benefits under the plan...(d)(3)(ii) that: eliminates benefits payable under the plan; reduces benefits payable under the plan, including a reduction that occurs as a result of a change in formulas, methodologies or schedules that serve as the basis for making benefit determinations.

29 C.F.R 2520.104b-3(d)(3) defines a "material reduction" as being;

> (3) ``Material reduction''. (i) For purposes of this paragraph (d), a ``material reduction in covered services or benefits'' means any modification to the plan or change in the information required to be included in the summary plan description that, independently or in conjunction with other contemporaneous modifications or changes, would be considered by the average plan participant to be an important reduction in covered services or benefits under the plan.
>
> (ii) A ``reduction in covered services or benefits'' generally would include any plan modification or change that: eliminates benefits payable under the plan; reduces benefits payable under the plan, including a reduction that occurs as a result of a change in formulas, methodologies or schedules that serve as the basis

for making benefit determinations; increases premiums, deductibles, coinsurance, copayments, or other amounts to be paid by a participant or beneficiary…"

A disclosure of a material modification necessarily involves a comparison. In the case of the 1999 Plan Amendment, a comparison between the coverages offered under the Hartford Plan must be compared against coverages under Prudential Plan. A plan administrator must explain "the full import of the interaction" between an amendment and existing plan provisions *Chambless v. Masters Mates & Pilots*, 772 F.2d 1032, 1040 (2d Cir. 1985), cert. denied, 475 U.S. 1012 (1986). In *Baker v. Lukens Steel Co.*, 793 F.2d 509, 511-12 (3d Cir. 1986), an employer eliminated a "special" early retirement benefit but did not disclose the elimination to participants. The Third Circuit held that the "deletion" was a "material modification" and therefore a summary had to be distributed to each employee.

1999 SPD contains no Summary of Material Modification or specific plan language showing Fibromyalgia or the associated medical evidence from Fibromyalgia, is limited to 24 months.

3. **The applicable law in Faulty SPD's**

ERISA "contemplates that the summary [plan description] will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907-08 (2d Cir. 1990). If a summary plan "is inadequate to inform an

employee of his rights under the plan, ERISA empowers plan participants and beneficiaries to bring civil actions against plan fiduciaries for any damages that result from the failure to disclose" under 29 U.S.C. § 1132(a)(1)(B). *Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir. 1990).

**4. NFA could have taken reasonable steps to ensure plaintiff and other plan participants were protected by proper disclosure in the plan amendment.**

The plan change from a high cost subsidized plan to a substantially lower cost employee paid plan had potential problems which could have been anticipated by the fact that the prior plan provider was unable to compete with the lower cost providers NFA was interested in (Fact 98). The knowledge of such disparity in premium costs should have sounded a warning bell to fiduciaries at NFA. (ex Memorandum)

A breach of fiduciary duty is established when it is shown that a fiduciary knew about or should have foreseen the employees' need for material information, but failed to disclose it. See *Bixler v. Central Pa. Teamsters Health & Wel. Fund*, 12 F.3d 1300 (3d Cir.1993) (failure to disclose facts which the fiduciary could see the beneficiary did not know but needed to know); *Glaziers v. Newbridge Sec.*, 93 F.3d 1171 (3d Cir. 1996) (fiduciary must communicate information "visible to its practiced eye" that is in the "best interest" of beneficiaries to disclose).

**B. NFA's Disclosures were untimely**

Plaintiff received no notice from NFA that the plan had change (Facts 102-103). Plaintiff is not alone in not receiving notice. Plaintiff did do an ad hoc survey of other prior employees on receiving proper notice of the plan amendment (Fact 100) and these persons were later deposed by NFA and testified to lack of notice (Fact 101).

Even if meetings were conducted by Prudential, the facts of this litigation show that the SPD itself did not properly disclose material modifications. It cannot be held that a meeting presented by Prudential representatives (ex Memorandum) would have provided different disclosure than of that in the 1999 SPD.

There exists no record that NFA distributed SPD's to plan participants in 1999 (Facts 86-88). SPD's must be distributed in a manner that ensures "actual receipt" by each participant. 29C.F.R. 2520.104b-1(b). In *Leyda v. Allied Signal, Inc.*, 322 F.3d 199, 201-3 and 208-9 (2d Cir.2003), a participant did not receive an SPD that disclosed a reduction in life insurance. Even though the company used several different methods for distribution, its "distribution procedures could easily have missed some participants" whereas ERISA requires the SPD to reach "each" participant. NFA provides no record that NFA took receipt of, and distributed by mail, hundreds of SPD's for all plan participants (Fact 86). 29 C.F.R. 2520.104b-1(b). ERISA §107, 29 U.S.C. §1027, requires that records be maintained at the principal office of the plan administrator to verify compliance with the disclosure requirements. See, e.g., *Medoy v. Warnaco Employees Long Term Disability Ins. Plan*, 43 F.S.2d 303, 311 (S.D.N.Y. 1999).

