UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LORRAINE FEMINO | : | |
| VS. | : | Civil Action No. 05-019ML |
| NFA CORPORATION d/b/a HOPE GLOBAL | : | |

**PLAINTIFFS OBJECTIONS TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Lorraine Femino
Pro Se

Lorraine Femino
4 Bayou Drive
Greenville, R.I. 02828
Tel: (401) 949-4933

## I. Legal Standard

A party seeking summary judgment must show there is no genuine issue as to material facts by setting out facts that would be admissible in evidence supported by depositions, interrogatory answers, and admissions, together with affidavits. FRCP 56(c) and (e). "In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff[.]" *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). The defendant is entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff would be unable to recover under any set of facts." *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001); see also *Wall v. Dion*, 257 F. Supp.2d 316, 318 (D. Me. 2003). The Court is not required to credit 'bald assertions' or legal conclusions. *Shaw v. Digital Equipment Corp.*, 82 F. 3d 1194, 1216 (1st Cir. 1996)

## II. Introduction

NFA offers a number of unsupported conclusory statements some of which have previously been advanced. This case originates from the undisputed fact that plaintiffs disability benefits were terminated after 24 months in spite of the fact that plaintiff remains disabled with the same disability. There is no evidence put forth in NFA's Motion for Summary Judgment that shows the prior disability plan would have also limited benefits to 24 Months.

NFA also does not address the fact that Prudential Insurance Company, the new plan provider, cannot accept NFA's fiduciary obligations in ERISA disclosure requirements. Only

the Plan Administrator has a fiduciary duty to make material modifications known to plan participants.

NFA's motion relies heavily on faulty "interpretation" and invented terminology to describe ERISA statutory requirements. For example, "outdated SPD" and "technical violations" have no definition in ERISA, nor does the case law cited provide clarity as to how these terms apply to plaintiffs specific claims.

A substantial amount of evidence and facts are missing from NFA's motion as it pertains to this case. Plaintiff relies heavily on plaintiffs Statement of Undisputed Facts in filing these objections to NFA's motion for summary judgment.

**A. NFA is not entitled to judgment as a matter of Law on plaintiffs claim relating to the Written Summary of Material Modifications.**

**1. NFA Was Required to Provide Plaintiff a Written Summary of Material Modifications Because the Modifications Were Incorporated in Plan Documents Timely Furnished to the Plaintiff.**

NFA asserts in the motion that modifications were "incorporated" in plan documents, but fails to state the nature of the modifications, where such modifications were incorporated in plan documents, or which plan documents NFA is specifically referring to. ERISA "contemplates that the summary [plan description] will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary." *Heidgerd v. Olin Corp.*, 906 F.2d 903, 907-08 (2d Cir. 1990).

NFA fails to include in the motion the comparative document needed to determine the modifications being the Summary Plan Description for the disability plan provided by Hartford Life and Accident Insurance Company prior to the plan amendment. (hereinafter 1995 SPD). An understandable comparison cannot leave out information needed to make the information given "accurate and comprehensive." See 29 U.S.C. 1022(a); 29 C.F.R. 2520.102-2(b); and *Burstein v. Allegheny*, 334 F.3d 365, 375 and 378-79 (3d Cir. 2003). Modifications from 1999 SPD can only be summarized with the inclusion of a copy of 1995 SPD which plaintiff has included as Plaintiffs exhibit 9 in Plaintiffs Statement of Undisputed Facts and referenced as 1995 SPD. For clarity, Plaintiff will reference plaintiffs facts with the notation (Plaintiff Fact(s) ¶) as being the facts as submitted in Plaintiffs Statement of Undisputed Facts in Plaintiffs Motion for Summary Judgment.

The Summary Plan Description for the Prudential Insurance Company Disability plan for NFA (hereinafter 1999 SPD) affirmatively states that a covered disability providing monthly payments until a normal retirement age is a disability verifiable using "procedures and clinical examinations standardly accepted in the practice of medicine" (ex. H p. 18). 1999 SPD then fails to identify in 1999 SPD any circumstances which may result in the denial, loss, or forfeiture of a claim where a medical doctor did use "procedures and clinical examinations standardly accepted in the practice of medicine" to diagnose a disability. Under this singular definition, plaintiffs disability should have been covered for benefits beyond 24 months since plaintiffs diagnosis was completed under the clinical procedure accepted by the Social Security Ruling 99-2p (hereinafter SSR-99-2p) which holds that "Individuals with impairments that fulfill the American College of Rheumatology criteria for [Fibromyalgia] (which includes a minimum number of tender points) may also fulfill the criteria for CFS" (Plaintiff Facts ¶¶ 4-6.) Plaintiffs denial of benefits beyond

