UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LORRAINE FEMINO, Plaintiff, | : | |
| v. | : | C.A. No. 05-19 ML |
| NFA CORPORATION, Defendant. | : | |

**DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant NFA Corporation hereby objects to Plaintiff's Motion For Summary Judgment. In support of its objection, Defendant relies upon Defendant's Local Rule 56 Statement of Disputed Facts, Defendant's Motion To Strike Portions of Plaintiff's Local Rule 56 Statement of Undisputed Material Facts and Memorandum in support thereof, and the arguments and legal authorities set forth in the accompanying Memorandum in Opposition to Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

NFA CORPORATION,

By its Attorneys,

PANNONE LOPES & DEVEREAUX, LLC

William E. O'Gara, Esq. (#4257)
1800 Financial Plaza
Providence, RI 02903
(401) 824-5100
(401) 824-5123 (facsimile)

CERTIFICATION

There undersigned hereby certifies that a true copy of the foregoing document was forwarded by first class mail, postage prepaid, on this 5th day of June, 2006 to:

Lorraine Femino
4 Bayou Drive
Greenville, RI 02828

Robert J. Cochran Jr.

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LORRAINE FEMINO, Plaintiff, | : | |
| v. | : | C.A. No. 05-19 ML |
| | : | |
| NFA CORPORATION, Defendant. | : | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Defendant NFA Corporation submits this Memorandum in Opposition to Plaintiff's Motion For Summary Judgment. For the reasons discussed herein, plaintiff's motion for summary judgment should be denied in its entirety.

## II. SUMMARY OF CLAIMS AND ARGUMENTS

In her summary judgment memorandum plaintiff lumps together for purposes of argument various "causes of action" asserted in her Second Amended Complaint. As summarized on pages 2-3 of her memorandum and as addressed in the body of her memorandum, her purported claims fall into three categories. First, plaintiff contends that because the 1995 Plan did not contain explicit amendment procedures, NFA was without power to revise the plan in 1999 and breached its fiduciary duty when it did so and, therefore, plaintiff is entitled to continue to receive the disability payments she had been receiving under the 1995 version of the Plan. Plaintiff asserts in her memorandum that she "seeks relief under 29 U.S.C. 1132(a)(1)(b)." (Plaintiff's Memorandum of Law in Support of Motion For Summary Judgment (hereinafter "Pl. Memo.") at 2, ¶ 1.)

As demonstrated herein, her arguments fail on numerous grounds. As a threshold matter, plaintiff did not assert a claim for benefits under § 1132(a)(1) in her Second Amended

Complaint. It is axiomatic that a plaintiff may not obtain summary judgment on a claim that has not been properly asserted in the operative pleadings. Plaintiff's belated attempt to rely on § 1132(a)(1) in this motion bespeaks another fatal flaw in her argument. Her claim properly should have been one for benefits against the Plan under § 1132(a)(1) and therefore relief is not available to her under 29 U.S.C. § 1132(a)(3), ERISA's catch-all provision. Even presuming plaintiff's claim is addressed under § 1132(a)(3) as one for breach of fiduciary duty, it nonetheless fails. First, plaintiff failed to assert in the complaint a claim premised on NFA's alleged failure to include amendment procedures in the Plan or failure to comply with such procedures. Because such a claim was not asserted in her Second Amended Complaint it may not be pursued in plaintiff's motion for summary judgment. Second, even presuming the claim is addressed on the merits, it fails because an employer does not act in a fiduciary capacity when amending or terminating a plan. Therefore, as a matter of law, NFA may not be found to have breached a fiduciary duty to the plaintiff in connection with altering or terminating the 1995 version of the Plan. Third, courts have held that an employer may amend or terminate an ERISA welfare benefit plan even in the absence of specific plan language addressing amendment procedures. Finally, the relief plaintiff seeks, continuing payment of disability benefits, is a legal rather than an equitable remedy and therefore, is not available to her under ERISA.

Plaintiff's next argument focuses on her claims relating to NFA's alleged failure to properly disclose material modifications to the Plan made in connection with the company's switch from the Hartford policy to the Prudential policy in 1999. (Pl. Memo. at 3, ¶ 2.) Again, plaintiff states that relief is sought under § 1132(a)(1)(B), and requests relief in the form of continuing disability benefits. (Id.) These claims are without merit. First, as discussed above, plaintiff may not pursue a claim for benefits at summary judgment where no such claim has been

asserted in the complaint. Moreover, because she could pursue a claim for benefits under § 1132(a)(1), no relief is available to her under § 1132(a)(3). Even if this claim were addressed on the merits as a breach of fiduciary duty claim, plaintiff's motion fails. NFA complied with its ERISA disclosure obligations by incorporating the Plan revisions into new Plan documents which were disseminated to employees in accordance with the pertinent regulations. Moreover, the remedy plaintiff seeks – the payment of benefits - is not cognizable under § 1132(a)(3).

The final claim on which plaintiff moves for summary judgment is her claim for imposition of civil penalties against NFA under 29 U.S.C. § 1132(c)(1)(B) for the company's alleged failure to furnish her the 1995 Summary Plan Description. This claim fails because NFA was under no statutory duty to furnish plaintiff outdated plan documents.

## III. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36 (1st Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). The record evidence must be construed "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." *Feliciano de law Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 5 (1st Cir. 2000). Where, as here, the party moving for summary judgment bears the burden of proof on an issue, she cannot prevail "unless the evidence that [s]he provides on that issue is *conclusive*." *E.E.O.C. v. Unión Independiente de la Autoridad de Acueductos Y Alcantarillados de Puerto Rico*, 279 F.3d 49, 55 (1st Cir. 2002) (quotation and citation omitted) (emphasis by court).

## IV. ARGUMENT

Application of the controlling principles of substantive law to the material undisputed facts makes it manifest that plaintiff cannot demonstrate conclusively that she is entitled to judgment as a matter of law on any of her claims. Indeed, as discussed herein and in Defendant's Memorandum in Support of Motion For Summary Judgment, plaintiff's claims are untenable, and it is NFA which is entitled to summary judgment on all plaintiff's claims.

