UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LORRAINE FEMINO

v. C.A. No. 05-019ML

NFA CORPORATION d/b/a HOPE GLOBAL, et al.

## Memorandum and Order

Plaintiff, Lorraine Femino ("Plaintiff") has filed a complaint against Defendant, NFA Corporation ("Defendant") alleging certain violations of the Employee Retirement and Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA"). This matter is before the Court on cross-motions for summary judgment.

## I. Background

Plaintiff filed her complaint pro se on January 20, 2005. In essence, her complaint alleged violations of ERISA against Defendant, and two individuals[1] associated with Defendant, as a result of the administration of an employer-sponsored long-term disability plan. A scheduling order was issued on June 9, 2005, setting a discovery closure deadline of October 15, 2005, and a dispositive motion filing deadline of October 31, 2005. On October 14, 2005, Defendant filed a motion to extend the discovery deadline to November 30 and the dispositive motion deadline to December 15. On October 31, 2005, Plaintiff also filed a motion to extend both deadlines.

On December 8, 2005, the Magistrate Judge issued a memorandum and order which, among

[1] The two individual defendant's were subsequently dismissed from the case.

other things, reset the deadlines, with discovery closing on February 10, 2006, and dispositive motions to be filed by February 24, 2006. On February 17, Plaintiff filed a motion for a 30-day extension of all "closure dates." On February 24, the Magistrate Judge denied Plaintiff's request to extend the discovery deadline but "in deference to Plaintiff's pro se status" and "given the lack of any objection" by Defendant, granted Plaintiff's motion with respect to extending the dispositive motion deadline and reset that deadline to March 27, 2006. Femino v. NFA Corp., C.A. No. 05-019 at 1-2 (D.R.I. Feb. 24, 2006).

Defendant filed its motion for summary judgment on March 27, 2006. Plaintiff filed her motion for summary judgment on April 26, 2006. In addition, *on the same day*, Plaintiff also filed a motion for reconsideration of "an enlargement of time" to file her summary judgment motion. Plaintiffs [sic] Request for Reconsideration at 1 (Docket #96). Plaintiff filed her response in opposition to Defendant's motion for summary judgment on April 27, 2006. Once again, *on the same day,* Plaintiff filed a request for "reconsideration for enlargement of time for submission of objections to Defendants [sic] motion for summary judgment."[2] Plaintiffs [sic] Motion Requesting Reconsideration at 1 (Docket #99) .

## II. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories,

---

[2]Plaintiff has filed a plethora of motions for reconsideration and requests to extend filing deadlines. See Docket Femino v. NFA Corporation, C.A. No. 05-019 (D.R.I.), #13 (April 8, 2005, Motion for a Further Evidentiary Hearing); #46 (October 31, 2005, Motion to Extend Discovery Deadline); #71 (February 1, 2006, Motion for Reconsideration); #73 (February 17, 2006, Motion to Extend Discovery and Dispositive Motion Deadline); #79 (March 2, 2006, Motion to Extend Discovery Deadline); #80 (March 2, 2006, Motion for Reconsideration); #84 (March 10, 2006, Motion to Extend Discovery and Dispositive Motion Deadline); #86 (March 15, 2006, Motion for Reconsideration); #96 (April 26, 2006, Motion for Reconsideration; #99 (April 27, 2006, Motion for Reconsideration); #106 (June 15, 2006, Motion to Extend Deadline to File Objections to Defendant's Motion to Strike and Defendant's Objection to Plaintiff's Motion for Summary Judgment); #108 (June 29, 2006, Motion for Reconsideration); #110 (July 10, 2006, Motion to Extend Deadline to File Objections to Defendant's Motion to Strike and Defendant's Objection to Plaintiff's Motion for Summary Judgment).