Defendants claim that "acceptable methods of delivery include in-hand delivery at the worksite and first class mail". Defendants do not show that there an effort was made

to hand deliver to plaintiff a copy of 1999 SPD (Fact 86). Further while these methods are acceptable under ERISA as a general rule, in the case of reliance they are not acceptable. "[A]n amendment to a Plan is valid" despite a beneficiary's lack of personal receipt of the SPD "unless the beneficiary can show active concealment by the Plan or some significant reliance upon or possible prejudice flowing from the lack of notice." *Heil v. Midwest Operating Eng'rs*, 1993 WL 226303 (N.D. Ill. 1993). Plaintiff does establish prejudice, reliance, and exceptional circumstances in this complaint.

**C. Plaintiffs reliance on the 1995 SPD**

In resolving questions of the disability plan terms and conditions, the SPD "controls". See *Mattias v. Computer Sciences Corp.*, 34 F. Supp.2d 120 (District of Rhode Island 1999).

Plaintiff provides in outline form the basis of reliance on 1995 SPD. Plaintiff was pursued over the course of six weeks in 1994 -1995 by the President of Hope Webbing to fill an important role in the front office of the new company headquarters. (Facts 44-61.) On the inducement of a specific disability plan described in general by the President of Hope Webbing and confirmed in detail by the Director of Personnel, plaintiff did switch jobs in March 1995 (Facts 62-66). Plaintiff did believe that the specific disability plan was part of a compensation package tied to plaintiffs leaving one job to come to work at Hope Global (Facts 73 and 75). Plaintiff retained detailed knowledge of the plan for the years following and relied on those specific plan coverages of 1995 SPD (Facts 69-70). Plaintiff relied on the knowledge of the terms and conditions of the 1995 SPD (Facts 73-77). Plaintiff was not properly informed of the change in plans in 1999 (Facts 78)

Where a duty to disclose exists, there is precedent from securities cases that reliance is presumed from the materiality of the information not disclosed, following the Supreme Court's decisions in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 152-54 (1972), and *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384-85 (1970). "The presumption of reliance exists . . . to aid plaintiffs when reliance on a negative would be practically impossible to prove." *Joseph v. Wiles*, 223 F.3d 1155, at 1162-63 (10th Cir. 2000). *In Simon DeBartolo Group v. Richard E. Jacobs Group*, 186 F.3d 157, 173 (2d Cir. 1999), the Second Circuit held that "where the claim rests on an omission, . . reliance may be presumed upon a showing that the omitted information was material." See also *Feinman v. Dean Witter Reynolds, Inc.*, 84 F.3d 539, 541 (2d Cir. 1996).

The presumption of reliance on the non-disclosure of material information should be applied to non-disclosure cases under ERISA. In *Daniel v. Teamsters*, 439 U.S. 551, 570 (1979), the Supreme Court decided that the Securities Acts did not apply to employees' "investment" interests in their retirement plans, but ruled that "Whatever benefits employees might derive from the effect of the Securities Act are now provided in more definite form through ERISA." The Court's statement would be untrue if enforcement of ERISA disclosure rules was stymied by a burden of proof that requires employees, in contrast to other investors, to prove negatives in cases involving material non-disclosures.

**1. NFA was under a fiduciary duty to keep plan records readily available at the office of the plan administrator.**

NFA did successfully argue in this litigation in the Hearing before Magistrate Judge Lincoln Almond, April 6, 2005, that the NFA central location to obtain plan documents is the office of the Plan Administrator as noted on Page 33 of 1999 SPD being: NFA Corporation, 850 Boylston Street, Boston, Ma. 02199 (Fact 108). The circumstances of defendants previous successful argument that the plan administrators office in Boston Massachusetts as being the proper location to obtain plan documents warrants that under the doctrine of judicial estoppel, defendants be precluded from "asserting legal or factual positions inconsistent with the positions that they took in prior proceedings." *United States v. Velez Carrero*, 140 F.3d 327, 330 (1st Cir. 1998). Plaintiff brings this point before the Court in view of the substantial loss of documents claimed by NFA due to a flood which occurred at a location not at the principal office of the plan administrator. (Fact 104)

**C. Analysis and remedies**

Relief for disclosure violations of 29 U.S.C. 1022 where it can be shown that there was either reliance or prejudice on a faulty plan document is well established in all of the Circuits. See e.g. *Aiken v. Policy Mgmt. Sys. Corp.*, 13 F.3d 138, 141-42 (4th Cir. 1993) (per curiam); *Palmisano v. Alina Health Sys., Inc.*, 190 F.3d 881, 887-88 (8th Cir. 1999); *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1519 (10th Cir. 1996).

The First Circuits 1984 opinion in *Govoni v. Bricklayers, Masons and Plasterers Int'l Union of Am., Local No. 5 Pension Fund,* 732 F.2d 250, 252 (1st Cir. 1984). is the controlling precedent. See e.g. *Mauser v. Raytheon Co. Pension Plan for Salaried Employees*, 239 F.3d 51, 55-56 (1st Cir. 2001).