24 months from Prudential was not based on terms and conditions under the Self Reported Symptoms Rule as disclosed in 1999 SPD, but instead on terms and conditions in the Plan Document (Fact ¶ 38). The "law of the SPD" holds that where an SPD and the Plan Documents contradict or conflict with each other, the SPD controls. See *Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan,* 144 F. 3d 1014, 1023 (7th Cir. 1998); Sprague v. General Motors Corp., 133 F. 2d 388, 400 (6th Cir. 1998); However, where an SPD is "silent" on an issue, the Plan Document controls. See *Mers*, 144 F. 3d at 1023. In 1999 SPD the terms and conditions of the discretionary policies under the Self Reported Symptoms Rules were in the plan document, not in 1999 SPD (Plaintiffs Fact ¶38). The prior SPD under the Hartford Life and Accident Insurance Company (hereinafter 1995 SPD) did not have any similar automatic written rules similar to the Self Reported Symptoms Rule contained in 1999 SPD where all medical evidence for a specific disability would be excluded from all disability reviews. (Plaintiffs Fact ¶ 39.)

NFA fails to show how an average plan participant would be able to distinguish a difference in plan coverage between 1995 SPD and 1999 SPD where 1999 SPD prominently displays the term "Long Term Disability" in a similar manner to 1995 SPD (Cause of Action ¶ 5, Second Amended Complaint). In 1995 SPD, the term "Long Term Disability" was meant to mean coverage for a medical illness that was based on a medical doctors determination of a "sickness" that was based on medical evidence without a specific written rule excluding medical evidence submitted under a medical clinical procedure (Plaintiff Fact ¶ 20.) 1999 SPD contains similar language in 1995 SPD to define a "Long Term Disability" until a normal retirement age as being based on a medical doctors determination of a disability verifiable using "procedures and clinical examinations standardly accepted in the practice of medicine" (ex H p 18.)

Plaintiffs specific termination in benefits after 24 months was not based on policies defined in the SPD but instead based on policies in the plan document ( Plaintiffs Fact ¶ 38.) NFA does not disclose in the motion that 1995 SPD contained no self reported symptoms rule or any similar rule to automatically limit disability payments to 24 months as is the case in 1999 SPD (Plaintiff Fact ¶ 20).

Pertaining to the difference between 1995 SPD and 1999 SPD, NFA being the plan administrator had a special duty to offer "complete and accurate" disclosures about provisions that are "confusing" or "likely to be misunderstood." *Harte v. Bethlehem Steel,* 214 F.3d 448 and 452-3; see also In re Unisys ERISA Litig., 57F.3d 1255, 1264 (3d Cir. 1995) (recognizing "employer's duty, as an ERISA fiduciary, not to misinform employees through ... incomplete, inconsistent, or contradictory disclosures"). "Any description of exceptions, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure, or otherwise made to appear unimportant. The advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations." 29 C.F.R. 2520.102-2(b); see also *Layaou v. Xerox Corp.*, 238 F.3d 205, 209 (2dCir. 2001). If descriptions of restrictive plan provisions are not disclosed "in close conjunction with the description or summary" of benefits, "clear cross-references" are required. 29C.F.R. 2520.102(a) and (b); see also *Burke v. Kodak Retirement Income Plan*, 336 F.3d. 103, 110-11 (2d Cir. 2003), cert. denied, 124 S. Ct. 1046 (2004) (description of survivor's benefits did not cross-reference a significant requirement to actually receive those benefits).

Defendants cite *Sweeney v Butz* 1993 WL 54585, at *3 (N.D. Ill Feb. 26, 1993) holding that a summary of material modifications (SMM) can be incorporated into an SPD. Plaintiff does not dispute that ERISA allows an SMM to be incorporated into an SPD. However,

defendants state no specific examples to show where the SPD functioned as an SMM. A plan administrator must explain "the full import of the interaction" between an amendment and existing plan provisions *Chambless v. Masters Mates & Pilots*, 772 F.2d 1032, 1040 (2d Cir. 1985), cert. denied, 475 U.S. 1012 (1986). A disclosure of a material modification necessarily involves a comparison. In *Baker v. Lukens Steel Co.*, 793 F.2d 509, 511-12 (3d Cir. 1986), an employer eliminated a "special" early retirement benefit but did not disclose the elimination to participants. The Third Circuit held that the "deletion" was a "material modification" and therefore a summary had to be distributed to each employee.