### A. PLAINTIFF CANNOT PURSUE A CLAIM FOR BENEFITS ON SUMMARY JUDGMENT BECAUSE SHE DID NOT ASSERT SUCH CLAIM IN THE OPERATIVE COMPLAINT AND HAS NOT SUED THE PROPER DEFENDANT.

In her motion plaintiff seek as relief the payment of disability benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). (Pl. Memo. at 1-2, ¶¶ 1-2.) These claims are untenable because plaintiff did not assert them in the Second Amended Complaint and because she has not named the proper party as a defendant with respect to such purported claim for benefits.

Section 1132(a)(1)(B) provides for suits by a plan participant or beneficiary "to recover benefits due ... under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). "An action to recover from a breach of fiduciary duty occurred is distinct from an action to recover plan benefits under section 1132(a)(1)(B)." *Anweiler v. American Power Serv.*, 3 F.3d 986, 992 (7th Cir. 1993) (instructing that the plaintiff "cannot attempt to restyle her action as a personal claim for benefits when she has continually alleged a breach of fiduciary duty."). Plaintiff did not assert a claim for benefits in the Second Amended Complaint (or for that matter her initial Complaint or First Amended Complaint). The claims asserted by the plaintiff in the complaints have consistently been ones for breach of fiduciary duty, falling under § 1132(a)(3), and for the imposition of civil penalties, pursuant to § 1132(c)(1). Indeed the introduction to her Second Amended complaint explicitly states: "Plaintiff Lorraine Femino submits this Complaint for Injunctive and

Declaratory Relief." (Second Amended Complaint at 1.) Nowhere in the complaint does she cite § 1132(a)(1) as a basis for recovery. Whether by strategy or neglect, plaintiff did not bring a claim for benefits pursuant to § 1132(a)(1).

A plaintiff may not obtain summary judgment on a claim that has not been asserted in the operative complaint. *See, e.g., Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004) ("Any claims not asserted in the plaintiff's Complaint are properly dismissed."). *Cf. Torres-Rios v. LPS Laboratories, Inc.*, 152 F.3d 11, 16 (1st Cir. 1998) (instructing that new theories of liability may not be asserted in response to a motion for summary judgment); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2723 (3d ed. Supp. 2005). Because plaintiff did not assert a claim for benefits in the Second Amended Complaint, she may not move for summary judgment on such a claim.

Plaintiff's claim for benefits is also fatally flawed because she has not sued the appropriate defendant. The proper defendant in an action for benefits due under ERISA is the Plan. *See Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996) ("ERISA permits suits to recover benefits only against the Plan as an entity...."); *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993) (same); *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir. 1985) (same); *see also* 29 U.S.C. § 1132(d)(2) ("Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter."). Plaintiff has not sued the NFA long term disability Plan in this action. Rather, she sued NFA Corporation and two individuals[1] for breach of fiduciary duty and for the imposition of civil penalties. Because plaintiff can obtain relief on a

[1] These individuals, Dorothy Mattiello and Bruce Barth, were previously dismissed as defendants by order of the Court.

claim for benefits only against the Plan and she has failed to sue the Plan, her purported claim for benefits is untenable as a matter of law.

## B. BECAUSE PLAINTIFF COULD HAVE PURSUED A CLAIM FOR BENEFITS UNDER § 1132(a)(1), SHE CANNOT OBTAIN RELIEF UNDER § 1132(a)(3).

A plaintiff is precluded from pursuing a claim for relief under 29 U.S.C. § 1132(a)(3), ERISA's catch-all provision, where the plaintiff has a remedy under § 1132(a)(1). Section 1132(a)(3), which allows for "other appropriate equitable relief" is a "'catchall' provision," acting "as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 [29 U.S.C. § 1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065 (1996). In *Varity*, the Supreme Court instructed that "[w]here Congress elsewhere [has] provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate." *Id.* at 515. "Following [*Varity*], federal courts have uniformly concluded that, if a plaintiff can pursue benefits under the plan pursuant to Section a(1), there is an adequate remedy under the plan which bars a further remedy under Section a(3)." *Larocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002). *See also Turner v. Fallon Community Health Plan, Inc.*, 127 F.3d 196, 200 (1st Cir. 1997) (holding that beneficiary denied benefits could not sue under Section a(3) since the claim was "specifically addressed by [Section a(1)]"). "[T]he availability of an adequate remedy under the law for *Varity* purposes, does not mean, nor does it guarantee, an adjudication in one's favor." *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1089 (11th Cir. 1999); *Tolson v. Avondale Indus. Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) ("Because [plaintiff] has adequate relief available for the alleged improper denial of benefits through his right to sue the Plans directly

under section 1132(a)(1), relief through the application of [s]ection 1132(a)(3) would be inappropriate.").

In the present case, it is clear that plaintiff could have pursued a claim for benefits against the Plan pursuant to § 1132(a)(1). That plaintiff failed to make such a claim, whether by strategy or neglect, does not relieve her of the legal consequences of that fact. Because an available remedy exists under § 1132(a)(1), plaintiff's claim for equitable relief under § 1132(a)(3) is foreclosed. *See Larocca*, 276 F.3d at 28; *Green v. Exxon Mobil Corp.*, 413 F. Supp. 2d 103, 115 (D.R.I. 2006) (Lagueux, J.) (relying on *Varity* and *Larocca* in barring plaintiffs from pursuing § 1132(a)(3) claim where they had a claim under § 1132(a)(1)).

## C. PLAINTIFF CANNOT OBTAIN SUMMARY JUDGMENT ON ANY ASSERTED CLAIM THAT NFA FAILED TO INCLUDE AN AMENDMENT PROCEDURE IN ITS PLAN AND/OR FAILED TO COMPLY WITH THE AMENDMENT PROCEDURE BECAUSE SHE DID NOT ASSERT SUCH CLAIM IN THE OPERATIVE COMPLAINT.