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©). An issue is "genuine" if the pertinent evidence is such that a rational factfinder could render a verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir.), cert. denied, 515 U.S. 1103 (1995). Cross motions for summary judgment "simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (internal quotation marks and citation omitted).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Nat'l Amusements, 43 F.3d at 735. Once the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Continental Cas. Co. v. Canadian Universal Ins. Co., 924 F.2d 370 (1st Cir. 1991). The legal standard for summary judgment is not changed when parties file cross motions for summary judgment. Adria International Group, Inc. v. Ferre Development, Inc., 241 F.3d 103 (1st Cir. 2001). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Bienkowski v. Northeastern University, 285 F.3d 138, 140 (1st Cir. 2002) (internal quotation marks and citation omitted).

**III. Plaintiff's Filings**

The Court acknowledges that in the ordinary course of litigation deadlines for discovery and the filing of dispositive motions may be extended on motion of one or more of the parties. The Court has accorded Plaintiff extraordinary latitude given her pro se status. See generally Mas Marques v. Digital Equip. Corp., 637 F.2d 24, 27 (1st Cir. 1980) (pro se papers should be read liberally). Pro se litigants, however, are not excused from compliance with procedural rules or substantive law. Eagle Eye Fishing Corp. v. United States Department of Commerce, 20 F.3d 503, 506 (1st Cir. 1994). Furthermore, the "mere fact that plaintiff is proceeding pro se does not provide an excuse for non-compliance with [a] filing deadline." Lear v. Giant Food Inc., Civ. No. JFM-95-3691, 1996 WL 726919 at *1 (D. Md. March 26, 1996), aff'd, 96 F.3d 1438 (4th Cir. 1996).

Plaintiff's motion for summary judgment was filed on April 26, 2006, approximately one month out of time. *On the same day* Plaintiff filed her motion for summary judgment, Plaintiff also filed a "request for reconsideration of an enlargement of time" to submit the motion.[3] Plaintiffs [sic] Request for Reconsideration at 1 (Docket #96) . In support of her request for reconsideration of the denial of her motion to extend the dispositive motion deadline, Plaintiff now argues that the delay in filing was caused by her belief that there was a "substantial amount of missing documents." Id. Plaintiff "believed" that "all reasonable attempts should be made" to obtain "all information" to "ensure proper claims were filed" in her motion for summary judgment. Id. at 2. Plaintiff argues that her delay was "reasonable" in light of the circumstances. Id. In addition, Plaintiff appears to suggest that she was waiting for this Court's ruling on her March 15th

---

[3]This appears to be a motion to reconsider the Magistrate Judge's April 12 ruling denying her March 10 motion to extend the dispositive motion deadline.

motion for reconsideration. In essence, Plaintiff's argues that she ignored a filing deadline because she wanted to make what she deems "reasonable" attempts to obtain unspecified "other plan documents." Id. at 1.

Plaintiff ignored a filing deadline in the hope that this Court would reverse a previous ruling. The "pro se plaintiff should be aware. . . that requesting certain relief is not a guarantee that such relief will be granted. . . ." DePhillips v. Town of Riverhead, No. CV 04-5570(SJF)(WDW), 2006 WL 1329706 at *2 n.1 (E.D.N.Y. May 16, 2006). The dispositive motion deadline passed without the granting of any of Plaintiff's motions which *could* have impacted the deadline and Plaintiff assumed the risk of inaction. See generally id. "A party's prediction of a Court's ruling does not justify their delay should they happen to guess wrong." Doe v. Eason, No. Civ.A. 3:98-CV-2454, 2000 WL 34506326 at *2 (N.D. Tex. Feb. 24, 2000). Because Plaintiff has failed to comply with a filing deadline that had been set firmly by the Court, this Court strikes Plaintiff's motion for summary judgment because it was filed out of time. Plaintiff's motion for reconsideration of the earlier denial of a request for a further extension is denied.