Plaintiff has demonstrated both prejudice and reliance on a faulty SPD. What would plaintiff have done with proper disclosure? The Third Circuit provides an answer. "[F]ull disclosure" "permits employees to bargain further or seek other employment if they are dissatisfied with their benefits." *Hamilton v. Air Jamaica*, 945 F.2d 74, 78 (3d Cir. 1991). It must be finally stated that NFA had a monetary interest in picking a lesser cost plan that had surface similarities to the prior plan. NFA was abandoning the company contributions and in so doing, would benefit by providing a plan that looked the same but cost less to keep employees happy. Until such employees actually "started the engine" and applied for benefits, only then would they realize the harm. The remedy for violations of a faulty SPD or untimely provided SPD are the same, which is to adopt the provisions of the prior plan to determine plaintiffs continuing disability benefit payments beyond 24 months.

## VI. NFA had a duty to make readily available any plan document requested by a plan participant.

NFA did not provide a requested copy of 1995 SPD in a timely manner with a first refusal of plaintiffs request for 1995 SPD dated December 10, 2004 and followed by a second refusal dated December 17, 2004 (Fact 105.) At the time plaintiff submitted a

request 1995 SPD, NFA had, a copy of US Department of Labor "Mario Amicus Brief" provided by Plaintiff at a time around January 5, 2005 which states "if a participant wants information beyond that required in the SPD, including information on the administrators discretion, the participant can obtain it... ERISA §§ 104(b)(2) and (4), 29 U.S.C. § 1024(b)(2) and (4)" (Fact 107.) NFA also had 1995 SPD in their possession (Fact 106.)

**A. 1995 SPD was a legal and formal plan document defining terms and conditions of the plan prior to the 1999 change in plan providers.**

1995 SPD is a plan document that defines terms and conditions of the plan prior to 1999 plan amendment(Fact 14). Congress establishes clear and unambiguous language that documents must be retained for a minimum of period of "6 years" by the plan administrator and not by the plan participant. See 29 U.S.C. § 1027. Congress also establishes "except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation" See 29 U.S.C. § 1113 (Limitation of actions).

A prior SPD does have legal significance in governing the methods by which the plan can make payments to plan participants in the event a current SPD is declared to be faulty. Where Courts have ruled plan amendments invalid, prior SPD's serve as governing plan documents. See e.g. *Koenig v. International Life Corp.*, 880 F. Supp. 372, 376 (E.D. Pa. 1995) (prior benefit formula continued in absence of required notice of reduction).

Payment of benefits must be made from a valid SPD since benefits must be determined by a governing "written instrument" which "specif[ies] the basis on which

payments are made to and from the plan" see ERISA § 402(b)(4), 29 U.S.C. §1102(b)(4); *Great-West Life & Annuity v. Knudson*, 534 U.S. 204 (2002) (holding that a contractual obligation to pay money is not authorized under equitable relief ERISA §502(a)(3)). An SPD is the controlling plan document which specifies the basis on which payments are made to and from the plan. See *Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan*, 144 F. 3d 1014, 1023 (7th Cir. 1998); *Sprague v. General Motors Corp.*, 133 F. 2d 388, 400 (6th Cir. 1998).

An SPD held in retention under ERISA §107, 29 U.S.C. §1027 functions as a legal plan document which specifies the basis on which payments are made to and from the plan in the event an amendment is declared invalid. The Fourth Circuit provides guidance on what constitutes an "other instrument" within the terms of ERISA § 502(c), 29 U.S.C. §1132(c) being "the language other instruments under which the plan is established or operated encompasses formal or legal documents under which a plan is set up or managed". *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 653 (4th Cir. 1996). The First Circuit reiterates the opinion in *Faircloth* stating that other instruments means "a phrase that in context refers to the formal legal documents that underpin the plan". *Doe v. Travelers Insurance Co.*, 167 F.3d 53 (1st Cir. 1999).

Plaintiffs civil action requires 1995 SPD to establish the claims set forth. Lacking 1995 SPD would have rendered plaintiffs action virtually impossible to prove. Plaintiffs request for 1995 SPD was a request for a governing plan document defining terms and conditions of the plan as plaintiff understood the terms and conditions to be and prior to the 1999 plan amendment and requested within the six year statute of limitations.

### B. Remedy

Plaintiff respectfully requests that this Honorable Court give consideration to assigning penalties of $100 per day from the period on December 10, 2004 at the time of first refusal until June 16, 2004 when plaintiff did receive 1995 SPD as allowed under 29 U.S.C. § 1132(c)(1)(B). Plaintiff respectfully requests that in assigning penalties, that the Court give consideration to the months of hardship plaintiff suffered battling for a document while substantially ill (Fact 109).

## VII. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court enter and Order granting the motion for summary judgment.

Dated: April 25, 2006

Respectfully submitted

Lorraine Femino

Lorraine Femino, Plaintiff, Pro Se
4 Bayou Drive

Greenville, R.I. 02828
(401)-949-4933

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was served by United States Postal Mail, postage prepaid on this 26th day of April, 2006 to:

William E. O'Gara, Counsel for Defendants
One Financial Plaza, Suite 1800
Providence, RI 02903

Lorraine Femino

Lorraine Femino, Plaintiff, Pro Se
4 Bayou Drive
Greenville, R.I. 02828
(401) 949-4933