NFA's narrow interpretation of provisions of 29 C.F.R 2520.104b-3(b) fails when 29 C.F.R 2520.104b-3 is viewed in whole requireing the plan administrator to;

> (a) furnish to each participant covered under the plan a summary, written in a manner calculated to be understood by the average plan participant…(d)(3(i) any modification to the plan … considered by the average plan participant to be an important reduction in covered services or benefits under the plan…(d)(3)(ii) that: eliminates benefits payable under the plan; reduces benefits payable under the plan, including a reduction that occurs as a result of a change in formulas, methodologies or schedules that serve as the basis for making benefit determinations.

29 C.F.R 2520.104b-3(d) states that "any modification to the plan or change in the information required to be included in the summary plan description" is "within the meaning of paragraph (a) of this section" where paragraph (a) provides in pertinent part;

> (a) The administrator of an employee benefit plan subject to the provisions of part 1 of title I of the Act shall, in accordance with Sec. 2520.104b-1(b), furnish a summary description of any material modification to the plan and any change in the information required by section 102(b) of the Act and Sec. 2520.102-3 of these regulations to be included in the summary plan description to each participant covered under the plan and each beneficiary receiving benefits under the plan.

29 C.F.R 2520.104b-3(d)(3) defines a "material reduction" as being

> (3) ``Material reduction''. (i) For purposes of this paragraph (d), a ``material reduction in covered services or benefits'' means any modification to the plan or change in the information required to be included in the summary plan description that, independently or in conjunction with other contemporaneous modifications or changes, would be considered by the average plan participant to be an important reduction in covered services or benefits under the plan.
>
> (ii) A ``reduction in covered services or benefits'' generally would include any plan modification or change that: eliminates benefits payable under the plan; reduces benefits payable under the plan, including a reduction that occurs as a result of a change in formulas, methodologies or schedules that serve as the basis for making benefit determinations; increases premiums, deductibles, coinsurance, copayments, or other amounts to be paid by a participant or beneficiary; reduces the service area covered by a health maintenance organization; establishes new conditions or requirements (i.e., preauthorization requirements) to obtaining services or benefits under the plan.

NFA contends that meetings were held by Prudential to explain the new plan, but fail to properly document and record the information provided at the meetings and retain such records at the office of the plan administrator to be "readily available" for examination. See 29 C.F.R. 2520.104b-1 (disclosure), ERISA §107, 29 U.S.C. §1027(retention). Plaintiff did not attend a meeting nor did other employees who plaintiff talked to. Plaintiff did do an ad hoc survey of other employees who did provide testimony that they were unaware of any meetings to discuss the disability plan amendment. (Plaintiffs Facts at ¶¶ 100-101). Further, the claim NFA makes on meetings held were that such meetings were conducted by Prudential representatives who had no obligation or information on the prior plan allowing a comparative discussion on "modifications". (Defendants Fact ¶ 5)

**2. NFA Did Not Satisfy its Disclosure Obligations**

NFA's claim that NFA satisfied its disclosure obligation is not factual

NFA did not maintain important plan records pertaining to meetings or distributing SPD's where ERISA requires such records be maintained to certify disclosure obligations at the principal office of the plan administrator as required under 29 C.F.R. 2520.104b-1(b), ERISA §107, 29 U.S.C. §1027. (Plaintiff Fact ¶¶ 86 – 88.)

Following Plaintiffs request for assistance in plaintiffs denial of benefits beyond 24 months and the request for supporting plan documents, NFA used "silence" against plaintiff. (Plaintiffs Fact ¶13) thus violating 29 CFR 2560.503-1(h)(1) – (Claims procedure) which requires that "[e]very employee benefit plan shall establish and maintain a procedure by which a

claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan.