Plaintiff's purported claim that she is entitled to receive the benefits that existed under the prior Hartford LTD policy because the plan did not contain an amendment procedure should be summarily rejected because she did not assert this claim in the operative complaint.[2]

A plaintiff may not move for summary judgment on a theory that has not been asserted in the operative complaint. *See, e.g., Cooper v. Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004) ("Any claims not asserted in the plaintiff's Complaint are properly dismissed."). *Cf. Torres-Rios v. LPS Laboratories, Inc.*, 152 F.3d 11, 16 (1st Cir. 1998) (instructing that new theories of liability may not be asserted in response to a motion for summary judgment); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2723 (3d ed. Supp. 2005).

---

[2] NFA submits plaintiff's claims seeking payment of benefits are claims under § 1132(a)(1) and are untenable for the reasons discussed *supra*. NFA addresses the claims herein as ones for breach of fiduciary duty, in the event the Court proceeds to address them under § 1132(a)(3).

Nowhere in the 11 purported "causes of action" set forth in her the Second Amended Complaint did plaintiff state a claim premised on NFA's alleged failure to include an amendment procedure in the 1995 Hartford LTD plan or to fail to comply with any such amendment procedure. Plaintiff contends in her memorandum that her

> Ninth and Tenth Claims allege that NFA did not properly amend the NFA Disability Welfare Benefit plan [ ] to adopt the substantive reductions in plan coverages resulting from the change in plan providers. These claims extend from the fact that there did not exist a proper written document prior to February 1, 1999 defining a plan amendment procedure and identification of persons authorized to manifest a specific resolution and ratify that resolution.

(Plaintiff's Summary Judgment Memo. at 3.)

A review of plaintiff's Ninth and Tenth causes of action set forth in the Second Amended Complaint shows that neither make reference to any alleged failure to include an amendment procedure in the plan, to any alleged failure to identify in the amendment procedure those persons authorized to amend the plan, or to NFA's alleged failure to follow any such amendment procedure. Plaintiff's purported Ninth cause of action states:

> On information and belief, NFA Corporation implemented the 1999 amendment to the disability welfare benefit without a written Plan document thus violating ERISA Section 402, 29 U.S.C. § 1102 ("Establishment of plan"), which requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument.

Second Amended Complaint at 17, ¶ 9. Plaintiff's Tenth cause of action states:

> By implementing the amended disability welfare benefit without a written Plan document, NFA Corporation violated ERISA Section 404, 29 U.S.C. § 1104 ("Fiduciary duties"), which requires, in pertinent part, that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... (D) in accordance with the documents and instruments governing the plan....

Second Amended Complaint at 17, ¶ 10.

Nowhere in these stated causes of action, or elsewhere in the Second Amended Complaint, are there factual allegations or a legal theory set forth which comports with the claim she is now asserting at summary judgment. She did not contend in the complaint that NFA failed to include amendment procedures in the plan documents; did not contend that NFA failed to identify persons authorized to amend the plan; and did not contend that NFA failed to comply with any such procedures. Rather, the basis of her purported Ninth and Tenth causes of action is the contention that the amended plan was implemented "without a written Plan document." The claims actually asserted in the complaint involves factual and legal issues distinct from those attendant to a claim premised on amendment procedures. Significantly, the claims plaintiff now purports to advance regarding plan amendment procedures were not the subject of discovery, and NFA would be substantially prejudiced if plaintiff were allowed to pursue these claims.

Because plaintiff may not pursue claims that were not set forth in her complaint, the Court should not entertain any claims premised on NFA's alleged failure to include amendment procedures in the plan, or to comply with such procedures. *See, e.g., Cooper*, 390 F.3d at 732 ("Any claims not asserted in the plaintiff's Complaint are properly dismissed.").

**D. NFA DID NOT ACT IN A FIDUCIARY CAPACITY IN AMENDING THE PLAN AND THEREFORE DID NOT BREACH A FIDUCIARY DUTY TO PLAINTIFF.**

Plaintiff's claim that NFA breached a fiduciary duty by amending the plan to effect an adverse alteration in the benefits available to her fails as a matter of law because in amending an ERISA plan an employer does not act in a fiduciary capacity.

In amending an ERISA plan, an employer has broad authority and acts as a settlor, not a fiduciary. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 119 S.Ct. 755 (1999) ("[T]he act of amending a pension plan does not trigger ERISA's fiduciary provisions."); *Curtiss-Wright*

*Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 1228 (1995) (instructing that employers or other plan sponsors "are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans."); *Beach v. Commonwealth Edison Co.*, 382 F.3d 656 (7th Cir. 2004) ("[A]n employer is not a fiduciary when considering whether to establish a plan in the first place, or what specific benefits to offer when creating or amending a plan."). "Therefore, a plan sponsor's decision to amend a plan in a way that deprives participants of benefits does not give rise to a cognizable claim under ERISA." *Chaudhry v. Neighborhood Health Partnership, Inc.*, 2006 WL 1117962 (11th Cir. Apr. 26, 2006) (citing *Curtis-Wright*, 514 U.S. at 78, 115 S.Ct. at 1228).

In revising the long term disability Plan to provide for insurance coverage by Prudential rather than Hartford, NFA acted as a settlor and not as a fiduciary. Since NFA did not act in a fiduciary capacity in connection with this action, it cannot be liable for breaching a fiduciary duty to the plaintiff in revising the Plan. Accordingly, plaintiff's claim is untenable as a matter of law.

**E. NFA WAS FREE TO AMEND ITS LTD PLAN EVEN IN THE ABSENCE OF AN AMENDMENT PROCEDURE.**

Plaintiff claims that the modifications to the Plan made in 1999 with the change to the Prudential policy were invalid and inapplicable to her because the plan documents promulgated in connection with the prior Hartford policy did not include an amendment procedure. Even presuming the Court were to consider this claim, it is without merit. As discussed herein, employers may amend or terminate an ERISA welfare plan even in the absence of a written amendment procedure. Only under extraordinary circumstance, not demonstrated by the plaintiff here, will an amendment be held ineffective against a participant.