Plaintiff has also operated in a similar fashion with respect to the filing of her response in opposition to Defendant's motion for summary judgment. Defendant's motion was timely filed on March 27, 2006. Plaintiff filed her opposition on April 27, approximately two weeks out of time. Once again, *on the same day* Plaintiff filed her opposition to Defendant's motion for summary judgment, she filed a motion requesting "reconsideration for enlargement of time for submission of objections to defendants [sic] motion for summary judgment." Plaintiffs [sic] Motion Requesting Reconsideration at 1 (Docket #99) . Although titled a "reconsideration," Plaintiff did not file any request (timely or untimely) to extend her response time for her opposition to Defendant's motion,

thus this Court treats Plaintiff's filing as a request to extend the deadline for filing her opposition.

Plaintiff now asks this Court to grant her leave to file her response out of time because she was waiting for a "final" ruling on her March 15th motion for reconsideration. Id. at 1. Plaintiff was well aware of this Court's decision with regard to the matter that was the subject of Plaintiff's March 15th motion for reconsideration. Plaintiff again made a conscious choice to ignore a filing deadline in the hope that the Court would reverse a previous ruling. Plaintiff's "motion for reconsideration" strategy has caused her to miss yet another filing deadline. See generally DePhillips, 2006 WL 1329706 at *2 n.1. Neither Plaintiff's pro se status nor any other reason she has proffered excuses the late filing. Plaintiff's motion to extend the filing deadline is denied. Consequently, Plaintiff's response in opposition to Defendant's motion for summary judgment is out of time and is also stricken.

The Court is cognizant of the impact of its decision to strike Plaintiff's filings. Litigants, including those filing pro se, however, must be aware of the import of filing deadlines. The record before this Court reflects that the Magistrate Judge and this Court have been *extremely* accommodating to Plaintiff's pro se status. Plaintiff, however, has chosen to ignore filing deadlines and file *repeated* motions for reconsideration in an attempt to reset expired deadlines. As a result of Plaintiff's failure to comply with the deadlines set by the Court, Plaintiff's motion for summary judgment and her response in opposition to Defendant's motion for summary judgement have been stricken, leaving Defendant's motion unopposed. Although Defendant's motion is now unopposed, the Court must still "consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." Mullen v. St. Paul Fire and Marine Ins. Co., 972 F.2d 446, 452 (1st Cir. 1992).

## IV. Facts

Plaintiff was hired by Defendant in 1995. Defendant is the plan sponsor and plan administrator of the "NFA Corporation Employer Long Term Disability Coverage for All Employees" plan ("Plan").[4] Mattiello Affidavit at ¶ 2. Long term disability insurance pursuant to the Plan was available to employees at a modest cost. Plaintiff enrolled in the Plan at the commencement of her employment with Defendant.

From February 1994 until February 1999, benefits under the Plan were provided by Hartford Life and Accident Insurance Company. On February 1, 1999, the Plan was amended and the Prudential Insurance Company of America became the insurer. At that time a number of changes were made to the Plan, including the imposition of a twenty-four month benefit period for disabilities primarily based upon "self-reported symptoms." The Plan defined self-reported symptoms as:

> "the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures and clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headache, pain, fatigue, stiffness, soreness, ringing in the ears, dizziness, numbness and the loss of energy."

Amended Plan Document at 18. In connection with Prudential becoming the new insurer, Defendant conducted a series of meetings in January 1999 to inform employees of the changes to the Plan. At these meetings a representative from Prudential described features of the Plan. Information provided at the meetings included a description of the self-reported symptoms limitation. In her deposition, Plaintiff testified that she "never attended any meeting for long-term disability." Plaintiff's Deposition at 51. Plaintiff stated that she did not "believe meetings were

---

[4]Both parties agree that ERISA governs the Plan.

held. It's my belief that meetings were not held, because I would have attended." Id. In February 1999, employees participating in the Plan were mailed, via first class mail, a copy of the amended Plan document.[5] Haddock Affidavit at ¶ 6.