NFA's claim that plaintiffs lack of receipt of 1999 SPD "is of no moment" is not correct. SPD's must be distributed in a manner that ensures "actual receipt" by each participant. 29C.F.R. 2520.104b-1(b). In *Leyda v. Allied Signal, Inc.*, 322 F.3d 199, 201-3 and 208-9 (2d Cir.2003), a participant did not receive an SPD that disclosed a reduction in life insurance. Even though the company used several different methods for distribution, its "distribution procedures could easily have missed some participants" whereas ERISA requires the SPD to reach "each" participant. Other NFA plan participants have testified that they remember attending 401K Plan meetings, but not Disability plan meetings. (Plaintiffs Facts ¶¶ 100-103). 29 C.F.R. 2520.104b-1(b). ERISA §107, 29 U.S.C. §1027, requires that records be maintained to verify compliance with the disclosure requirements. See, e.g., *Medoy v. Warnaco Employees Long Term Disability Ins. Plan*, 43 F.S.2d 303, 311 (S.D.N.Y. 1999). Defendants claim that "acceptable methods of delivery include in-hand delivery at the worksite and first class mail". While these methods are acceptable under ERISA as a general rule, in the case of reliance they are not acceptable. "[A]n amendment to a Plan is valid" despite a beneficiary's lack of personal receipt of the SPD "unless the beneficiary can show active concealment by the Plan or some significant reliance upon or possible prejudice flowing from the lack of notice." *Heil v. Midwest Operating Eng'rs*, 1993 WL 226303 (N.D. Ill. 1993). Plaintiff can establish reliance and prejudice resulting from untimely receipt of 1999 SPD (Plaintiffs Facts 73-78.). Further, the fact that the 1995 SPD did not contain disclosure about plan amendments as required under 29 U.S.C. § 1102, (Plaintiff Facts ¶¶ 17-19) lack of disclosure in the SPD of an amendment procedure would necessitate efforts exceeding ERISA's minimal standards. ERISA's fiduciary duty to disclose is the duty "not only to inform

a beneficiary of new and relevant information as it arises, but also to advise him of circumstances that threaten interests relevant to the relationship." *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750 (D.C. Cir. 1990).

**3. Plaintiff is Entitled to the Remedy of Monetary Damages.**

Plaintiff is entitled to recover damages for a faulty SPD. The First Circuits 1984 opinion in *Govoni v. Bricklayers, Masons and Plasterers Int'l Union of Am., Local No. 5 Pension Fund,* 732 F.2d 250, 252 (1st Cir. 1984). is the controlling precedent. See *Mauser v. Raytheon Co. Pension Plan for Salaried Employees*, 239 F.3d 51, 55-56 (1st Cir. 2001). If a summary plan "is inadequate to inform an employee of his rights under the plan, ERISA empowers plan participants and beneficiaries to bring civil actions against plan fiduciaries for any damages that result from the failure to disclose" under 29 U.S.C. § 1132(a)(1)(B). *Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir. 1990).

*Govoni* holds that "reliance" or "prejudice" must be shown to recover in cases of a faulty SPD. However, where a duty to disclose exists, there is precedent from securities cases that reliance is presumed from the materiality of the information not disclosed, following the Supreme Court's decisions in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 152-54 (1972), and *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384-85 (1970). "The presumption of reliance exists . . . to aid plaintiffs when reliance on a negative would be practically impossible to prove." *Joseph v. Wiles*, 223 F.3d 1155, at 1162-63 (10th Cir. 2000). In *Simon DeBartolo Group v. Richard E. Jacobs Group*, 186 F.3d 157, 173 (2d Cir. 1999), the Second Circuit held that "where the claim rests on an omission, . . . reliance may be presumed upon a

showing that the omitted information was material." See also *Feinman v. Dean Witter Reynolds, Inc.*, 84 F.3d 539, 541 (2d Cir. 1996). Lack of receipt of 1999 SPD until after plaintiff left work in 2001 would be a factor in plaintiffs reliance to 1995 SPD where plaintiff relied on 1995 SPD which did not contain a written amendment procedure. (Plaintiffs Facts ¶¶101&102 and ¶¶17-19)

The presumption of reliance on the non-disclosure of material information should be applied to non-disclosure cases under ERISA. In *Daniel v. Teamsters*, 439 U.S. 551, 570 (1979), the Supreme Court decided that the Securities Acts did not apply to employees' "investment" interests in their retirement plans, but ruled that "Whatever benefits employees might derive from the effect of the Securities Act are now provided in more definite form through ERISA." The Court's statement would be untrue if enforcement of ERISA disclosure rules was stymied by a burden of proof that requires employees, in contrast to other investors, to prove negatives in cases involving material non-disclosures.

**a. Substantive remedies are not available under ERISA for technical disclosure violations**

The NFA claim that the modifications resulting from 1999 plan amendment are only a "technical change" is a bald assertion. NFA's Statement of Undisputed Facts states that plaintiffs benefits were limited to 24 months, but do not show how a similar claim under the prior plan defined under 1995 SPD would be similarly limited to 24 months. A reduction in plan benefits due to incorporation of the Self Reported Symptoms rule did reduce plan coverages to 24 months "automatically" for plaintiffs disability of Fibromyalgia (Plaintiffs Fact ¶ 38.) 1995 SPD contained no such "automatic" limitations (Plaintiff Fact ¶ 39.)