Because ERISA welfare plans are not subject to the statute's vesting provisions, an employer may amend the terms of the plan or terminate it entirely. *See Curtis-Wright*, 514 U.S. at 78. The statute, however, requires that plans covered by ERISA contain written procedures for amending the plan and identify those with authority to amend the plan. *See* 29 U.S.C. § 1102(b)(3). Failure to comply with § 1102(b)(3) constitutes a technical violation of ERISA. *See, e.g., Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 569 (7th Cir. 1995). Courts have held that such technical violation in connection with plan amendments do not render the amendments invalid absent proof of bad faith, active concealment, or detrimental reliance. *See id; Biggers v. Witteck Indus., Inc.*, 4 F.3d 291, 295 (4th Cir. 1993); *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 949 (6th Cir), *cert. denied*, 498 U.S. 984 (1990). *Cf. Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 113 (1st Cir. 2002) ("Technical violations of ERISA's notice provisions generally do not give rise to substantive remedies outside § 1132(c) [failure to supply requested information] unless there are some exceptional circumstances, such as bad faith, active concealment, or fraud."). Courts have recognized that it would contravene congressional intent to hold that a welfare plan become unamendable simply because it fails to include written amendment procedures. *See Adams*, 905 F.3d at 949.[3]

In *Singleton v. San Jacinto Methodist Hosp.*, 2003 WL 22303420 (S.D. Tex. July 14, 2003), the court was faced with a dispute involving similar material facts to those presented here. There, the plaintiff, Yolanda Singleton, had worked as a nurse for the defendant hospital from 1994 until July 1995, when she sustained an on the job injury. At the time Singleton was injured

---

[3] Moreover, holding employers liable for technical violations in the absence of extraordinary circumstances would serve to discourage employers from offering employee welfare plans. *See Watson*, 298 F.3d at 113 ("The Supreme Court has cautioned that we must be mindful of the 'competing congressional purposes [behind ERISA], such as Congress' desire to offer employees enhanced protection for their benefits ... and ... its desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place.'") (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)).

and began receiving benefits in 1995, the version of the hospital's Employee Injury Plan then in effect did not contain any limit on the amount of time an employee unable to return to work could receive salary continuation benefits. This version of the plan had no explicit provision for amendment. In February 1998, the plan was amended to provide a procedure for revising any of the policies and procedures described in the employee handbook. In March 1998, the plan was amended to limit the number of weeks an employee could receive benefits. In February 1999, after Singleton had ceased to be eligible under the March 1998 limitation implemented pursuant to the amendment, the hospital stopped paying Singleton the salary continuation benefits. Singleton filed suit in state court, alleging that the hospital was estopped from denying continued benefits and asserting state law causes of action, as well as causes of action under ERISA. The hospital removed on the basis of federal question jurisdiction and moved for summary judgment. Singleton filed a cross-motion.

In her cross-motion, Singleton argued that because the version of the plan in effect when she began to receive benefits had no explicit provision for amendment, the hospital could not (1) amend the plan and (2) could not amend the plan to reduce her right to continue to receive monthly salary continuation benefits. Singleton asserted a claim under sections 1132(a)(1) and 1132(a)(3) to invalidate the amendment and sought the benefits under the terms of the plan in effect when she first began to draw benefits. The hospital contended that the plan had been, and clearly could be, amended before Singleton began to receive benefits; that it was validly amended; and that Singleton had no vested right to continue to receive benefits after the amendment limited her eligibility. The court rejected Singleton's arguments, agreed with the hospital, and denied Singleton's motion for summary judgment and granted summary judgment in favor of the hospital.

The court began its analysis by noting the distinction between ERISA pension benefits and welfare benefits, which are not required to vest or accrue. *See id.* at *1. Because of this, the court explained, "[a]n employer ... may unilaterally modify or terminate welfare benefits, unless it contractually agrees to grant vested benefits." *Id.* (quoting *Chiles v. Ceridan Corp.*, 95 F.3d 1505, 1510 (5th Cir. 1996)). "Contractual vesting of a welfare benefit 'must be stated in clear and express language.'" *Id.* (quoting *Chiles*, 95 F.3d at 1513).

Next, the court discussed case law holding that amendments to welfare benefit plans apply to all decisions made as of the effective date of the amendment, even if an insured has been receiving benefits under a prior version. *See id.* at *2. One case cited by the court was *Hackett v. Xerox*, 315 F.3d 771 (7th Cir. 2003), wherein the Seventh Circuit held that an plan amendment granting the administrator discretionary authority to determine whether an employee met the conditions for receiving disability benefits was valid and applicable against the plaintiff, who had been receiving disability benefits for 12 years under the prior version of the plan. *See id.* at 774. Because Singleton could not show that the plan language gave her a vested right to continue to receive benefits, the court held that the controlling plan was the plan in effect when her claim for benefits accrued, i.e., when the decision to deny further benefits was made in February 1999. *See id.* at 3. "It is undisputed that under the Plan in effect at that time, Singleton was no longer eligible for benefits." *Id.*

Having determined that the amendment to the hospital's Employee Injury Plan applied to claims decisions made subsequent to the implementation of the amendment, the Singleton court proceeded to address plaintiff's argument that the absence of an amendment procedure in the hospital's plan rendered the amendment limiting the time she could receive salary continuation benefits invalid, and that she was entitled to continue to receive benefits under the prior version

of the plan. The court noted that "[s]everal cases have addressed the consequences of an employee welfare benefit plan that, although it may be terminated or amended under ERISA, provides no mechanism or standard for doing so, as required by 29 U.S.C. § 1102(b)(3)." *Id.* at *3. Reviewing the case law, the court explained that the lack of an amendment procedure does not render a plan unamendable. *See id.* at *3 (citing *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 949 (6th Cir), *cert. denied*, 498 U.S. 984 (1990)). Rather, because the power to revoke or amend an employee welfare plan is inherently reserved to an employer under ERISA, a plan may be effectively amended even in the absence of a written amendment procedure, provided the employer clearly manifests an intent to amend the plan. *See id.* (citing *Biggers v. Witteck Indus., Inc.*, 4 F.3d 291, 295 (4th Cir. 1993)). Moreover, any amendment is effective and applicable to employees unless an employee can demonstrate "bad faith, active concealment, or detrimental reliance" that would justify granting relief. *Id.* at *4 (citing *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 569 (7th Cir. 1995)).