In May 2001 Plaintiff stopped working due to a "disabling physical illness" and applied for benefits under the Plan. Second Amended Complaint IV ¶ 9. Plaintiff's claim was eventually approved and she received payments under the Plan. In 2003 Plaintiff's benefits were terminated as a result of the self-reported symptom limitation contained in the Plan. Plaintiff claims that she had no knowledge of the self-reported symptom limitation at the time she applied for or initially received benefits. Plaintiff alleges that she subsequently became aware of the limitation. On November 22, 2004, Plaintiff requested a copy of the 1995 summary plan description from Defendant's Human Resource Director. Defendant did not provide Plaintiff with a copy of the 1995 summary plan description.

## V. Analysis

In her second amended complaint Plaintiff essentially makes three claims. First, Plaintiff alleges that Defendant violated an ERISA disclosure requirement by making a material modification to the Plan without furnishing her a summary of the material modification in violation of 29 U.S.C. § 1022(a) and 29 C.F.R. § 2520.104a-7[6]. Second, Plaintiff claims that Defendant violated another ERISA disclosure requirement by failing to timely provide her with a copy of the

---

[5]Plaintiff does not "recall receiving a plan[ ] document generated by the Prudential in 1999[.]" Plaintiff's Deposition at 52.

[6]29 C.F.R. § 2520.104a-7 has been removed and is reserved. See 29 C.F.R. § 2520.104a-7 (2005). The previous version of 29 C.F.R. § 2520.104a-7addressed a plan administrator's obligation with respect to reporting material modifications to the Secretary of Labor. See 29 C.F.R. § 2520.104a-7 (2000). Plaintiff's complaint does not clarify the reasons for her reliance upon 29 C.F.R. § 2520.104a-7, consequently the Court need not address it.

Plan's 1995 summary plan description. Third, Plaintiff argues that Defendant breached a fiduciary duty by implementing the amended Plan "without a written [p]lan [d]ocument" in violation of 29 U.S.C. §§ 1102 and 1104. Second Amended Complaint VI ¶ 9.

*A. Defendant's Failure to Provide a Summary of Material Modification*

Plaintiff first contends that Defendant violated ERISA's disclosure provisions by failing to provide her with a separate written summary of the Plan amendment establishing the self-reported symptom limitation. 29 U.S.C. § 1022(a) provides, in part, that a "summary of any material modification[7] in the terms of the plan . . . shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 1024(b)(1) of this title." 29 U.S.C. § 1022(a) (2000). Section 1024(b)(1) provides that a "summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan." 29 U.S.C. § 1024(b)(1) (2000). A separate summary of material modification, however, is not required in all instances. 29 C.F.R. § 2520.104b-3(b) provides that a

> summary of material modifications to the plan or changes in information required to be included in the summary plan description need not be furnished separately if the changes or modifications are described in a timely summary plan description.

29 C.F.R. § 2520.104b-3(b) (2000) (emphasis added).

It is clear that in order to comply with the disclosure requirements, Defendant must have given notice of the material modification within 210 days of the end of the plan year. Although in

[7] "ERISA does not define the term 'material modification,' leaving it to judicial interpretation." Ward v. Maloney, 386 F. Supp. 2d 607, 612 (M.D.N.C. 2005), aff'd, 171 Fed. App'x 986 (4th Cir. 2006). For purposes of this memorandum and order, the Court assumes that the imposition of a twenty-four month maximum benefit period for disabilities primarily based upon self-reported symptoms is a material modification. See generally id. (noting material modification includes narrowing or expanding the circumstances under which benefits are paid).

its memorandum Defendant avers that the Plan that was amended in 1999 had a plan year of February 1 through January 31, that factual assertion is not included in Defendant's Local Rule CV 56(a)(1) statement of undisputed facts. The summary plan description for the amended Plan provides for a "plan year" in which the "plan's fiscal year ends" on January 1. Summary Plan Description Amended Plan at 33.