The reductions in plan coverages resulting from the 1999 plan amendment are substantive changes and not a "technical" or procedural change. See e.g. *Smathers v. Multi-Tool, Inc.*, 298 F.3d 191, 195 (3d Cir. 2002) (distinguishing an amendment that changes a "procedural" rule and

explaining that ERISA does not allow plan sponsors to retroactively adopt "substantive" amendments that "change the coverage under the plan or substance of [the employee's] benefits or his entitlement to them"). NFA claim incorrectly that plaintiff cannot establish exceptional circumstances that would "allow…substantive recovery" (a. p10).

NFA states that relief for reporting and disclosure violations is offered only in conjunction with "exceptional circumstances", e.g., active concealment (a. p10), but provide no valid case law in the First Circuit confirming a requirement for exceptional circumstances. Other Circuits ruling on this requirement for disclosure violations have not established a requirement for exceptional circumstances See e.g. *Burstein v. Allegheny*, 334 F.3d 365 (3d Cir. 2003) which is the controlling precedent in the Third Circuit and did not require exceptional circumstances. *Burstein* holds that participants are entitled to appropriate equitable relief for SPD violations without establishing reliance on an individual-by-individual basis: "[J]ust as a court's enforcement of a contract generally does not require proof that the parties to the contract actually read, and therefore relied upon, the particular terms of the contract, we are persuaded that enforcement of an SPD's terms under a claim for plan benefits does not require a showing of reliance."334 F.3d at 381. Enforcement is instead based on showing that the SPD conflicts with the Plan language by inadequately disclosing a limitation or other restriction. In *Jordan v. Federal Express*, 116 F.3d 1005 (3d Cir. 1997) the Court held that extraordinary circumstances are not required to obtain relief for a breach of fiduciary duty based on inadequate disclosures.

NFA breached their fiduciary duty by disregarding plan participants rights to proper disclosure in the 1999 plan amendment. There is no genuine dispute that NFA had the right to amend or terminate the plan in 1999. This litigation involves denying plaintiff the right to take appropriate action to find a way around plan benefit reductions resulting from the plan

amendment. NFA ignored substantial warning signs that by amending the disability plan to a substantially lesser cost plan, coverages would be materially reduced. (Plaintiff Facts¶¶ 89-94 and ¶¶ 95-99.) ERISA requires the Plan Administrator to administer reasonable "prudent man standard of care" as required under 29 U.S.C. § 1104(a), where the lack of examination of the cost differences between plans was an accident which "ordinarily does not occur in the absence of someone's negligence," and that the accident was "caused by an . . . instrumentality within the exclusive control of [the] defendant." See *Colmenares-Vivas v. Sun Alliance Ins. Co.*, 807 F.2d 1102, 1106 (1st Cir. 1986).

**1. Plaintiff can show reliance prejudice and exceptional circumstances if needed**

As described more fully in Plaintiffs Statement of Undisputed Facts, prejudice in the matter of a faulty 1999 SPF flows from the fact that the plan changes amending the disability plan in 1999 were transparent to the average plan participant given the determining limitations of plaintiffs claim came from the NFA plan document and not 1999 SPD (Plaintiffs Fact ¶ 38). Even if Plaintiff had been timely delivered a copy of 1999 SPD, it would not have mattered. 1995 SPD and 1999 SPD look functionally alike and a reading would have prejudiced the reader to believe the terms and conditions of 1995 SPD were carried forward into 1999 SPD. Since NFA did not provide a specific summary of material modifications in the plan amendment, (Second Amended Complaint p 15 ¶ 2), a reading of 1999 SPD would not have revealed any differences resulting from the plan amendment.