The court noted that the hospital put Singleton on notice of the amendment at issue in February 1998 and March 1998; that the notice clearly manifested the hospital's intent to amend the plan; and that the notice came almost a year before it was applied to Singleton. *See id.* Given these facts, the court concluded that Singleton could not show the bad faith, active concealment, or detrimental reliance that would justify granting the remedy she sought. *See id.* Accordingly, the court denied Singleton's motion for summary judgment and granted summary judgment in favor of the hospital. *See id.*

In the present case, plaintiff has made the same argument as those made by Singleton; i.e., that because the 1995 version of the Plan had not amendment procedure, the 1999 revisions to the Plan are ineffective and she is entitled to continue to receive disability payments under the

prior version of the Plan. Application of the principles discussed in *Singleton* to the materially similar facts of the case at bar make it manifest that plaintiff's arguments meet the same fate. First, plaintiff can point to no language in the 1995 version of the Plan that grants her any vested rights in continued long term disability benefits. Therefore, the amendments to the plan in 1999 to include the 24-month limited pay period on disabilities based primarily on self-reported symptoms applied to all decisions made subsequent to the February 1, 1999 implementation date of the Prudential policy. *See Singleton*, 2003 WL 22303420, at * 3-4. As in *Singleton*, the employer here clearly manifested its intent to amend the Plan. The revised plan with the new Prudential policy was promulgated in writing and distributed to employees. While the plaintiff contends she did not receive a copy of the revised plan in 1999, she acknowledges receiving a copy of the amended plan in 2002. (Plaintiff's Statement of Undisputed Material Facts at 21, ¶ 102). This was a year before the self-reported symptoms pay period limitation was applied to her claim in November 2003. (Id. at 4, ¶ 9). Finally, plaintiff has come forward with no record evidence demonstrating bad faith, active concealment, or detrimental reliance.

In an apparent effort to show detrimental reliance, plaintiff contends that she took the job with NFA in reliance on the long-term disability benefit. This purported "reliance" in taking the NFA position in 1995 and perhaps not pursuing other employment opportunities does not suffice to sustain plaintiff's claim. First, given NFA's inherent right to revoke or amend this employee welfare benefit at any time, any purported subjective belief by the plaintiff that the specific terms of the 1995 LTD policy would continue in perpetuity would have been unreasonable as a matter of law. If plaintiff's logic were followed NFA would have never been able to amend the Plan because she took the job on the basis of the Plan. This is a patently absurd result. Second, even presuming plaintiff's contention were to be considered, she has proffered no record evidence

which would establish that she had other specific employment opportunities, or what benefits would have been available to her as an employee of any other company with which she could have gained employment in 1995.

Finally, and more fundamentally, she has focused her claim of reliance on immaterial events. The appropriate inquiry is whether the plaintiff can prove conclusively (this being her motion for summary judgment) that she took or refrained from taking specific action, to her material detriment, based on NFA's failure to include an amendment procedure in the Plan. *See Alford v. Kimberly-Clark Tissue Co.*, 14 F. Supp. 2d 1290, 1299 (S.D. Ala. 1998) (holding that in the context of a claim that a plan amendment is invalid for failure to comply with the plan's amendment procedure, the detrimental reliance inquiry involves the plaintiff's reliance on the plan termination procedure and not the plaintiff's reliance on the language of the prior version of the plan). Plaintiff points to no record evidence that would establish this necessary element of her claim.

Even if the reliance inquiry were broadened to encompass the question of whether the plaintiff took or refrained from taking specific action, to her material detriment, based on NFA's alleged failure to timely furnish her with a copy of the amended plan, her claim would fail. Plaintiff has not proffered competent record evidence showing that she took any specific action that she otherwise would not have taken, or abstained from taking any specific action that she otherwise would not have abstained from taking had she been fully informed of the revisions to the plan in February 1999.

In the context of ERISA, the bar for establishing detrimental reliance is not easily cleared. *See, e.g., Mauser v. Raytheon Co. Pension Plan*, 239 F.3d 51, 56 (1st Cir. 2001) (affirming district court's finding that the acts offered by the plaintiff to show reliance on

inaccurate summary plan description -- making improvements to his home, throwing a lavish wedding for his daughter, failing to make alternate retirement plans, and deciding his wife did not need to obtain employment with a promise of future pension benefits -- did not constitute "detrimental reliance" in plaintiff's ERISA claim). As Judge Lagueux recently pointed out, "ERISA law is more forgiving of administrative mistakes even where there is reliance. The cases tell many sad stories of plaintiffs who make significant changes in their lives based on misunderstandings and even misrepresentations made by their employers, or other advisors, concerning prospective benefits." *Green v. Exxon Mobil Corp.*, 413 F. Supp. 2d 103, 113 (D.R.I. 2006). After surveying numerous cases, Judge Lagueux held that the plaintiffs in *Green* could not establish detrimental reliance on an estimate of life insurance benefits which contained incorrect information because they presented no evidence that they "undertook any significant change in position" based on the information. *Id.* at 114.

In the present case, plaintiff cannot proffer competent record evidence demonstrating that she took a significant change in position or failed to take such a change based on NFA's actions regarding the 1999 amendment to the LTD Plan. Accordingly, plaintiff's claim that the amendment is invalid and that she is entitled to continued benefits under the terms of the 1995 version of the Plan fails as a matter of law.