Defendant held employee meetings to discuss the amendments to the Plan in January 1999. In February 1999, participating employees were provided a copy, via first class mail, of the amended Plan document and summary plan description. Even taking the strictest deadline and presuming that the plan year of the Plan that was amended in 1999 ended on February 1, 1999, or sometime shortly after that date, Defendant would certainly meet the 210 day deadline by sending proper notification of the amendment during the month of February 1999.

When making required disclosures under ERISA "the plan administrator shall use measures reasonably calculated to ensure actual receipt of the material by plan participants . . . ." 29 C.F.R. § 2520.104b-1(b)(1) (2000). Notice by first class mail is a measure reasonably calculated to ensure actual receipt. Id. "[T]here is a widely held presumption that an addressee received a properly addressed stamped letter that was mailed in a timely fashion." Otero Carrasquillo v. Pharmacia, 382 F. Supp. 2d 300, 310 (D.P.R. 2005); see also Mercado-Garcia v. Ponce Federal Bank, 979 F.2d 890, 895 n.4 (1st Cir. 1992). Plaintiff has provided no evidence to rebut the presumption that Defendant fulfilled its duty. See Carrasquillo, 382 F. Supp. 2d at 310. The Court concludes that Defendant distributed the Plan document in a manner that was reasonably calculated to ensure that Plaintiff received it.

Whether the notice was proper is another question. Defendant argues that according to 29

C.F.R. § 2520.104b-3(b) a separate summary of material modifications is not required if the changes or modifications are described in a timely summary plan description. In this instance, however, the description of the self-reported symptom limitation was included in the amended Plan document and not the summary plan description. Defendant, citing 29 C.F.R. § 2520.104b-3(b) and Sweeney v. Butz, No. 92 C 00803, 1993 WL 54585 (N.D. Ill. Feb. 26, 1993), concludes that as long as the modifications are incorporated into plan documents timely furnished to participants, the plan administrator has complied with its disclosure requirements and need not issue a separate written summary of material modifications. Defendant concludes that because it mailed copies of the amended Plan document to all participants, it met its disclosure requirement under ERISA.

In Sweeney defendants adopted a new "quarterly system for determining benefit eligibility." Id. at *1. The plaintiff in Sweeney alleged that the defendants failed to notify him of the new eligibility system in a timely manner thereby breaching their fiduciary duties. Id. The Sweeney court, relying upon 29 C.F.R. § 2520.104b-3(a), held that the "defendants furnished copies of the new quarterly plan to all . . . participants, including plaintiff." Id. at *3 (emphasis added). The Sweeney court concluded that the plaintiff received timely notice of the new quarterly system." Id.

The Court finds Dall v. The Chinet Company, 33 F. Supp. 2d 26 (D. Me. 1998), aff'd, 201 F.3d 426 (1st Cir. 1999), more instructive on the issue of proper notice. "It is clear that when an organization modifies its plan ERISA's notice requirements are quite loose." Id. at 33 F. Supp. 2d at 33. In Dall, the plaintiff argued that he requested summaries of modifications made to an ERISA plan and that the defendant failed to forward him the information he requested. Id. The Dall court held that the amendments to the plan were material modifications, and as such,

summaries of the amendments were required to be furnished to participants pursuant to 29 U.S.C. § 1024(b)(1). Id. at 34.

In Dall, the defendant acknowledged that it did not forward the plaintiff a summary of one of the plan amendments dealing with a 1992 change to early retirement benefits. Id. The defendant admitted that there was no "proper summary plan description or summary of material modifications employed" with respect to the 1992 plan amendment. Id. at 35. The plaintiff made a sufficient request for the information and the defendant was required to send him a summary of the amendment. Id. The Dall court noted, however, that the plaintiff argued that the defendant failed to comply with his request "despite the fact that [he] received a copy of the [a]mended [p]lan on April 6, 1995, that included a description of the early retirement benefits offered in 1992." Id. at 35-6 (emphasis added). The plaintiff averred that the amended plan document was not "a summary of material modifications required to be provided to participants upon their request." Id. at 36. The Dall court noted, however, that the plaintiff's "contention on this point appear[ed] to be about form rather than substance." Id. (emphasis added). The plaintiff in Dall failed to explain why the amended plan document's description of the amendment was "deficient in any substantive respect." Id. The court in Dall held that the plaintiff received a summary of the amendment on the day he received a copy of the amended plan document. Id.