There exists in 1999 SPD no distinctive language that would make the coverages defined in 1999 SPD look any different than coverages defined in 1995 SPD (Plaintiffs Facts ¶¶ 43-45.) Even the language of the Self Reported Symptoms rule suggests that Plaintiffs claim for benefits should have been covered under the Prudential Plan given plaintiffs diagnosis was completed

using a medical procedure (Plaintiffs Facts ¶¶1-5.). Also, the use of the term "Long Term Disability" is prominently displayed in similar fashion through both documents on the cover, in the plan name, and in other areas (Plaintiffs Fact ¶ 45). When plaintiff did finally read 1999 SPD after 2001, plaintiff did not perceive any difference in coverage between 1995 SPD and 1999 SPD (Second Amended Complaint Page 10 at 36)

Plaintiff provides in outline form the basis of reliance on 1995 SPD. Plaintiff was pursued over the course of six weeks in 1994 -1995 by the President of Hope Webbing to fill an important role in the front office of the new company headquarters. (Plaintiffs Facts ¶¶ 44-61.) On the inducement of a specific disability plan described in general by the President of Hope Webbing and confirmed in detail by the Director of Personnel, plaintiff did switch jobs in March 1995 (Plaintiffs Facts ¶¶ 62-66). Plaintiff did believe that the specific disability plan was part of a compensation package tied to plaintiffs leaving one job to come to work at Hope Global (Plaintiffs Facts ¶¶ 73 and ¶ 75). Plaintiff retained detailed knowledge of the plan for the years following and relied on those specific plan coverages of 1995 SPD (Plaintiffs Facts ¶¶ 69-70). Plaintiff relied on the knowledge of the terms and conditions of the 1995 SPD (Plaintiffs Facts ¶¶ 73-77). Plaintiff was not properly informed of the change in plans in 1999 (Plaintiffs Fact ¶ 78)

As was previously discussed herein, it can be shown that the Supreme Courts decision in *Daniel v. Teamsters*, 439 U.S. 551, 570 (1979) does not necessitate a requirement for a plan participant to show reliance in matters of disclosure.

**b. Plaintiff seeks a legal remedy – not equitable relief**

NFA's assumption that plaintiffs claim is based on 29 USC 1132 (a)(3) is incorrect. Plaintiff's claim is that failure to disclose a material modification to plan benefits is a breach of fiduciary duty where relief can be granted under 29 USC 1132 (a)(1)(b) which provides;

> (a) A civil action may be brought..(1) by a participant or beneficiary…(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

All of the Circuit Courts allow relief for disclosure violations of 29 U.S.C. 1022 where it can be shown that there was either reliance or prejudice on a faulty plan document. See e.g. *Aiken v. Policy Mgmt. Sys. Corp.*, 13 F.3d 138, 141-42 (4th Cir. 1993) (per curiam); *Palmisano v. Alina Health Sys., Inc.*, 190 F.3d 881, 887-88 (8th Cir. 1999); *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1519 (10th Cir. 1996). The First Circuits 1984 opinion in *Govoni v. Bricklayers, Masons and Plasterers Int'l Union of Am., Local No. 5 Pension Fund*, supra, is the controlling precedent. See *Mauser v. Raytheon Co. Pension Plan for Salaried Employees*, supra.

**c. Plaintiff may pursue a claim for benefits, relief under 1132(a)(3) and is not forclosed.**

Plaintiffs claim against NFA for breach of fiducicary duty for a faulty SPD is a proper claim as allowed under 29 U.S.C. § 1132 (a)(1)(b). NFA acknowledges that the limitations of plan coverages in the NFA disability plan provided by Prudential and limiting plaintiffs disability to 24 months are proper terms and conditions of the NFA disability plan. 1995 SPD

had no such limitations (Plaintiff Fact ¶ 39). Plaintiff was not properly informed of material reductions in coverages resulting from the plan amendment of 1999 (Plaintiff Fact ¶ 78).

## B. NFA DID NOT COMPLY WITH ITS FIDUCIARY OBLIGATION TO IMPLEMENT THE AMENDED PLAN PURSUANT TO A WRITTEN PLAN DOCUMENT

NFA provides no evidence that NFA took proper actions in 1999 to resolve the issues of 1995 SPD not containing two of the requisite features of 29 U.S.C. § 1102 (b) being "... (2) describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan (including any procedures described in section 1105(c)(1) of this title), and (3) provide a procedure for amending such plan and for identifying the persons who have authority to amend the plan" (Plaintiffs Facts ¶¶17-19) These requisite features of the plan are outlined under Part 4 of ERISA and are therefore to define fiduciary duties of the Plan Administrator, not the plan provider. ERISA Section 404, 29 U.S.C. § 1104 ("Fiduciary duties"), which requires, in pertinent part, that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... (D) in accordance with the documents and instruments governing the plan ...."