**F. PLAINTIFF REQUESTED RELIEF OF PAYMENT OF FINANCIAL BENEFITS IS LEGAL RELIEF, NOT EQUITABLE RELIEF, AND THEREFORE IS NOT AVAILABLE IN AN ACTION FOR BREACH OF FIDUCIARY DUTY.**

Plaintiff contends that as a result of NFA's breach of fiduciary duty, she is entitled to "restoration of financial benefits for Plaintiff consistent with levels as paid before the termination of benefits on November 18, 2003." (Second Amended Complaint at 19, ¶ 4.) In her summary judgment memorandum, plaintiff fails to provide any relevant legal authority in support of her

request for relief. (Pl. Memo. at 9.) Rather, she states in conclusory fashion what the remedy should be, apparently extrapolating from a quote from *Curtiss-Wright v. Schoonejogen*, 143 F.3d 120 (3d Cir. 1998). She fails, however, to explain how the quote applies to bolster her claim and fails to recognize that the Third Circuit's decision in *Curtis-Wright* was reversed by the Supreme Court in *Curtiss-Wright v. Schoonejongen*, 514 U.S. 73 (1995). In any event, it is clear that in the wake of recent United States Supreme Court opinions and their progeny, it is manifest that the relief plaintiff seek – "restoration of financial benefit" - does not constitute "equitable relief" recoverable under § 11329c)(3).

Section 502(a)(3) of ERISA provides, in pertinent part:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).

The Supreme Court has addressed the meaning of "appropriate equitable relief" under this section in several opinions, including *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708 (2002), and *Mertens v. Hewitt Associates*, 508 U.S. 248, 113 S.Ct. 2063 (1993). In both cases, the Court unequivocally rejected attempts to impose liability for a contractual obligation to pay money under § 1132(a)(3), holding that the term "equitable relief" refers to "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens*, 508 U.S. at 256; *see also Great-West*, 534 U.S. at 210.

In *Mertens*, a class of former steel industry employees participating in a qualified pension plan brought suit against a non-fiduciary, seeking monetary relief under § 502(a)(3). The Court

concluded that although the employees "often dance around the word, what [they] in fact seek is nothing other than compensatory damages" in the form of monetary relief for damages resulting from the alleged breach of fiduciary duty. *Mertens*, 508 U.S. at 255. "Money damages are, of course, the classic form of legal relief." *Id.*

In *Great-West*, Jeanette Knudson, a beneficiary of an ERISA-governed employee welfare benefit plan, was injured in a car accident. The plan included a reimbursement provision that provided the plan with "the right to recover from the beneficiary any payment for benefits paid by the Plan that the beneficiary is entitled to recover from a third party." 534 U.S. at 207 (internal quotation marks and alteration omitted). The Great-West plan covered more than $400,000 of Knudson's medical expenses, and Great-West brought an action under § 502(a)(3) of ERISA seeking restitution of the medical expenses it had paid on Knudson's behalf. Relying on *Mertens*, the Supreme Court noted that Great-West's claim could be brought under ERISA only if the relief it was seeking fell within those categories of relief that were typically available in equity. *See Great-West*, 534 U.S. at 210. The Court explained that restitution claims can sound in equity or at law, depending on the nature of the relief sought in the particular case:

> [A] plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where the property sought to be recovered or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the defendant. Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Id.* at 213-14 (internal citations, quotation marks, and alterations omitted).

In contrast, legal restitution is a remedy where there is no identifiable res:

> In cases in which the plaintiff could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution *at law* through an action derived from the common law writ of assumpsit. In such cases, the plaintiff's claim was considered legal because he sought to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money. Such claims were viewed essentially as actions at law for breach of contract . . . .

*Id.* at 213 (citations and internal quotation marks omitted, emphasis in original).

The Supreme Court then noted that the funds sought by Great-West were not in Knudson's possession, but instead had been disbursed into a special needs trust to pay for Knudson's future medical expenses. Great-West thus was not seeking equitable relief under § 502(a)(3)(B), because it was not claiming "particular funds that, in good conscience, belong to petitioners," but was instead arguing that it was "contractually entitled to some funds for benefits that they conferred." *Id.* at 214. The Court therefore concluded that "[b]ecause petitioners are seeking legal relief - the imposition of personal liability on respondents for a contractual obligation to pay money - § 502(a)(3) does not authorize this action." *Id.* at 221.

In the present case, plaintiff is not claiming a right to particular funds or benefits that were conferred upon NFA by her. Rather, she is seeking to impose upon NFA the general obligation to pay her continuing "financial benefits." Under *Great-West*, the remedy she seeks, even if could be labeled "restitution" at all, is clearly one for restitution at law, and is not viable under § 502(a)(3) of ERISA. *See Great-West*, 534 U.S. at 221. *See also Callery v. United States Life Ins. Co. in the City of New York*, 392 F.3d 401 (10th Cir. 2004) (holding that under *Great-*

*West* the plaintiff could not recover insurance policy proceeds, but may be able to recover premiums paid on the policy); *Massey v. Stanley-Bostitch, Inc.,* 255 F. Supp. 2d 7, 15-16 (D.R.I. 2003) (Smith, J.) (holding plaintiff's claim to recover benefits he claimed were due him under policy was a request for money damages prohibited under § 1132(a)(3) by *Great West*).

Courts addressing similar claims for restoration or reinstatement of benefits subsequent to Great-West have concluded that such claims are not permitted under § 1132(a)(3). See, e.g., *Caffey v. Unum Life Ins. Co.,* 302 F.3d 576, 583 (6th Cir. 2002) (rejecting plaintiff's claim for "equitable relief," including reinstatement of her health and life insurance benefits, finding that plaintiff's claim was actually one for "consequential losses she experienced as a result of UNUM's failure to perform under the Plan," and, therefore "not within the scope of 'appropriate equitable relief' under 29 U.S.C. § 1132(a)(3)."); *Weinreb v. Hospital For Joint Diseases Orthopaedic Institute*, 285 F. Supp. 2d 382, 388 (S.D.N.Y. 2003) (finding that a request for an injunction directing employer to enroll plaintiff in a benefits plan was a "thinly disguised attempt" to recover compensatory damages); *Sampson v. Rubin*, 2002 WL 31432701, at *6 (D. Mass. Act. 29, 2002) (rejecting plaintiff's "attempt to recover the benefits he would have received had the 1994 LTD policy not been cancelled" as "outside the scope of the equitable remedies envisioned by § 1132(a)(3).").