In this case, the amended Plan document and the summary plan description are physically joined in the same document. The summary plan description is conspicuously so titled and is separated from the Plan document by an intervening cover page. The Plan document adequately identifies and explains the 24-month self-reported symptom limitation. The Court concludes that Defendant provided timely and proper notice of the self-reported symptom limitation. See

generally Dall, 33 F. Supp. 2d 26.

*B. Defendant's Failure to Provide an Outdated Summary Plan Description*

Plaintiff next claims that Defendant violated ERISA by its failure to timely provide her with a copy of the 1995 summary plan description. On November 22, 2004, Plaintiff requested a copy of the 1995 summary plan description from Defendant's Human Resource Director. Defendant did not provide Plaintiff with a copy of the 1995 summary plan description at the time of Plaintiff's request because it contended that the 1995 document was not the operative summary plan description. Defendant alleges that at the time of Plaintiff's request, the operative document was the 1999 summary plan description. Defendant avers that it was not under any duty to furnish Plaintiff with an "outdated" plan document.[8]

Plaintiff requests that the Court "assign appropriate civil penalties . . . for the refusal by Defendant . . . to provide plaintiff an 'other instrument' of the disability welfare benefit being [sic] 1995 SPD . . . ." Second Amended Complaint at VII ¶ 5 (emphasis added). Plaintiff appears to invoke the "other instrument" language of 29 U.S.C. § 1024(b)(4).

Section 1024(b)(4) provides that

> [t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary . . . plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4) (2000) (emphasis added). ERISA provides that a plan administrator[9] who "fails or refuses to comply with a request for any information which such administrator is required

---

[8]Defendant eventually provided Plaintiff with a copy of the 1995 summary plan description during discovery.

[9]For the purposes of this memorandum and order, the Court assumes that Plaintiff's request was made to the plan administrator.

. . . to furnish to a participant . . . within 30 days after such request" is subject to a civil penalty. 29 U.S.C. § 1132(c)(1)(B) (2000) (emphasis added). Defendant did not provide Plaintiff with a copy of the summary plan description within thirty days of her request.

"[O]utdated plan descriptions do not fall into any of the categories of documents a plan administrator must provide to plan participants under section 1024(b)(4)." Shields v. Local 705, International Brotherhood of Teamsters Pension Plan, 188 F.3d 895, 903 (7th Cir. 1999) (internal quotation marks and citation omitted) (emphasis added); see also Leung v. Skidmore, Gwings, & Merrill LLP, 213 F. Supp. 2d 1097 (N.D. Cal. 2002); Jackson v. E.J. Brach Corp., 937 F. Supp. 735 (N.D. Ill. 1996). It is clear that Defendant did not have an obligation under section 1024(b)(4) to provide Plaintiff with the outdated 1995 summary plan description. Consequently, Defendant did not violate 29 U.S.C. § 1024(b)(4) by failing to provide Plaintiff with an outdated summary plan description.

*C. Defendant's Implementation of the Plan Amendment Without a Plan Document*

Last, Plaintiff's second amended complaint alleges that Defendant implemented the 1999 amendment to the Plan without a written plan document, thus violating 29 U.S.C. § 1102. 29 U.S.C. § 1102(a)(1) provides that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1) (2000). Defendant has submitted, via affidavit, a "true and accurate copy" of the amended Plan document. Haddock

Affidavit at ¶ 5. Plaintiff's assertion that the 1999 amendment was implemented without a written plan document is wholly without merit.

## VI. Conclusion

For the above reasons, the motion of Defendant for entry of summary judgment is GRANTED.

SO ORDERED

Mary M. Lisi
Mary M. Lisi
United States District Judge
July 17, 2006