There is no record of resolutions or ratification of any resolution to amend the disability plan in the manner it was done in 1999 (Plaintiffs Fact ¶¶ 79-85.) The Courts have held "[o]nly a formal written amendment, executed in accordance with the Plan's own procedure for amendment, could change the Plan" and then "the amendment could operate only prospectively." *Confer v. Custom Eng'g Co.*, 952 F.2d 41, 43 (3d Cir. 1991).

Plaintiff does not propose this issue as a legal technicality. The primary issue to be decided in this specific matter is whether or not plan fiduciaries were ever named with a charge to undertake a fiduciary review before the plan amendment was ratified. The evidence shows this was never done. (Plaintiffs Facts 96-99.) Plaintiff contends that such lack of proper oversight is an extraordinary circumstance and a violation of ERISA. The evidence of the plan amendment shows no proper audit in 1998 or 1999. (Second Amended Complaint, p 16 ¶ 3 and Plaintiffs Facts ¶¶ 98-99.) It is a reasonable supposition that a primary reason for no fiduciary oversight in 1999 was due to NFA not implementing the plan amendment in accordance with an amendment procedure where a named fiduciary would review the proposal and insure all proper disclosures would be met.

NFA's premise that the amendment complied with fiduciary obligations fails based on the information contained in the "memorandum" (Plaintiffs Exhibit 10, Memorandum of Dorothy Mattiello, Human Resources Director) where NFA held that the plan designs were "the same" (Plaintiffs Fact ¶ 91). The plan designs were not "the same" (Plaintiffs Facts 38-42). The authorized decision-makers must possess "all the material facts." *Koprowski v. Wistar Inst. of Anatomy*, 1993 U.S. Dist. LEXIS 4867 *14 (E.D. Pa. April 6, 1993).

In the First Circuit and in other circuits, the Courts have rejected implied Plan amendments and the retroactive application of adverse amendments that are formally adopted after-the-fact. In *Warren v. Cochrane*, 235 F.S.2d 1 (D. Maine 2002), a Board resolution offered a benefit increase to "retired employees (as of December 31, 1990)." An amendment drafted later limited the increase to "each Retired Gannett Participant who is in pay status as of December 31, 1990." 235 F.S.2d at 5. Although the Benefits Manager and CFO considered the amendment "consistent with management's proposal" to the Board, the district court found "nothing in the

resolution that "sets forth" the language "ultimately incorporated.""[W]hatever was said or explained" at the Board meeting, "those present did not come away with a monolithic understanding that retirees not in pay status ...were to be excluded." 235 F.S.2d at 6-7. In *Confer v. Custom Eng'g Co.*, 952 F.2d 41,43 (3d Cir. 1991), a bulletin board notice and speech by the company's president announced an amendment eliminating health coverage for motorcycle accidents and the president later adopted the amendment in the duly-authorized form. But the Third Circuit held that "neither the speech nor the bulletin board announcement could effectively change" the written plan: "Only a formal written amendment, executed in accordance with the Plan's own procedure for amendment, could change the Plan" and then "the amendment could operate only prospectively." If no substantive difference separates a specific action taken by trustees at a meeting with a later formal plan amendment, the distinction between the two may not be drawn. *Huber v. Casablanca Indus.*, 916 F.2d 85, 105-6 (3d Cir. 1990) (amendment evidenced by written and signed minutes of trustees meeting was effective despite absence of formal amendment to the Plan.)

Precedents in other Circuits and the Restatement of Trusts firmly reject implied amendments. See *Curtiss-Wright v. Schoonejongen*, 514 U.S. 73 (1995) (the company is bound to "whatever level of specificity" it "chooses in an amendment procedure"), and Restatement of Trusts, §331 comment d (When a procedure for making changes is specified in a trust instrument, changes can be made "only in that manner"). Even when implied changes are recognized in other contexts, the authorized decision-makers must possess "all the material facts." *Koprowski v. Wistar Inst. of Anatomy*, 1993U.S. Dist. LEXIS 4867 *14 (E.D. Pa. April 6, 1993). ERISA "follows standard trust law principles in dictating only that whatever level of

specificity a company ultimately chooses, in an amendment procedure or elsewhere, it is bound to that level". *Curtiss-Wright v. Schoonejongen*, 514 U.S. 73 (1995).

"A fiduciary who fails to fulfill these responsibilities is 'personally liable to make good to [the] plan any losses to the plan resulting from . . . such breach.' Id. 1109(a)" *Beddall v. State St. Bank and Trust Co.*, 137 F.3d 12, 17 (1 Cir., 1998).