In sum, plaintiff seeks relief of a legal nature that is not permitted under § 1132(a)(3). *Mertens*, *Great-West*, and the cases that have followed in their wake make clear that "appropriate equitable relief" under § 1132(a)(3) would not include a judgment requiring NFA to pay her continuing "financial benefits."

## G. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HER CLAIMS RELATING TO NFA'S ALLEGED FAILURE TO DISCLOSE MATERIAL MODIFICATIONS IN THE PLAN.

The gravamen of plaintiff's Second Amended Complaint is her claim that NFA violated its statutory obligation to disclose material modifications to the plan made in 1999. According to plaintiff, NFA was required to provide her a summary of material modifications in connection with the revisions to the plan that implemented the 24 month limitation for self-reported symptoms. Plaintiff's claim appears to proceed as follows: (1) NFA was required by 29 U.S.C. § 1122 and 29 C.F.R. § 2520.104a-3 to provide her a separate written summary of material modifications in connection with the 1999 amendments to the plan, (2) NFA failed to provide her a written summary of material modifications and, therefore (3) she is entitled to recover the benefits she would have received under the pre-amended version of the Plan.

Each component of plaintiff's claim contains flaws that individually and collectively doom her claim. As discussed more fully below: NFA was not required to provide plaintiff a summary of material modifications under the circumstances; NFA complied with its notice obligations concerning the plan amendments; and even presuming NFA did not satisfy ERISA's notice requirements, plaintiff is not entitled to the relief she seeks.

### 1. NFA Was Not Required to Provide Plaintiff a Written Summary of Material Modifications Because the Modifications Were Incorporated in Plan Documents Timely Furnished to Plan Participants.

Plaintiff's contention that NFA violated ERISA by failing to produce and provide her a separate written summary of the modifications made to the plan is without merit. The law allows plan administrators to forego creating and furnishing such summaries where, as here, the amendments are timely incorporated into plan documents provided to plan participants.

Plaintiff contends NFA violated 29 U.S.C. § 1022(a) and 29 C.F.R. § 2520.104b-3(a) by not properly disclosing to her the modifications to the LTD plan resulting from the 1999 amendments. These provisions are correctly cited for the proposition that ERISA requires the timely notification to participants of material modifications to ERISA plans through written summaries. Plaintiff's argument falters, however, because she had failed to recognize the applicability of 29 C.F.R. § 2520.104b-3(b), which relieves a plan administrator from this requirement under the circumstances present in this case.

Section 1022(a) of Title 29 provides in pertinent part:

> A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 1024(b) of this title.

29 U.S.C. § 1022(a). In turn, § 1024(b) provides that if there is a material modification in the terms of a plan, a summary of this modification must be furnished to each plan participant not later than 210 days after the end of the plan year in which the change is adopted. *See* 29 U.S.C. § 1024(b)(1). *See also* 29 C.F.R. § 2520.104b-3(a). When plan amendments are incorporated in a summary plan description which is provided to participants, however, the administrator is not required to produce and provide participants a separate written summary of material modifications. *See* 29 C.F.R. § 2520.104b-3(b). This regulation provides:

> (b) The summary of material modifications to the plan or changes in information required to be included in the summary plan description need not be furnished separately if the changes or modifications are described in a timely summary plan description. For example, a calendar year plan adopts a material modification on June 3, 1976. The modification is incorporated in a summary plan description furnished on July 15, 1977. No separate summary of the material modification is furnished. The plan adopts another material modification September 15, 1977. A separate summary of the modification is furnished on or before July 29, 1978.

29 C.F.R. § 2520.104b-3(b).

Thus, as long as the modifications to the plan are incorporated into plan documents timely furnished to the participants, the administrator has complied with its disclosure obligations and is not required to have prepared and distributed a separate written summary of material modifications. *See, e.g., Sweeney v. Butz*, 1993 WL 54585, at *3 (N.D. Ill. Feb. 26, 1993) (holding plan not required to furnish summary where it furnished copies of the new plan to all participants within 210 days after the close of the plan year in which the modifications were made).

In the present case, the 1995 LTD plan was amended as of February 1, 1999. The plan year was February 1 through January 31. Therefore, NFA had until late July of 2000 to furnish the participants copies of the updated plan documents (210 days after the close of the plan year in which the modifications were made). It clearly satisfied this obligation. NFA held meetings in early 1999 at which participants were informed of benefit changes. (See Defendant's Local Rule Statement of Undisputed Material Facts in Support of Motion For Summary Judgment (hereinafter "Facts"), ¶ 5.) NFA also sent copies of the updated plan documents in early 1999 to all participants by first class mail. (Id. ¶ 6.)

**2. NFA Satisfied its Disclosure Obligations.**

Department of Labor regulations provide that when making disclosure of materials required to be disclosed under ERISA "the plan administrator shall use measures reasonably calculated to ensure actual receipt of the material by plan participants and beneficiaries." 29 C.F.R. § 2520.104b-1(a)(1). Acceptable methods of delivery include in-hand delivery to employees at the worksite and first class mail. *See id.* In the present case, NFA mailed plan documents to all participants. (Facts ¶ 6.) In addition, it conducted meetings at the workplace at

which the amended plan was discussed. (Id. ¶¶ 5, 7.) NFA complied with its disclosure obligations under the regulation.

Plaintiff contends that she did not receive the plan documents by mail in 1999. Even presuming the truth of this allegation, it is of no moment. The law requires plan administrators to utilize measures reasonably calculated to ensure receipt of the materials by participants. It does not require the administrator to guarantee the actual receipt of the documents by each participant. *See, e.g., Williams v. Plumbers & Steamfitters Local 60 Pension Plan*, 48 F.3d 923 (5th Cir. 1995) ("There is no requirement that the Plan prove actual notice of an amendment .... The plan administrator need only use whatever means are 'reasonably calculated to ensure actual receipt of the material.' 29 C.F.R. § 2520.104b-1(b)(1). The plan administrator may send the [summary of material modification] by mail."); *Hussey v. Chase Manhattan Bank*, 2005 WL 2139872, at *13 (E.D. Pa. Sept. 1, 2005) (instructing that "the DOL regulations have been interpreted to require employee benefit plan administrators to prove that they sent the summary plan descriptions, but not that the participants received them.") (quotation, citation, and alterations omitted); *Aiello v. Midwest Operating Eng'rs Health & Welfare Fund*, 1993 WL 81437, at *3 (N.D. Ill. Mar. 19, 1993) (holding that ERISA does not require a fiduciary to prove that the beneficiary actually received the summary plan materials).