**C. NFA did have an obligation to provide plaintiff an outdated Summary Plan Description.**

NFA did not provide a requested copy of 1995 SPD in a timely manner with a first refusal of plaintiffs request for 1995 SPD dated December 10, 2004 and followed by a second refusal dated December 17, 2004 (Plaintiffs Fact ¶ 105.) At the time plaintiff submitted a request for 1995 SPD, NFA had a copy of US Department of Labor "Mario Amicus Brief" provided by Plaintiff at a time around January 5, 2005 which states "if a participant wants information beyond that required in the SPD, including information on the administrators discretion, the participant can obtain it... ERISA §§ 104(b)(2) and (4), 29 U.S.C. § 1024(b)(2) and (4)" (Plaintiffs Fact ¶ 107.) NFA also had 1995 SPD in their possession (Plaintiffs Fact ¶ 106.) NFA cannot assert that there is no obligation to provide a plan participant a document held in retention file under 29 U.S.C. § 1027.

The case law provided by NFA does not address any of the issues in this litigation. 1995 SPD is a plan document that defines terms and conditions of the plan prior to 1999 plan amendment (Plaintiffs Fact ¶ 14). Congress establishes clear and unambiguous language that documents must be retained for a minimum of period of "6 years" by the plan administrator and not by the plan participant. See 29 U.S.C. § 1027. Congress also establishes a legal means

where a plan participant can bring an action for a breach of fiduciary duty for up to six years stating "except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation". See 29 U.S.C. § 1113 (Limitation of actions).

A prior SPD does have legal significance in governing the methods by which the plan can make payments to plan participants in the event a current SPD is declared to be faulty. Where Courts have ruled plan amendments invalid, prior SPD's serve as governing plan documents. See e.g. *Koenig v. International Life Corp*., 880 F. Supp. 372, 376 (E.D. Pa. 1995) (prior benefit formula continued in absence of required notice of reduction).

Payment of benefits must be made from a valid SPD since benefits must be determined by a governing "written instrument" which "specif[ies] the basis on which payments are made to and from the plan" see ERISA § 402(b)(4), 29 U.S.C. §1102(b)(4); *Great-West Life & Annuity v. Knudson*, 534 U.S. 204 (2002) (holding that a contractual obligation to pay money is not authorized under equitable relief ERISA §502(a)(3)). An SPD is the controlling plan document which specifies the basis on which payments are made to and from the plan. See *Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan*, 144 F. 3d 1014, 1023 (7th Cir. 1998); *Sprague v. General Motors Corp*., 133 F. 2d 388, 400 (6th Cir. 1998).

An SPD held in retention under ERISA §107, 29 U.S.C. §1027 functions as a legal plan document which specifies the basis on which payments are made to and from the plan in the event an amendment is declared invalid. The Fourth Circuit provides guidance on what constitutes an "other instrument" within the terms of ERISA § 502(c), 29 U.S.C. §1132(c) being "the language other instruments under which the plan is established or operated encompasses formal or legal documents under which a plan is set up or managed". *Faircloth v. Lundy*

*Packing Co.*, 91 F.3d 648, 653 (4th Cir. 1996). The First Circuit reiterates the opinion in *Faircloth* stating that other instruments means "a phrase that in context refers to the formal legal documents that underpin the plan". *Doe v. Travelers Insurance Co.*, 167 F.3d 53 (1st Cir. 1999).

Plaintiffs civil action requires 1995 SPD to establish the claims set forth. In the event the Court rules on this matter for plaintiff, the written instrument from which payments can be made is 1995 SPD and not 1999 SPD. Lacking 1995 SPD would have rendered plaintiffs action virtually impossible to prove. Plaintiffs request for 1995 SPD was a request for a governing plan document defining terms and conditions of the plan as plaintiff understood the terms and conditions to be and prior to the 1999 plan amendment and requested within the six year statute of limitations.

## III. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court enter and Order Denying Defendants Motion for Summary Judgment.

Dated: April 26, 2006

Respectfully submitted

Lorraine Femino

Lorraine Femino, Plaintiff, Pro Se
4 Bayou Drive
Greenville, R.I. 02828
(401)-949-4933

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing document was served by United States Postal Mail, postage prepaid on this 27th day of April, 2006 to:

William E. O'Gara, Counsel for Defendants

One Financial Plaza, Suite 1800

Providence, RI 02903

Lorraine Femino

Lorraine Femino, Plaintiff, Pro Se
4 Bayou Drive
Greenville, R.I. 02828
(401) 949-4933