### 3. Even Presuming NFA Did Not Comply With its Disclosure Obligations, Plaintiff is Not Entitled to the Remedy of Payment of "Financial Benefits."

The remedy plaintiff seeks, "restoration of financial benefits," (Second Amended Complaint at 19, ¶ 4), is foreclosed, both because it is beyond what is specified in the statute for disclosure violations and because it is legal relief, rather than equitable relief.

In *Watson v. Deaconess Waltham Hospital*, 298 F.3d 102 (1st Cir. 2002), the First Circuit explained that ERISA "provides limited and specific remedies if an administrator fails to provide plan information to plan participants. 298 F.3d at 105. "When ERISA itself has specified a duty and corresponding remedy, [courts should] impose a further duty on fiduciaries only in very narrow circumstances." *Id.* "Technical violations of ERISA's notice provisions generally do not give rise to substantive remedies outside [the remedies provided by ERISA] unless there are some exceptional circumstances, such as bad faith, active concealment, or fraud." *Id.* at 113 (citations omitted).

Plaintiff has not alleged and cannot establish any of the exceptional circumstances that would allow her to obtain a substantive recovery for any breach by NFA of its disclosure obligations. The record contains no evidence whatsoever of bad faith, active concealment or fraud on the part of NFA in connection with the provision of the 1999 plan documents to the plaintiff. Moreover, as discussed more fully supra, relief in the form of payment of "financial benefits' is legal relief, not equitable relief recoverable under ERISA.

**H. NFA HAD NO OBLIGATION TO PROVIDE PLAINTIFF AN OUTDATED SUMMARY PLAN DESCRIPTION.**

Plaintiff's final claim is for the imposition of civil penalties against NFA pursuant to 29 U.S.C. § 1132(c)(1)(B) for its alleged failure under § 1024(b)(4) to timely provide her with a copy of the 1995 SPD upon her written request in November of 2004. (Second Amended Complaint at 11, ¶ 39 and at 19, ¶ 5.) This claim is untenable because there is no legal obligation under ERISA for a plan administrator to provide an outdated SPD.

Section 502(c)(1)(B) of ERISA provides in pertinent part that any plan administrator "who fails or refuses to comply with a request for any information which such administrator is required … to furnish to a participant … within 30 days after such request" may be subject to a

civil penalty in the amount of $110 a day from the date of such failure or refusal. 29 U.S.C. §1132(c)(1)(B). "[C]ase law dictat[es] that the penalty provisions of § 502(c)(1)(B) are to be strictly construed." *Colin v. Marconi Commerce Systems Employees' Retirement Plan*, 335 F. Supp. 2d 590, 612 (M.D.N.C. 2004).

Plaintiff alleges that she submitted a request for a copy of the 1995 SPD to NFA's Human Resources Director, Dorothy Mattiello,[4] on November 22, 2004, and that the requested document was not timely provided.[5] Plaintiff contends that her request was made pursuant to 29 U.S.C. §1024(b)(4), which requires in pertinent part that:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4).

At the time plaintiff made her request to Mattiello in November of 2004, the operative summary plan description was the 1999 SPD. NFA provided the 1999 SPD to plaintiff, thus fulfilling its obligation under the plan text of the statute to provide "the latest updated summary plan description." 29 U.S.C. § 1024(b)(4). *See, e.g.*, *Shields v. Local 705*, 188 F.3d 895, 903 (7th Cir. 1999) ("[O]utdated plan descriptions do not fall into any of the categories of documents a plan administrator must provide to plan participants under section 1024(b)(4).") (quotation omitted); *Colin*, 335 F. Supp. 2d at 613 (instructing that "§ 104(b)(4) certainly does not require Defendants to provide Hartsell with a series of outdated plan descriptions."); *Leung v. Skidmore, Owings & Merrill LLP*, 213 F. Supp. 2d 1097, 1104 (N.D. Cal. 2002) ("Had Congress desired

[4] For purposes of the present motion, NFA will presume that plaintiff's request to Mattiello constituted a request to the plan "administrator" under 29 U.S.C. § 1024(b)(4).

[5] The 1995 SPD was subsequently provided to plaintiff during the discovery phase of the present litigation.

that section 1024(b)(4) provide for disclosure of outdated documents, it would have been easy to adopt statutory language to that effect.") *Jackson v. E.J. Brach Corp.*, 937 F. Supp. 735, 739 (N.D. Ill. 1996) ("[W]e can discern no statutory basis for penalizing an administrator for failing to provide documents which have no current application whatsoever."); *see also Watson*, 298 F.3d at 112 (noting that the district court granted summary judgment for the defendant on plaintiff's claim for civil penalties because "Deaconess supplied Watson with the most recent plan document").

Thus, when plaintiff requested the 1995 SPD in November of 2004, NFA simply had no duty under ERISA to provide that long outdated document to plaintiff. As a matter of law plaintiff cannot succeed on her claim for civil penalties under 29 U.S.C. § 1132(c)(1)(B).

## V. CONCLUSION

Based on the foregoing, NFA Corporation respectfully requests that the Court deny plaintiff's motion for summary judgment in its entirety.

Respectfully submitted,

NFA CORPORATION,

By its Attorneys,
PANNONE LOPES & DEVEREAUX LLC

William E. O'Gara, Esq. (#4257)
1800 Financial Plaza
Providence, RI 02903
(401) 824-5100
(401) 824-5123 (facsimile)

CERTIFICATION

The undersigned hereby certifies that a true copy of the foregoing document was forwarded by first class mail, postage prepaid on this 5th day of June, 2006 to:

Lorraine Femino
4 Bayou Drive
Greenville, RI 02828

Robert J. Cahan Jr.